## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| AARON SIEGEL; | ) |
| | ) |
| JASON COOK; | ) |
| | ) |
| JOSEPH DELUCA; | ) |
| | ) |
| NICOLE CUOZZO; | ) |
| | ) |
| TIMOTHY VARGA; | ) |
| | ) |
| CHRISTOPHER STAMOS; | )  Civil Action No. 22-cv-7463 |
| | ) |
| KIM HENRY; *and* | ) |
| | ) |
| ASSOCIATION OF NEW JERSEY RIFLE | ) |
| & PISTOL CLUBS, INC., | ) |
| | ) |
| | ) |
| | ) |
|          *Plaintiffs,* | ) |
| | ) |
|       v. | ) |
| | ) |
| MATTHEW PLATKIN, in his official | ) |
| capacity as Attorney General of New Jersey, | ) |
| | ) |
| PATRICK J. CALLAHAN, in his official | ) |
| capacity as Superintendent of the New Jersey | ) |
| Division of State Police, | ) |
| | ) |
|          *Defendants.* | |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Daniel L. Schmutter
HARTMAN & WINNICKI, P.C.
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040
(201) 967-0590 (fax)
dschmutter@hartmanwinnicki.com
*Attorneys for Plaintiffs*

**LOCAL CIVIL RULE 10.1 STATEMENT**

The mailing addresses of the parties to this action are:

Aaron Siegel
30 Geneva Trail
Hopatcong, New Jersey 07843

Jason Cook
15 Railroad Street
Brown Mills, New Jersey 08015

Joseph DeLuca
8 Gloucester Court
Marlton, New Jersey 08053

Nicole Cuozzo
98 Lakewood Rd.
New Egypt, New Jersey 08533

Timothy Varga
1800 Clinton Ave.
Wall Township, New Jersey 07719

Christopher Stamos
58 Cottage Street
Bayonne, New Jersey 07002

Kim Henry
439 Dartmouth Avenue
Pemberton, New Jersey 08068

Association of New Jersey Rifle & Pistol Clubs, Inc.
5 Sicomac Road, Suite 292
North Haledon, New Jersey 07508

Matthew Platkin
Office of the Attorney General
RJ Hughes Justice Complex
25 Market Street, Box 080
Trenton, New Jersey 08625

Patrick J. Callahan
Office of the Superintendent
New Jersey State Police
P.O. Box 7068
West Trenton, New Jersey 08628

## INTRODUCTION

**The Second Amendment's plain text . . . presumptively guarantees petitioners Koch and Nash a right to "bear" arms in public for self-defense.**

*New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111, 2135 (2022).

1.　　　The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. CONST. amend. II (emphasis added).  When the People, by enacting that amendment, enshrined in their fundamental charter the right to "carry weapons in case of confrontation" for the "core lawful purpose of self-defense," *District of Columbia v. Heller*, 554 U.S. 570, 592, 630 (2008), they did not mean to leave the freedom to exercise that right at the mercy of the very government officials whose hands they sought to bind. No, "[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Id*. (Emphasis in original.). Six months ago, the United States Supreme Court decided *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111, 2135 (2022), holding that the Second Amendment guarantees the right of the people to carry handguns in public for self-defense.

2.　　　The State of New Jersey has, apparently, not gotten the message. Having lost the ability to suppress the fundamental right to bear arms in public through its now dead and buried "justifiable need" requirement,[1] New Jersey has shifted gears and has made a permit to carry a handgun utterly useless. New Jersey has passed a new law, Assembly Bill A4769, which allows a permit holder to carry almost *nowhere* in the State. New Jersey has simply changed its approach from one unconstitutional law that allowed "no one" to carry to another unconstitutional law that

---

[1] *See Mazahreh v. Platkin*, 1:20-cv-17598, ECF No. 51 (D.N.J. Oct. 12, 2022).

allows on to carry "nowhere."  Notwithstanding the clear ruling of the United States Supreme Court, New Jersey simply does not want ordinary people to carry handguns in public—as is their fundamental right to do.

3.      A4769 co-sponsor Assemblyman John McKeon illustrated this intention perfectly in a hearing before the Assembly Judiciary Committee:

> Do you really -- do either of you, does anybody really want to put more guns in the hands of people that live in Paterson and Newark and Elizabeth and Camden . . . ?

https://njleg.state.nj.us/archived-media/2022/AJU-meeting-list/media-player?committee=AJU&agendaDate=2022-11-14-10:00:00&agendaType=M&av=A, at marker 1:54:20.

4.      A4769 is so comprehensive in where it bans the carry of handguns, primary bill sponsor Assemblyman Joe Danielsen was asked by his colleague Assemblywoman Victoria Flynn at a committee hearing where *could* a person carry her handgun. Danielsen's answer: "My job is not to tell you where guns can go."

https://njleg.state.nj.us/archived-media/2022/AJU-meeting-list/media-player?committee=AJU&agendaDate=2022-10-17-10:00:00&agendaType=M&av=A at marker 50:25 to 51:33.

5.      In *Bruen*, the Supreme Court held unequivocally that *the people* have a fundamental right to carry handguns in public, *most of the time*, and *in most places* subject only to *"exceptional circumstances"* 142 S. Ct. at 2156. New Jersey just refuses to accept that.

6.      Accordingly, Plaintiffs Aaron Siegel, Jason Cook, Joseph DeLuca, Nicole Cuozzo, Timothy Varga, Christopher Stamos, Kim Henry, and Association of New Jersey Rifle & Pistol Clubs, Inc., (collectively "Plaintiffs"), by and through the undersigned attorneys, file this Complaint against the above-captioned Defendants, in their official capacities as the state officials responsible under New Jersey law for administering and enforcing the State's laws and regulations governing the possession of firearms. Plaintiffs seek declaratory and *immediate and urgent*

4

injunctive relief: a declaration that New Jersey's brand new law comprehensively suppressing the fundamental right to bear arms in public as set forth in *Bruen* is unconstitutional and injunctive relief precluding its enforcement. *Bruen* shut the door on lower courts' outright defiance of *District of Columbia v. Heller,* 554 U.S. 570 (2008), and Plaintiffs simply ask this Court to enforce their fundamental rights.

7.     A4769, freshly signed into law, is the State of New Jersey's blatant refusal to accept the ruling of the United States Supreme Court. On June 24, 2022, the day after the *Bruen* decision was handed down, New Jersey Governor Phil Murphy announced his plan to undermine the ruling in every way possible, and he and the New Jersey Legislature have made good on that unlawful promise.

8.     While the Supreme Court declared that individuals have a fundamental right to carry handguns in most public places, with very limited exceptions such as courthouses, legislative assemblies and polling places, A4769 bans the carry of handguns nearly everywhere in the State of New Jersey. A4769 Section 7.

9.     A4769 unconstitutionally suppresses the fundamental right to bear arms in: *parks, beaches, libraries, museums, theatres, playgrounds, zoos, medical offices, sports arenas, restaurants, public gatherings, casinos, one's own car and other vehicles, and presumptively all private property*.

10.    A4769 also imposes crushing financial penalties on the exercise of the constitutional right, including forcing a person to purchase liability insurance that does not presently exist and massively raising permit fees.

11.    A4769 creates onerous new hurdles in the permit process, requiring personal interviews of the applicant and her references, as well as forcing references to prepare what

amounts to an essay in support of the application—all this when the Supreme Court plainly prohibited permitting schemes that interfere with the right to carry.

12.    A4769 invites arbitrary, subjective action by permitting authorities, through vague discretionary permitting criteria, *precisely* what the Supreme Court ruled is not allowed.

13.    In support of their Complaint against Defendants, Plaintiffs hereby allege as follows:

## JURISDICTION AND VENUE

14.    This Court has subject-matter jurisdiction over Plaintiffs' claim under 28 U.S.C. §§ 1331 and 1343.

15.    Plaintiffs seek remedies under 28 U.S.C. §§ 1651, 2201, and 2202 and 42 U.S.C. §§ 1983 and 1988.

16.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) & (b)(2).

## PARTIES

17.    Plaintiff Aaron Siegel is a law-abiding resident and citizen of the United States and the State of New Jersey. He resides at 30 Geneva Trail, Hopatcong, New Jersey 07843. He is a member of Association of New Jersey Rifle & Pistol Clubs, Inc.

18.    Plaintiff Jason Cook is a law-abiding resident and citizen of the United States and the State of New Jersey. He resides at 15 Railroad Street, Brown Mills, New Jersey 08015. He is a member of Association of New Jersey Rifle & Pistol Clubs, Inc.

19.    Plaintiff Joseph DeLuca is a law-abiding resident and citizen of the United States and the State of New Jersey. He resides at 8 Gloucester Court, Marlton, New Jersey 08053. He is a member of Association of New Jersey Rifle & Pistol Clubs, Inc.

20.    Plaintiff Nicole Cuozzo is a law-abiding resident and citizen of the United States

and the State of New Jersey. She resides at 98 Lakewood Rd. New Egypt, New Jersey 08533. She is a member of Association of New Jersey Rifle & Pistol Clubs, Inc.

21.     Plaintiff Timothy Varga is a law-abiding resident and citizen of the United States and the State of New Jersey and a Deacon of Grace Bible Church of Wall Township, New Jersey. He resides at 1800 Clinton Ave., Wall Township, New Jersey 07719. He is a member of Association of New Jersey Rifle & Pistol Clubs, Inc.

22.     Plaintiff Christopher Stamos is a law-abiding resident and citizen of the United States and the State of New Jersey. He resides at 58 Cottage Street, Bayonne, New Jersey 07002. He is a member of Association of New Jersey Rifle & Pistol Clubs, Inc

23.     Plaintiff Kim Henry is a law-abiding resident and citizen of the United States and the State of New Jersey. She resides at 439 Dartmouth Avenue, Pemberton, New Jersey 08068. She is a member of Association of New Jersey Rifle & Pistol Clubs, Inc

24.     Plaintiff Association of New Jersey Rifle & Pistol Clubs, Inc. ("ANJRPC") is a not-for-profit membership corporation, incorporated in the State of New Jersey in 1936, which represents its members. Its address is 5 Sicomac Road, Suite 292, North Haledon, New Jersey 07508. ANJRPC represents the interests of target shooters, hunters, competitors, outdoors people, and other law-abiding firearms owners. Among ANJRPC's purposes is aiding such persons in every way within its power and supporting and defending the people's right to keep and bear arms, including the right of its members and the public to carry handguns in public for self-defense. New Jersey's new law prohibiting handgun carry nearly everywhere in the State is thus a direct affront to ANJRPC's central mission. ANJRPC has tens of thousands of members who reside in New Jersey. ANJRPC brings the claim herein on behalf of its members.

25.    Defendant Matthew Platkin is the Attorney General of New Jersey. As Attorney General, he exercises, delegates, or supervises all the powers and duties of the New Jersey Department of Law and Public Safety, including the Division of State Police within that Department, which is responsible for executing and enforcing New Jersey's laws and regulations governing the possession and carry of handguns. Defendant Platkin also supervises and directs the activities of local law enforcement, including setting standards, procedures, and guidelines for the processing and issuance of firearms permits. Finally, as chief law enforcement official in the State, Defendant Platkin exercises supervisor authority over all State prosecutors' offices. His official address is Office of the Attorney General, RJ Hughes Justice Complex, 25 Market Street, Box 080, Trenton, New Jersey 08625. He is being sued in his official capacity.

26.    Defendant Patrick J. Callahan is the Superintendent of the New Jersey Division of State Police. As Superintendent, subject to the oversight and supervision of the Attorney General, he exercises, delegates, or supervises all the powers and duties of the New Jersey Division of State Police, including executing and enforcing New Jersey's laws and regulations governing the possession and carry of handguns. His official address is Office of the Superintendent, New Jersey State Police, P.O. Box 7068, West Trenton, New Jersey 08628. He is being sued in his official capacity.

## FACTUAL ALLEGATIONS

**New Jersey's Continuing and Comprehensive Infringement on the Fundamental Right to Carry Arms in Public**

### A. Prior Law Governing the Public Possession of Handguns

27.    Since 1966, New Jersey has made it impossible for nearly all law-abiding New Jerseyans to carry handguns in public for lawful self-defense.

28.     New Jersey law generally forbids any person to "ha[ve] in his possession any handgun . . . , without first obtaining a permit to carry the same." N.J.S.A. 2C:39-5(b). While state law provides certain exceptions to this general ban—including one for "keeping or carrying [a firearm] about [one's] place of business, residence, premises or other land owned or possessed by him," *id.* § 2C:39-6(e), these exceptions do not allow the carrying of a handgun in public, either openly or concealed, without first obtaining a permit. Violating this ban is a crime in the second degree, punishable by between five and ten years imprisonment and a fine of up to $150,000. *Id.* §§ 2C:39-5(b), 2C:43-3(a)(2), 2C:43-6(a)(2).

29.     New Jersey accordingly allows an individual to carry a handgun in public only if he first obtains a permit to do so (a "Handgun Carry Permit"). Prior to the enactment of the A4769, to be eligible for a Handgun Carry Permit, an applicant had to satisfy certain statutory criteria. For example, he must not have been convicted of any crime or offense involving an act of domestic violence; must not be addicted to controlled substances, mentally infirm, or an alcoholic; must not be subject to certain restraining orders; and must not be listed on the FBI's Terrorist Watchlist. *Id.* §§ 2C:58-4(c); 2C:58-3(c). An applicant must also pass criminal and mental health background checks, *id.* § 2C:58-4(c), must provide three reputable references who certify that he "is a person of good moral character," *id.* § 2C:58-4(b), and must have satisfied extensive firearms safety training requirements, N.J.A.C. 13:54-2.4(b).

30.     In addition to these rigorous screening and training requirements, a law-abiding citizen could only be granted a Handgun Carry Permit if he demonstrated "that he has a justifiable need to carry a handgun." N.J.S.A. 2C:58-4(c).

31.     N.J.S.A. 2C:58-4(c) previously provided that "in the case of a private citizen," the "justifiable need" requirement was satisfied only if the applicant could "specify in detail the urgent

necessity for self-protection, as evidenced by specific threats or previous attacks, which demonstrate a special danger to the applicant's life that cannot be avoided by reasonable means other than by issuance of a permit to carry a handgun." *Id.* The statute further provided that "[w]here possible the applicant shall corroborate the existence of any specific threats or previous attacks by reference to reports of such incidents to the appropriate law enforcement agencies." *Id.*

32.     In further interpreting this "justifiable need" requirement, New Jersey's Supreme Courts determined that "[g]eneralized fears for personal safety are inadequate, and a need to protect property alone does not suffice." *In re Preis*, 573 A.2d 148, 152 (N.J. 1990).

33.     Accordingly, typical law-abiding citizens of New Jersey—the vast majority of responsible citizens who cannot "demonstrate a special danger to [their] life" as "evidenced by specific threats or previous attacks," N.J.S.A. 2C:58-4(C)—effectively remained subject to a flat ban on carrying handguns outside the home.

34.     As a result of the previous "justifiable need" rule, nearly all New Jerseyans were, for generations, denied the basic, fundamental right to carry a firearm in lawful self-defense in public.

### B. The *Bruen* Decision

35.     On June 23, 2022, the United States Supreme Court decided *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022). *Bruen* swept away the notion that States could materially interfere with the fundamental right to carry a handgun in public for self-defense. The Court made clear that, *by default*, the people have a fundamental right to carry handguns, and they have the right to do so in most places and under most circumstances. That is, *public carry of handguns is the rule, not the exception*.

36.     In *Bruen*, the Court invalidated the most common and most easily and widely abused method of denying the fundamental right to carry a handgun—the requirement that an applicant for a permit to carry a handgun show some sort of "need." Under New York law (the subject of the claims in *Bruen*) the requirement was called "proper cause."  As explained above, New Jersey called it "justifiable need." Regardless of the name, the Supreme Court did not merely rule that requiring a showing of "need' is unconstitutional. The Court ruled that any scheme that broadly impairs the right to carry a handgun would be unconstitutional. The Court was unambiguous that a general right to carry is the clear law of the land, and any attempt to interfere with that right is automatically constitutionally suspect.

37.     On October 12, 2022, in *Mazahreh v. Platkin*, 1:20-cv-17598, ECF No. 51 (Oct. 12, 2022), the Supreme Court's ruling in *Bruen* was made directly applicable to New Jersey's "justifiable need" requirement, and the "justifiable need" requirement was explicitly held unconstitutional.  *Id*.

### C. New Jersey Announces "Massive Resistance" to *Bruen*

38.     On June 24, 2022, one day after the *Bruen* decision, New Jersey Governor Phil Murphy held a press conference. (https://www.youtube.com/watch?v=EJ9ZJR-Sk24). Like his predecessors in the Southern states in 1954 in the wake of *Brown v. Board of Education*, Governor Murphy blasted the Supreme Court's decision upholding fundamental constitutional rights and vowed to find ways to undermine and/or circumvent the effect of the ruling. In addition to announcing a wish list of new legislation aimed at, once again, preventing law abiding individuals from carrying handguns, Governor Murphy signed Executive Order 299 (https://nj.gov/infobank/eo/056murphy/pdf/EO-299.pdf) which declared the *Bruen* decision "deeply flawed," stated that "the vast majority of New Jerseyans do not support relaxing

restrictions on who may carry a gun in public," and directed all State agencies to "immediately review their statutes, rules, regulations, and program requirements to identify actions that may be taken under existing authority determining whether, and in what manner, firearms may be carried, displayed, or otherwise regulated." *Id*. In other words, the Governor announced his clear intention to resist the Supreme Court's ruling in *Bruen* in any and every way possible.

### D. New York's Massive Resistance

39.     On July 1, 2022, after calling an extraordinary session of the legislature, New York enacted a new law, Senate Bill S51001, which placed massive new restrictions on the carrying of handguns in public through the state.[2]

40.     Multiple lawsuits were commenced challenging S51001. As a result of these lawsuits, major portions of S51001 were enjoined, first through temporary restraining orders ("TRO"), and then through preliminary injunctions ("PI"). *See Antonyuk v. Hochul*, 2022 WL 5239895 *10 (N.D.N.Y. Oct. 6, 2022) (TRO: "Simply stated, instead of moving toward becoming a shall-issue jurisdiction, *New York State has further entrenched itself as a shall-not-issue jurisdiction*." Emphasis added.); *Hardaway v. Negrelli*, 2022 WL 11669872 *15 (W.D.N.Y. Oct. 20, 2022) (TRO: "The Constitution *requires* that individuals be permitted to use handguns for the core lawful purpose of self-defense. . . . And it protects that right *outside the home and in public.*" Emphasis in original); *Hardaway v. Negrelli*, 2022 WL 16646220 (W.D.N.Y. Nov. 3, 2022) (PI); *Antonyuk v. Hochul*, 2022 WL 16744700 (W.D.N.Y. November 7, 2022) (PI); *Christian v. Negrelli*, 2022 WL 17100631 (W.D.N.Y.) (PI).

---

[2] NEW YORK GOV.'S PRESS OFFICE, *Governor Hochul Signs Landmark Legislation to Strengthen Gun Laws and Bolster Restrictions on Concealed Carry Weapons in Response to Reckless Supreme Court Decision*, July 1, 2022, available at https://on.ny.gov/3nXWrvA (last visited Dec. 1, 2022).

**E. New Jersey's Massive Resistance: A4769 -- The New "Justifiable Need"**

41.    After New York fired its first salvo at the broadside of *Bruen* and failed to sink it, New Jersey followed suit.

42.    On December 22, 2022, Governor Murphy signed into law A4769—New Jersey's own attempt to blatantly defy the United States Supreme Court and its ruling in *Bruen*.

43.    A4769 picks up where "justifiable need" left off. A4769 so comprehensively precludes the lawful carry of handguns in public by ordinary, law-abiding individuals that one would not know, by reading A4769, that the Supreme Court ever decided the *Bruen* case.

44.    *Bruen* holds that the Constitution precludes a State from broadly preventing law abiding from carrying a handgun in public. A4769 does exactly that which the Constitution forbids.

45.    It does so in several ways. First, like New York's S51001, A4769 creates an enormous list of places and circumstances that are off limits for carrying a handgun, including in one's own car and, presumptively, all private property.

46.    The effect of this is that there are almost no places in the State of New Jersey, other than one's own home, where a person can lawfully carry handgun—exactly the state of affairs under "justifiable need" prior to *Bruen*.

47.    Second, A4769 imposes massive fees increases and the requirement to purchase liability insurance, both calculated to impose a substantial financial burden as an obstacle to exercising the right to bear arms in public.

48.    Third, A4769 creates new and onerous procedures and standards for obtaining a Handgun Carry Permit—all obvious obstacles interposed in the way of exercising the fundamental right to bear arms in public.

### I.   Prohibited Sensitive Places: Nearly Everywhere in the State

49.    A4769 renders nearly the entire State of New Jersey a "sensitive place" where handgun carry is prohibited. Section 7 of A4769 provides in pertinent part as follows:

7.    (New section) Places where the carrying of a firearm or destructive device is prohibited.

a.    Except as otherwise provided in this section and in the case of a brief, incidental entry onto property, which shall be deemed a de minimis infraction within the contemplation of N.J.S.2C:2-11, it shall be a crime of the third degree for any person, other than a person lawfully carrying a firearm within the authorized scope of an exemption set forth in N.J.S.2C:39-6, to knowingly carry a firearm as defined in subsection f. of N.J.S.2C:39-1 and a crime of the second degree to knowingly possess a destructive device as defined in subsection c. of N.J.S.2C:39-1 in any of the following places, *including in or upon any part of the buildings, grounds, or parking area of* [emphasis added]:

(1) a place owned, leased, or under the control of State, county or municipal government used for the purpose of government administration, including but not limited to police stations;

(2) a courthouse, courtroom, or any other premises used to conduct judicial or court administrative proceedings or functions;

(3) a State, county, or municipal correctional or juvenile justice facility, jail and any other place maintained by or for a governmental entity for the detention of criminal suspects or offenders;

(4) a State-contracted half-way house;

(5) a location being used as a polling place during the conduct of an election and places used for the storage or tabulation of ballots;

(6) within 100 feet of a place where a public gathering, demonstration or event is held for which a government permit is required, during the conduct of such gathering, demonstration or event;

(7) a school, college, university or other educational institution, and on any school bus;

(8) a child care facility, including a day care center;

(9) a nursery school, pre-school, zoo, or summer camp;

(10) a park, beach, recreation facility or area or playground owned or controlled by a State, county or local government unit, or any part of such a place, which is designated as a gun free zone by the governing authority based on considerations of public safety;

(11) youth sports events, as defined in N.J.S.5:17-1, during and immediately preceding and following the conduct of the event, except that this provision shall not apply to participants of a youth sports event which is a firearm shooting competition to which paragraph (3) of subsection b. of section 14 of P.L.1979, c.179 (C.2C:58-6.1) applies;

(12) a publicly owned or leased library or museum;

(13) a shelter for the homeless, emergency shelter for the homeless, basic center shelter program, shelter for homeless or runaway youth, children's shelter, child care shelter, shelter for victims of domestic violence, or any shelter licensed by or under the control of the Juvenile Justice Commission or the Department of Children and Families;

(14) a community residence for persons with developmental disabilities, head injuries, or terminal illnesses, or any other residential setting licensed by the Department of Human Services or Department of Health;

(15) a bar or restaurant where alcohol is served, and any other site or facility where alcohol is sold for consumption on the premises;

(16) a Class 5 Cannabis retailer or medical cannabis dispensary, including any consumption areas licensed or permitted by the Cannabis Regulatory Commission established pursuant to section 31 of P.L.2019, c.153 (C.24:6I-24);

(17) a privately or publicly owned and operated entertainment facility within this State, including but not limited to a theater, stadium, museum, arena, racetrack or other place where performances, concerts, exhibits, games or contests are held;

(18) a casino and related facilities, including but not limited to appurtenant hotels, retail premises, restaurant and bar facilities, and entertainment and recreational venues located within the casino property;

(19) a plant or operation that produces, converts, distributes or stores energy or converts one form of energy to another;

(20) an airport or public transportation hub;

(21) a health care facility, including but not limited to a general hospital, special hospital, psychiatric hospital, public health center, diagnostic center, treatment

center, rehabilitation center, extended care facility, skilled nursing home, nursing home, intermediate care facility, tuberculosis hospital, chronic disease hospital, maternity hospital, outpatient clinic, dispensary, assisted living center, home health care agency, residential treatment facility, residential health care facility, medical office, or ambulatory care facility;

(22) a facility licensed or regulated by the Department of Human Services, Department of Children and Families, or Department of Health, other than a health care facility, that provides addiction or mental health treatment or support services;

(23) a public location being used for making motion picture or television images for theatrical, commercial or educational purposes, during the time such location is being used for that purpose;

(24) private property, including but not limited to residential, commercial, industrial, agricultural, institutional or undeveloped property, unless the owner has provided express consent or has posted a sign indicating that it is permissible to carry on the premises a concealed handgun with a valid and lawfully issued permit under N.J.S.2C:58-4, provided that nothing in this paragraph shall be construed to affect the authority to keep or carry a firearm established under subsection e. of N.J.S.2C:39-6; and

(25) any other place in which the carrying of a firearm is prohibited by statute or rule or regulation promulgated by a federal or State agency.

b.    (1) A person, other than a person lawfully carrying a firearm within the authorized scope of an exemption set forth in subsection a., c., or l. of N.J.S.2C:39-6, who is otherwise authorized under the law to carry or transport a firearm shall not do so while in a vehicle in New Jersey, unless the handgun is unloaded and contained in a closed and securely fastened case, gunbox, or locked unloaded in the trunk of the vehicle.

(2) A holder of a valid and lawfully issued permit to carry a handgun shall not leave a handgun outside of their immediate possession or control within a parked vehicle, unless the handgun is unloaded and contained in a closed and securely fastened case, or gunbox, and is not visible from outside of the vehicle, or is locked unloaded in the trunk or storage area of the vehicle.

A violation of paragraph (1) or (2) of this subsection is a crime of the fourth degree.

50.    N.J.S. 2C:39-5(e) already contains certain prohibitions on the possession of firearms "in or upon any part of the buildings or grounds of any school, college, university or other educational institution . . . ." To the extent this provision operates to the same unconstitutional

effect as A4769, Plaintiffs bring the same challenges to 2C:39-5(e) as A4769, and any claim asserted herein against A4769 should also be deemed to be the same type of challenge to 2C:39-5(c) even if not explicitly set forth as such.

51.     N.J.A.C. 7:2–2.17(b) already contains certain prohibitions on the possession of firearms and other weapons "while on State Park Service property without the specific approval of the Superintendent or designee" To the extent this provision operates to the same unconstitutional effect as A4769, Plaintiffs bring the same challenges to N.J.A.C. 7:2–2.17(b) as A4769, and any claim asserted herein against A4769 should also be deemed to be the same type of challenge to N.J.A.C. 7:2–2.17 (b) even if not explicitly set forth as such.

52.     N.J.A.C. 13:69D–1.13 already contains certain prohibitions on the possession of firearms and other weapon "within a casino or casino simulcasting facility without the express written approval of the Division" To the extent this provision operates to the same unconstitutional effect as A4769, Plaintiffs bring the same challenges to N.J.A.C. 13:69D–1.13 as A4769, and any claim asserted herein against A4769 should also be deemed to be the same type of challenge to N.J.A.C. 13:69D–1.13 even if not explicitly set forth as such.

53.     Pre-existing New Jersey fish and game regulations have several unconstitutional firearm prohibitions sprinkled throughout. N.J.A.C. 7:25–5.23(m) prohibits the simultaneous possession of both a bow and a firearm while hunting. Thus, bow hunters are completely denied the right to carry as a matter of course. N.J.A.C. 7:25–5.23(i) prohibits firearm possession "within the limits of a state game refuge unless authorized by the Division." Finally, N.J.A.C. 7:25–5.23(a), (c), and (f) restrict the type of ammunition a person may possess while "in the woods, fields, marshlands, or on the water," or while hunting various game. These prohibitions preclude possession of defensive handgun ammunition and therefore entirely prohibit the carry of a handgun

for self-defense—the very fundamental right protected under *Bruen*. Notably, these rules do not merely regulate what ammunition can be used *for hunting* but rather they regulate mere possession regardless of use. This action also challenges those fish and game prohibitions as unconstitutional.

54.     N.J.A.C. 7:25–5.23(f)(5) of the fish and game regulations already prohibits possession of a firearm in a vehicle unless it is "enclosed in a securely fastened case.:" To the extent this provision operates to the same unconstitutional effect as A4769, Plaintiffs bring the same challenges to N.J.A.C. 7:25–5.23(f)(5) as A4769, and any claim asserted herein against A4769 should also be deemed to be the same type of challenge to N.J.A.C. 7:25–5.23(f)(5) even if not explicitly set forth as such.

55.     Rather than identify the rare exceptions to the right to carry a handgun in public, A4769 is so sweeping and comprehensive so as to make it largely impossible for most people to carry a handgun during the course of their typical day—a direct affront to the fundamental constitutional right to bear arms as made clear by the Supreme Court in *Bruen*. A4769 is merely "justifiable need" by a new name.

56.     Further, this provision purports to regulate a completely *undefined* activity called "carry." There is nothing in this or any other New Jersey law that defines what it means to "carry" a firearm as opposed to, say, possess or transport. No one could reasonably know what the criminal prohibitions relating to "carry," actually refer to.

57.     Pursuant to A4769 Section 12, the provisions of Section 7 took effect immediately upon A4769 being signed into law.

### II. Insurance Requirement

58.     Section 4 of A4769 provides:

> 4. (New section) a. Every private citizen who carries a handgun in public in this State shall maintain liability insurance coverage insuring against loss resulting from liability imposed by law for bodily injury, death, and property damage sustained by any person arising out of the ownership, maintenance, operation or use of a firearm carried in public wherein such coverage shall be at least in an amount or limit of $300,000, exclusive of interest and costs, on account of injury to or death of more than one person and for damage to property, in any one incident.

> b. Proof of liability insurance, as required pursuant to subsection a. of this section, shall be produced by the person carrying a handgun in public, within a reasonable amount of time following any injury, death, or property damage alleged to have been caused by the person carrying the handgun in public. This requirement shall be satisfied by delivering a full and complete copy of the applicable policy or policies of insurance that meet the standards established by subsection a. of this section and that were in force at the time of the injury, death, or property damage. Notwithstanding the provisions of this subsection, disclosure of policy information under this section shall not constitute an admission that the alleged injury, death, or property damage is subject to the policy. Information concerning the insurance policy shall not be admissible as evidence at trial by reason of disclosure pursuant to this subsection. The disclosure shall be confidential and available only to the injured person, representative of the decedent, or owner of damaged property and the attorney representing the injured person, representative of the decedent, or owner of damaged property and personnel in the office of the attorney.

> c. A violation of this section shall be a crime of the fourth degree and shall constitute full and sufficient grounds for revocation of a permit to carry a handgun issued pursuant to N.J.S.2C:58-4.

59.     In this regard, A4769 creates a costly and onerous obstacle to the exercise of the right to bear arms—one with no precedent in American history. Imagine requiring a person to purchase an insurance policy merely to go to church, or to post videos on the internet, or to publish a blog, or to give a speech. This insurance requirement is merely another way to discourage the exercise of a fundamental constitutional right that happens to be disfavored by State of New Jersey.

60.     Pursuant to A4769 Section 12, the provisions of A4769 Section 4 take effect on the first day of the seventh month next following the date of enactment, which based on the enactment date of December 22 2022 will be July 1, 2023.

### III. Massive Fee Increase.

61.     Prior law imposed a $50 fee for obtaining a Handgun Carry Permit (*see* N.J. Ct. R. 1:43). A4769 increases the total fees required to obtain a permit to $200 by amending N.J.S. 2C:58-4(c) as follows:

> c.     Investigation and approval.  Each application shall be accompanied by a $200 application fee and shall in the first instance be submitted to the chief police officer of the municipality in which the applicant resides, or to the superintendent if: (1) the applicant is an employee of an armored car company ; (2) there is no chief police officer in the municipality where the applicant resides; (3) the applicant does not reside in this State; or (4) the applicant is a mayor or other elected member of the municipal governing body.
>
>     In the case of an application made to the chief police officer of a municipality, $150 of the fee shall be retained by the municipality and the remaining $50 shall be forwarded to the superintendent.  The fee amount retained by the municipality shall be used to defray the costs of investigation, administration, and processing of the permit to carry handgun applications. Application fees made to the superintendent shall be deposited into the Victims of Crime Compensation Office account.

62.     This massive fee increase by *four* times is plainly calculated to discourage the exercise of the right to bear arms. Notably, the Legislature does not even pretend that the increase is about the legitimate cost of issuing permits, since $50 of the fee goes to the Victims of Crime Compensation Office. While compensating victims of crime is no doubt a worthy goal, the State may not do so on the backs of and as a condition of the exercise of a constitutional right. *See, e.g., Simmons v. United States*, 390 U.S. 377, 393–94 (1968).

63.     Similarly, A4679 massively increases the fees *just to acquire and possess a firearm*. The fee for a basic Firearms Purchaser Identification Card ("FID") required under N.J.S. 2C:58-3 just to purchase and possess a rifle or a shotgun has increased *tenfold* from $5 to $50, and the fee

for a Permit to Purchase a Handgun ("Purchase Permit") required under N.J.S. 2C:58-3 just to acquire a handgun has increased *more than tenfold* from $2 to $25.

64.     Prior to A4769, N.J.S. 2C:58-3(f) provided in pertinent part:

f. Granting of permit or identification card; fee; term; renewal; revocation. The application for the permit to purchase a handgun together with a fee of $2, or the application for the firearms purchaser identification card together with a fee of $5, shall be delivered or forwarded to the licensing authority  . . . .

65.     N.J.S. 2C:58-3(f) now reads in pertinent part:

f.    Granting of permit or identification card; fee; term; renewal; revocation.  The application for the permit to purchase a handgun together with a fee of $25, or the application for the firearms purchaser identification card together with a fee of $50, shall be delivered or forwarded to the licensing authority . . . .

66.     As with the huge fee increase for a Handgun Carry Permit, the Legislature does not even pretend that the fees for an FID or a Purchase Permit are based on the legitimate cost of issuance. Some of the fees, again, go to the Victims of Crime Compensation Office.

67.     A4769 amended N.J.S. 2C:58-3 to provide as follows:

g.    Disposition of fees. All fees for permits shall be paid to the State Treasury for deposit into the Victims of Crime Compensation Office account if the permit is issued by the superintendent, to the municipality if issued by the chief police officer, and to the county treasurer if issued by the judge of the Superior Court.

68.     Both of these sets of fees are unconstitutional.

69.     Pursuant to A4769 Section 12, these massive fee increases took effect immediately upon A4769 being signed into law.

### IV. Onerous New Permit Requirements

70.     A4769 adds onerous new provisions to the process of obtaining an FID or Purchase Permit under N.J.S. 2C:58-3 and a Handgun Carry Permit under N.J.S. 2C:58-4, and since N.J.S. 2C: 58-4(c) requires that an applicant for a Handgun carry Permit not be "subject to any of the

disabilities set forth in subsection c. of N.J.S.2C:58-3," all of the onerous new provision applicable

to FIDs and Purchase Permits also apply to Handgun Carry Permits.

71.     Section 2 of A4769 amends N.J.S. 2C:58-3(c) to provide the following

disqualifications for obtaining an FID, a Purchase Permit and a Handgun Carry Permit firearm:

> (5) To any person where the issuance would not be in the interest of the public health, safety or welfare because the person is found to be lacking the essential character of temperament necessary to be entrusted with a firearm.

72.     This disqualifier is based on the prior version of N.J.S. 2C:58-3(c)(5) which

provided as a disqualifier merely "not be in the interest of the public health, safety or welfare."

73.     A4769 further amends N.J.S. 2C:58-3 to provide as a basis for denial where a

person is:

> known in the community in which the person lives as someone who has engaged in acts or made statements suggesting the person is likely to engage in conduct, other than justified self-defense, that would pose a danger to self or others,

74.     But all of the foregoing are utterly standardless, reflecting the utterly subjective

nature of the permitting process, in violation of *Bruen's* requirement that any permitting process

be based solely on objective criteria and inviting unbridled discretion in violation of the Due

Process Clause of the Fourteenth Amendment.

75.     Similarly, A4769 amended N.J.S. 2C:58-4 to provide:

> The chief police officer, or the superintendent, as the case may be, shall interview the applicant and the persons endorsing the application under subsection b. of this section, and shall make inquiry concerning, and investigate to the extent warranted, *whether the applicant is likely to engage in conduct that would result in harm to the applicant or others,* including, but not limited to, whether the applicant has any history of threats or acts of violence by the applicant directed toward self or others or any history of use, attempted use, or threatened use of physical force by the applicant against another person, or other incidents implicating the disqualifying criteria set forth in subsection c. of N.J.S.2C:58-3, including but not limited to determining whether the applicant has been subject to any recent arrests or criminal charges for disqualifying crimes or has been experiencing any mental health issues

such as suicidal ideation or violent impulses, and the applicant's use of drugs or alcohol. [Emphasis added.]

76.     The highlighted portion shares the same defect of subjectivity as the previous provisions. However, this provision is worse in that it creates a new onerous interview process of not merely the applicant herself but also her four references. This unprecedented provision plainly has no historical basis. It is obviously designed to add to an already cumbersome process required merely to exercise a fundamental constitutional right.

77.     A4769 also amended N.J.S.2C:58-4(b) to add substantial new *affirmative* obligations to the duties of an applicant's references:

> The application shall be signed by the applicant under oath, and shall be endorsed by not less than four reputable persons who are not related by blood or by law to the applicant and have known the applicant for at least three years preceding the date of application, and who shall certify thereon that the applicant has not engaged in any acts or made any statements that suggest the applicant is likely to engage in conduct, other than lawful self-defense, that would pose a danger to the applicant or others.  The reputable persons also shall provide relevant information supporting the certification, including the nature and extent of their relationship with the applicant and information concerning their knowledge of the applicant's use of drugs or alcohol.

78.     This amended provision, in addition to increasing the number of required references from three to four, now essentially requires that the four references provide what is in essence an *essay* to the investigating authority.

79.     Not only is there no historical precedent for this onerous requirement, but one could not possibly fathom the absurdity of requiring the submission of essays as a condition for, say, being allowed to attend church or read books.

80.     A4769 further amended N.J.S. 2C:58-4 to provide:

> The chief police officer or the superintendent may require such other information from the applicant or any other person, including but not limited to publicly available statements posted or published online by the applicant, as the chief police

23

officer or superintendent deems reasonably necessary to conduct the review of the application.

81.     This invites the exercise of unbridled discretion for the investigating official to compel a limitless production of information, including private social media postings protected by the First Amendment and an entire lifetime of information, as well as to exercise uneven and disparate treatment of applicants merely because the officer deems it "reasonably necessary"—all to exercise a fundamental constitutional right.

82.     N.J.S. 2C:58-4 requires that Handgun Carry Permits must be renewed every two years, and therefore all individual plaintiffs will be subject to the foregoing requirements.

83.     Pursuant to A4769 Section 12, these onerous new permit requirements took effect immediately upon A4769 being signed into law.

### V. Unjustifiable Display of a Handgun

84.     Section 5(a)(5) of A4769 creates a new, unconstitutionally vague, fourth degree crime called "unjustified display of a handgun."

85.     Other parts of A4769 indicate what a person is required to do and not do when in possession of a handgun pursuant to a Handgun Carry Permit issued pursuant to N.J.S. 2C:58-4, but nothing in the statute gives a person any idea what constitutes the wholly independent statutory crime of unjustified display of a handgun.

86.     Pursuant to A4769 Section 12, the provisions of A4769 Section 5 take effect on the first day of the seventh month next following the date of enactment, which based on the enactment date of December 22, 2022 will be July 1, 2023.

## VI. Special Elite Class of Handgun Carry and Firearm Possession

87.     Finally, as if to add insult to injury, in blatant violation of the Equal Protection Clause of the Fourteenth Amendment, A4769 creates a special gold-plated category of individuals who warrant special treatment under the law: *judges, prosecutors, and attorneys general*.  Section 8 of A4769 creates a whole new exemption under N.J.S 2C:39-6, exempting judges and prosecutors from not only the so-called "sensitive place" restrictions in A4769 section 7 but from all of the firearm restrictions in N.J.S 2C:39-5.

88.     Accordingly, not only can judges, prosecutors, and attorneys general carry handguns into schools, museums, zoos, and casinos, but they can carry machine guns into all of those places now as well (*see* N.J.S. 2C:39-5(a)).

89.     There can be no possible constitutional basis to allow judges, prosecutors, and attorneys general to carry a firearm into such places but not regular folks.

90.     Pursuant to A4769 Section 12, the provisions of A4769 Section 8 take effect on the first day of the seventh month next following the date of enactment, which based on the enactment date of December 22, 2022 will be July 1, 2023.

## VII. A4769 is Simply "Justifiable Need" Part 2.

91.     Taken as a whole, A4769 can be seen exactly for what it is. Having lost the ability to prevent ordinary individuals from exercising their fundamental constitutional right to carry handguns in public for self-defense by forcing them to show to the arbitrary satisfaction of a public official that they really "need" to carry a handgun, Governor Murphy and the New Jersey Legislature have, in a state of sheer panic, thrown together the worst, most onerous, most prejudicial, and most unconstitutional new "justifiable need" proxy they could imagine.

92.     The United States Constitution simply does not allow such an egregious violation of fundamental rights.

### F.  A4769 Violates the Fundamental Constitutional Rights of Plaintiffs.[3]

#### 1) Plaintiff Aaron Siegel

93.     Plaintiff Aaron Siegel is a nurse practitioner who lives with his wife and 13 year old son in Hopatcong, New Jersey.

94.     Plaintiff Siegel is a firearm owner and Handgun Carry Permit holder because he believes that possession and carry of firearms is an important aspect of protecting himself and his family from the risk of violent crime.

95.     Plaintiff Siegel obtained his Handgun Carry Permit because he recognizes that violent crime can take place anywhere, including when he is outside the home.

96.     Plaintiff Siegel is a member of the volunteer New Jersey Medical Reserve Corps, which is a disaster response unit. He received a Certificate of Recognition and Letter of Appreciation from the Sussex County Freeholders for his volunteer service during Super Storm Sandy.

97.     Plaintiff Siegel previously served as an Emergency Medical Technician in Paterson New Jersey, and as a result he understands that emergency personnel, including police, are sometimes delayed, through no fault of their own, in their ability to timely respond to emergencies. As a result, Plaintiff Siegel understands that individuals experiencing criminal violence are often required to provide for their own personal defense against such attacks.

---

[3] As set forth above, several preexisting provisions of New Jersey law also violate Plaintiffs' constitutional rights in a manner similar to A4769, and those are challenged herein as well.

98.     In the course of his employment, Plaintiff Siegel works variously at medical offices and medical boarding homes, including, but not limited to, Skylands Urgent Care in Lake Hopatcong and Free Clinic Newton, in Newton, New Jersey, where he works as a volunteer. Plaintiff Siegel sometimes also makes medical visits to the homes of his patients.

99.     Prior to the passage of A4769, Plaintiff Siegel frequently lawfully carried his handgun in the course of his medical work as described above, and he would continue to do so, but he refrains from doing so now out of fear of arrest and prosecution.

100.     He refrains because of the various prohibitions on carry in medical and medical type facilities set forth in A4769 section 7(a)(21) and (22).

101.     Plaintiff Siegel frequently hikes and walks his dog in public parks near his home and goes to publicly owned beaches, including in Wildwood, New Jersey.

102.     Plaintiff Siegel take his son to Tae Kwan Do classes at a martial arts school near his home and also takes his son to participate in youth Tae Kwan Do competitions. The Tae Kwan Do school is located in a strip mall which also contains other stores and business that Plaintiff Siegel frequents regularly.

103.     Plaintiff Siegel also frequently takes his son to museums throughout New Jersey, the public library, the Turtle Back Zoo in West Orange, New Jersey and the Van Saun Zoo in Paramus, New Jersey.

104.     Plaintiff Siegel also takes his son to bagpipe lessons.

105.     Every year Plaintiff Siegel takes his son deer hunting in the woods and fields of New Jersey.

106.    Plaintiff Siegel goes to movie theatres with his family approximately one or two time per month. They also attend concerts at the Izod Center at the Meadowlands and at the PNC Bank Arts Center in Holmdel, New Jersey.

107.    Plaintiff Siegel sometimes attends New Jersey Devils Hockey games at the Prudential Center in Newark, New Jersey. In doing so, he sometimes takes the bus or train to Newark. If he takes the train, his trip terminates at Newark Penn Station.

108.    Plaintiff Siegel enjoys trips to the casinos in Atlantic City, New Jersey. When he does so he enjoys gambling on the casino floors, dining in the casino restaurants, attending shows in the casino theatres, and staying in the casino hotels.

109.    Plaintiff Siegel enjoys dining out with his family at restaurants. Some of these restaurants have a license to serve alcohol.

110.    From time to time Plaintiff Siegel drives his friends and family and drops them off or picks them up from Newark Airport.

111.    Plaintiff Siegel is divorced, and his son is from his first marriage. He shares custody of his son with his ex-wife, and picks his son up and drops him off at his ex-wife's condominium property. In doing so, he must drive and walk on condominium common elements.

112.    From time to time, Plaintiff Siegel takes continuing education classes for work hosted at various places, including but not limited to hospitals, training centers, restaurants with a license to serve alcohol, and catering halls.

113.    From time to time, Plaintiff Siegel attends or passes within 100 feet of public gatherings and events, but he generally does not know which ones require a government permit.

114.    Anyone can encounter a place where motion picture or television images are being made while out in public, including television news coverage. Plaintiff Siegel has done so multiple

times in the past, and some of those times he approached the location to inquire about the production and to determine if he recognized any of the actors or personalities involved. He would again in the future approach such locations in the same manner on some occasions if he encountered them to see what film or television show was being filmed.

115.    Plaintiff Siegel is a private homeowner. He would allow the carry of handguns on his property, but he does not want to have to post a sign on his property explicitly saying so.

116.    Plaintiff Siegel drives his car nearly every day for both work and personal reasons.

117.    Plaintiff Siegel would carry his handgun in all of the foregoing places and would carry his handgun loaded and on his person in his car, on the bus, and on trains, but he refrains from doing so for fear of arrest and prosecution.

118.    He refrains because of the prohibition on carry within 100 feet of public gatherings set forth in A4769 section 7(a)(6).

119.    He refrains because of the prohibition on carry at zoos set forth in A4769 section 7(a)(9).

120.    He refrains because of the prohibition on carry at parks, beaches, and recreation facilities or areas set forth in A4769 section 7(a)(10).

121.    He refrains because of the prohibition on carry at youth sporting events set forth in A4769 section 7(a)(11).

122.    He refrains because of the prohibition on carry in public libraries and museums set forth in A4769 section 7(a)(12).

123.    He refrains because of the prohibition on carry at restaurants and other locations where alcohol is served set forth in A4769 section 7(a)(15), even though he would not consume alcohol at these locations while carrying his handgun.

124.    He refrains because of the prohibition on carry at entertainment facilities set forth in A4769 section 7(a)(17).

125.    He refrains because of the prohibition on carry in casinos and related facilities set forth in A4769 section 7(a)(18) and N.J.A.C. 13:69D–1.13.

126.    He refrains because of the prohibition on carry at airports and public transportation hubs set forth in A4769 section 7(a)(20), even though he only drops people off and picks them up at airports and would not carry his handgun in the sterile/secure areas of any airport.

127.    He refrains because of the prohibition on carry at public film and television locations set forth in A4769 section 7(a)(23).

128.    He refrains because of the prohibition on carry and the possession of defensive handgun ammunition set forth in the fish and game regulations set forth above.

129.    He refrains from carrying at the Tae Kwan Do school, the bagpipe classes, and his continuing education classes because of the prohibition on carry at a "school, college, university or other educational institution" set forth in A4769 section 7(a)(7).and N.J.S. 2C: 39-5(e) because he is unsure if those qualify as a "school, college, university or other educational institution" within the meaning of those sections because those terms are vague and those statutes do not define those terms.

130.    He refrains from carrying at any of the other businesses located in the same strip mall as the Tae Kwan Do school, because of the prohibition on carry at a "school, college, university or other educational institution" set forth in A4769 section 7(a)(7).and N.J.S. 2C: 39-5(e) because those prohibitions include any part of the buildings, grounds, or parking area. Therefore, Plaintiff Siegel fears that the prohibition on carry at "school, college, university or

other educational institution" also includes all other businesses or other uses that share a parcel of property.

131.    He refrains from carrying at his son's Tae Kwan Do competitions because of Section 7(a)(11).

132.    He refrains from carrying his handgun loaded and on his person in his car because of the prohibition on doing so in a vehicle set forth in A4769 section 7(b)(1).

133.    He also refrains from carrying his handgun loaded and on his person on a bus or train because the term "vehicle" set forth in A4769 section 7(b)(1) is vague and undefined, and he is unsure whether he may lawfully do so on a bus or train.

134.    He also refrains because of the prohibition on carry on private property set forth in A4769 section 7(a)(24). Some of the foregoing places are private property, and none of the owners of the private property on which he would otherwise carry has provided express consent or has posted the required sign granting permission. Notably, tenants cannot consent, and therefore many business owners will not be able to allow their customers to carry.

135.    As a result of the foregoing prohibitions, Plaintiff Siegel can carry his handgun virtually nowhere outside his home.

136.    Plaintiff Siegel also intends to apply for additional Permits to Purchase and therefore will be subject to the new requirements of N.J.S. 2C:58-3.

### 2) Plaintiff Jason Cook

137.    Plaintiff Jason Cook is the general manager of a pharmacy in Willingboro, New Jersey.

138.    Plaintiff Cook is a firearm owner and Handgun Carry Permit holder because he believes that possession and carry of firearms is an important aspect of protecting himself from the risk of violent crime.

139.    Plaintiff Cook obtained his Handgun Carry Permit because he recognizes that violent crime can take place anywhere, including when he is outside the home.

140.    In particular, Plaintiff Cook is concerned about the area where he works, which is an area that experiences elevated levels of crime.

141.    Prior to the passage of A4769, on several occasions, Plaintiff Cook lawfully carried his handgun at medical appointments, but only those medical appointments that did not require that he disrobe, so that he could maintain safe possession and control of his handgun at all times.

142.    Several times per month Plaintiff Cook enjoys the walking trails in State parks, and during the summer enjoys walks or fishing at the public beaches in Seaside, Avon, Belmar, Point Pleasant, and Manasquan New Jersey.

143.    Because his grandparents lived in Union County, he has spent a great deal of time in Union County over the years.  He currently still enjoys spending time at Galloping Hill Park in Kenilworth several times per year.

144.    However, on or about November 10, 2022, the Union County Board of County Commissioners passed Ordinance 840-2022 designating "all recreational facilities and parks owned or operated by the County. . ." as gun free zones.

145.    Galloping Hill Park, which is part of the Union County Parks system, has therefore been declared a gun free zone. Pursuant to A4769 section 7(a)(10), handgun carry is therefore prohibited in Galloping Hill Park.

146.    Plaintiff Cook has a one year old nephew. When his nephew is older, he will take

his nephew to playgrounds near his home.

147.     Several times per year Plaintiff Cook enjoys the Popcorn Park Zoo in Forked River, New Jersey, the Adventure Aquarium in Camden, New Jersey, and Jenkinson's Aquarium in Point Pleasant Beach, New Jersey.

148.     Plaintiff Cook goes to movie theatres and the Medieval Times theatre from time to time. He also attends concerts at the Prudential Center in Newark, New Jersey, the PNC Bank Arts Center in Holmdel, New Jersey, and the BB&T Pavilion in Camden, New Jersey.

149.     Once per month, Plaintiff Cook enjoys trips to the casinos in Atlantic City, New Jersey. When he does so he enjoys gambling on the casino floors, dining in the casino restaurants, attending shows in the casino theatres, and staying in the casino hotels.

150.     Plaintiff Cook attends races several times per year at Atco Dragway racetrack in Waterford Township, New Jersey.

151.     Plaintiff Cook enjoys dining out at restaurants. Some of these restaurants have a license to serve alcohol.

152.     At least once per month, Plaintiff Cook drives his family members and drops them off or picks them up at Newark Airport or Atlantic City Airport.

153.     Plaintiff Cook enjoys snowboarding and skiing. Every few years, he travels to New Hampshire and is planning a trip to Utah next year for these activities.

154.     He is licensed to carry a handgun in both New Hampshire and Utah, and on some of these trips he will fly and wishes to bring his handgun with him to carry for protection. If he brought his handgun with him during air travel, he would declare his handgun unloaded and properly cased and packed at the airline ticket counter as required by federal law (49 C.F.R. § 1540.111).

155.    Plaintiff Cook regularly drives a car but also regularly rides a motorcycle.

156.    From time to time, Plaintiff Cook takes professional education classes for work. He also takes firearm training classes, and motorcycle classes from time to time.

157.    From time to time, Plaintiff Cook attends or passes within 100 feet of public gatherings and events, but he generally does not know which ones require a government permit.

158.    Anyone can encounter a place where motion picture or television images are being made while out in public, including television news coverage. Plaintiff Cook has done so multiple times in the past, and in each instance he approached the location to inquire about the production and to determine if he recognized any of the actors or personalities involved. He would again in the future approach such locations in the same manner if he encountered them to see what film or television show was being filmed.

159.    Plaintiff Cook is a private homeowner. He would allow the carry of handguns on his property, but he does not want to have to post a sign on his property explicitly saying so.

160.    Plaintiff Cook would carry his handgun in all of the foregoing places and would carry his handgun loaded and on his person in his car and on his motorcycle but he refrains from doing so for fear of arrest and prosecution.

161.    He refrains because of the prohibition on carry within 100 feet of public gatherings set forth in A4769 section 7(a)(6).

162.    He refrains because of the prohibition on carry at zoos set forth in A4769 section 7(a)(9).

163.    He refrains because of the prohibition on carry at parks, beaches, recreation facilities or areas, and playgrounds set forth in A4769 section 7(a)(10) and the designation by Union County of Galloping Hill Park as a gun free zone.

164.   He refrains because of the prohibition on carry at restaurants and other locations where alcohol is served set forth in A4769 section 7(a)(15), even though he would not consume alcohol at these locations while carrying his handgun.

165.   He refrains because of the prohibition on carry at entertainment facilities set forth in A4769 section 7(a)(17).

166.   He refrains because of the prohibition on carry in casinos and related facilities set forth in A4769 section 7(a)(18) and N.J.A.C. 13:69D–1.13.

167.   He refrains because of the prohibition on carry at airports and public transportation hubs set forth in A4769 section 7(a)(20), even though he would not carry his handgun in the sterile/secure areas of any airport.

168.   He refrains because of the various prohibitions on carry in medical and medical type facilities set forth in A4769 section 7(a)(21) and (22).

169.   He refrains because of the prohibition on carry at public film and television locations set forth in A4769 section 7(a)(23).

170.   He refrains from carrying at professional education classes, firearm classes, and motorcycle classes because of the prohibition on carry at a "school, college, university or other educational institution" set forth in A4769 section 7(a)(7).and N.J.S. 2C: 39-5(e) because he is unsure if those qualify as a "school, college, university or other educational institution" within the meaning of those sections because those terms are vague and those statutes do not define those terms.

171.   He refrains from carrying his handgun loaded and on his person in his car because of the prohibition on doing so in a vehicle set forth in A4769 section 7(b)(1).

172.    He also refrains from carrying his handgun on his motorcycle at all because the term "vehicle" set forth in A4769 section 7(b)(1) is vague and undefined, and he is unsure whether he may lawfully do so on his motorcycle. Section 7(b)(1) requires that a handgun be unloaded and contained in a closed and securely fastened case, gunbox, or locked unloaded in the trunk of a vehicle, and none of those measures are possible on his motorcycle.

173.    He also refrains because of the prohibition on carry on private property set forth in A4769 section 7(a)(24). Some of the foregoing places are private property, and none of the owners of the private property on which he would otherwise carry has provided express consent or has posted the required sign granting permission. Notably, tenants cannot consent, and therefore many business owners will not be able to allow their customers to carry.

174.    As a result of the foregoing prohibitions, Plaintiff Cook can carry his handgun virtually nowhere outside his home.

175.    Plaintiff Cook also intends to apply for additional Permits to Purchase and therefore will be subject to the new requirements of N.J.S. 2C:58-3.

### 3) Plaintiff Joseph DeLuca

176.    Plaintiff Joseph DeLuca is an automotive repair mechanic in Marlton, New Jersey.

177.    Plaintiff DeLuca is a firearm owner and Handgun Carry Permit holder because he believes that possession and carry of firearms is an important aspect of protecting himself and his wife from the risk of violent crime.

178.    Plaintiff DeLuca obtained his Handgun Carry Permit because he recognizes that violent crime can take place anywhere, including when he is outside the home.

179.    In particular, Plaintiff DeLuca recalls an incident at his wife's former place of employment where one of her co-workers was shot and killed.

180.   Plaintiff DeLuca regularly enjoys walking his dog in State parks such as Wharton State Forest and Black Run Preserve, and regularly enjoys public beaches in New Jersey.

181.   From time to time, Plaintiff DeLuca enjoys the Cape May Zoo.

182.   Plaintiff DeLuca regularly goes to movie theatres, and from time to time attends racing events at Atco Dragway racetrack in Waterford Township, New Jersey.

183.   Once per month, Plaintiff DeLuca enjoys trips to the casinos in Atlantic City, New Jersey. When he does so he enjoys gambling on the casino floors, dining in the casino restaurants, attending shows in the casino theatres, and staying in the casino hotels.

184.   Once per week, Plaintiff DeLuca visits a friend who lives on a boat in Farley State Marina. In order to access the Marina he must traverse the property of the Golden Nugget Casino.

185.   Plaintiff DeLuca enjoys dining out at restaurants. Some of these restaurants have a license to serve alcohol.

186.   Plaintiff DeLuca regularly drives a car but also regularly rides a motorcycle and a bicycle. Plaintiff DeLuca also owns a boat, and on occasion takes a PATCO train from Ashland Station in Voorhees, New Jersey to Philadelphia, Pennsylvania. Plaintiff DeLuca is licensed to carry a handgun in Pennsylvania.

187.   From time to time, Plaintiff DeLuca takes professional education classes for work.

188.   From time to time, Plaintiff DeLuca attends or passes within 100 feet of public gatherings and events, but he generally does not know which ones require a government permit.

189.   Plaintiff DeLuca is a private homeowner. He would allow the carry of handguns on his property, but he does not want to have to post a sign on his property explicitly saying so.

190.    Plaintiff DeLuca would carry his handgun in all of the foregoing places and would carry his handgun loaded and on his person in his car and on his motorcycle and bicycle and on the train, but he refrains from doing so for fear of arrest and prosecution.

191.    He refrains because of the prohibition on carry within 100 feet of public gatherings set forth in A4769 section 7(a)(6).

192.    He refrains because of the prohibition on carry at zoos set forth in A4769 section 7(a)(9).

193.    He refrains because of the prohibition on carry at parks, beaches, and recreation facilities or areas set forth in A4769 section 7(a)(10).

194.    He refrains because of the prohibition on carry at restaurants and other locations where alcohol is served set forth in A4769 section 7(a)(15), even though he would not consume alcohol at these locations while carrying his handgun.

195.    He refrains because of the prohibition on carry at entertainment facilities set forth in A4769 section 7(a)(17).

196.    He refrains because of the prohibition on carry in casinos and related facilities set forth in A4769 section 7(a)(18) and N.J.A.C. 13:69D–1.13.

197.    He refrains because of the prohibition on carry at public transportation hubs set forth in A4769 section 7(a)(20).

198.    He refrains from carrying at professional education classes because of the prohibition on carry at a "school, college, university or other educational institution" set forth in A4769 section 7(a)(7).and N.J.S. 2C: 39-5(e) because he is unsure if those qualify as a "school, college, university or other educational institution" within the meaning of those sections because those terms are vague and those statutes do not define those terms.

199.   He refrains from carrying his handgun loaded and on his person in his car, on his boat, or on a train because of the prohibition on doing so in a vehicle set forth in A4769 section 7(b)(1). He is further unsure of whether he may carry his handgun loaded and on his person on his boat or on a train, because the term "vehicle" set forth in A4769 section 7(b)(1) is vague and undefined, and he is unsure whether he may lawfully do so on his boat or on a train.

200.   He also refrains from carrying his handgun on his motorcycle and bicycle at all because the term "vehicle" set forth in A4769 section 7(b)(1) is vague and undefined, and he is unsure whether he may lawfully do so on his motorcycle or his bicycle. Section 7(b)(1) requires that a handgun be unloaded and contained in a closed and securely fastened case, gunbox, or locked unloaded in the trunk of a vehicle, and none of those measures are possible on his motorcycle or his bicycle.

201.   He also refrains because of the prohibition on carry on private property set forth in A4769 section 7(a)(24). Some of the foregoing places are private property, and none of the owners of the private property on which he would otherwise carry has provided express consent or has posted the required sign granting permission. Notably, tenants cannot consent, and therefore many business owners will not be able to allow their customers to carry.

202.   As a result of the foregoing prohibitions, Plaintiff DeLuca can carry his handgun virtually nowhere outside his home.

### 4) Plaintiff Nicole Cuozzo

203.   Plaintiff Nicole Cuozzo is a member of the Bible Baptist Church in New Egypt, New Jersey.

204.    Plaintiff Cuozzo is a firearm owner because she believes that possession and carry of firearms is an important aspect of protecting her family and her church from the risk of violent crime.

205.    Plaintiff Cuozzo is applying for her Handgun Carry Permit because she recognizes that violent crime can take place anywhere, including when she is outside the home, and including at the church. Plaintiff Cuozzo is currently in the process of completing her shooting range qualification for her Handgun Carry Permit. Once completed she will satisfy all of the requirements for a Handgun Carry Permit.

206.    Plaintiff Cuozzo is aware of numerous mass shooting incidents which took place at houses of worship around the United States, including the First Baptist Church in Sutherland Springs, Texas, the Emanuel African Methodist Episcopal Church in Charleston, South Carolina, and the Tree of Life Synagogue in Pittsburgh, Pennsylvania.

207.    In particular, however, Plaintiff Cuozzo is aware of the Freeway Church of Christ in Texas where, in 2019, a volunteer parishioner armed with a concealed handgun successfully ended an attack by an active shooter within six seconds after it began.

208.    Plaintiff Cuozzo welcomed the *Bruen* decision because her church cannot afford full time professional security to protect the members of the church against the possibility of attack by an active shooter. The church conducts services and other events most days of the week in addition to Sundays, and holds special events for the church members and the community at large on holidays and other special days throughout the year.

209.    Plaintiff Cuozzo, as well as members of the clergy, the diaconate, and the congregation who either have or are applying and qualify for Handgun Carry Permits would carry

their handguns to protect the people attending church; however, they refrain from doing so for fear of arrest and prosecution.

210.    This is because in addition to services and other religious events, the church also conducts Sunday school classes, adult bible classes, and a homeschool co-op in which parents who homeschool their children bring their children together at the church for certain joint events and learning programs.

211.    However, once she has her permit, Plaintiff Cuozzo will refrain from carrying her handgun at the church because of the prohibition on carry at a "school, college, university or other educational institution" set forth in A4769 section 7(a)(7) because she is unsure if the Sunday school classes, adult bible classes, and homeschool co-op qualify as a "school, college, university or other educational institution" within the meaning of those sections because those terms are vague and A4769 does not define those terms.

212.    She will refrain from carrying in any part of the church or church grounds because of the prohibition on carry at a "school, college, university or other educational institution" set forth in A4769 section 7(a)(7) because that prohibition includes any part of the buildings, grounds, or parking area. Therefore, Plaintiff Cuozzo fears that the prohibition on carry at "school, college, university or other educational institution" also includes the entire church building and all of the church grounds and applies at all times, not merely those portions of the church property used for the classes and during class time.

### 5) Plaintiff Timothy Varga

213.    Plaintiff Timothy Varga is a Deacon of the Grace Bible Church in Wall Township, New Jersey. He is a member of the church's security team.

214.    Plaintiff Varga is a firearm owner and has applied for a Handgun Carry Permit holder because he believes that possession and carry of firearms is an important aspect of protecting his family and his church from the risk of violent crime. Plaintiff Varga is also an accomplished competitive shooter.

215.    Plaintiff Varga applied for his Handgun Carry Permit because he recognizes that violent crime can take place anywhere, including when he is outside the home, and including at the church.

216.    Plaintiff Varga's application for a Handgun Carry Permit was approved by his Chief of Police.  On or about November 22, 2022, the Office of the Monmouth County Prosecutor wrote to the Superior Court of New Jersey indicating that Plaintiff Varga meets the requirements to obtain a Handgun Carry Permit and that the Office does not object to the permit's issuance.

217.    Although A4769 amended N.J.S. 2C:58-4 to remove the Superior Court from the Handgun Carry Permit issuance process, section 10 of A4769 provides as follows:

> 10.  (New section) a. Notwithstanding the provisions of subsection d. of N.J.S.2C:58-4, application determinations for a permit to carry a handgun that were pending before the Superior Court and filed prior to the date of enactment of [this bill] shall be made by the court.  *A Judge of the Superior Court may rely on the approval by the chief police officer or superintendent, as the case may be, as the basis for issuing the permit.* [Emphasis added.]

218.    Accordingly, Plaintiff Varga should be expected to receive his Handgun Carry Permit forthwith.

219.    Plaintiff Varga is aware of numerous mass shooting incidents which took place at houses of worship around the United States, including the First Baptist Church in Sutherland Springs, Texas, the Emanuel African Methodist Episcopal Church in Charleston, South Carolina, and the Tree of Life Synagogue in Pittsburgh, Pennsylvania.

220.     In particular, however, Plaintiff Varga is aware of the Freeway Church of Christ in Texas where, in 2019, a volunteer parishioner armed with a concealed handgun successfully ended an attack by an active shooter within six seconds after it began.

221.     Plaintiff Varga welcomed the *Bruen* decision because the church's campus cannot reasonably be protected with paid security. The campus consists of 14 acres of land with three buildings (church sanctuary, school building, and gymnasium) totaling 47,000 square feet.

222.     The school building and gymnasium building are leased to the Ambassador Christian Academy.

223.     The church holds formal prayer services in the sanctuary building on Sundays and Wednesdays with less formal prayer meetings all week.

224.     Several days during the week the church also holds bible study groups for adults and children of all ages.

225.     Throughout the year the church holds sports leagues and clinics, as well as special seasonal or holiday events with hundreds or in some instances several thousand attendees.

226.     Overall, the church is very busy with events most days of the year.

227.     The church's meager security budget barely covers a handful of such events, and even those are inadequately manned. Further, the funds used for the bare bones security budget could instead be used for desperately needed additional administrative staff, clergy, technology staff, capital improvements, facilities upkeep, and additional ministry work.

228.     There are members of the church who already received their permits. Plaintiff Varga and others members of the clergy, the diaconate, and the congregation who either have or are applying and qualify for Handgun Carry Permits would carry their handguns to protect the people attending church; however, they refrain from doing so for fear of arrest and prosecution.

229.    Plaintiff Varga refrains from carrying in any part of the church sanctuary or church campus because of the prohibition on carry at a "school, college, university or other educational institution" set forth in A4769 section 7(a)(7).and N.J.S. 2C:39-5(e) because those prohibitions include any part of the buildings, grounds, or parking area. Therefore, Plaintiff Varga fears that the prohibition on carry at "school, college, university or other educational institution" also includes the entire church campus and all of the buildings, not merely the two buildings leased by Ambassador Christian Academy.

230.    Plaintiff Varga also refrains from carrying his handgun at the church because of the prohibition on carry at a "school, college, university or other educational institution" set forth in A4769 section 7(a)(7) because he is unsure if the various adult and children's bible study classes qualify as a "school, college, university or other educational institution" within the meaning of those sections because those terms are vague and A4769 does not define those terms.

### 6) Plaintiff Christopher Stamos

231.    Plaintiff Christopher Stamos is a data analyst who lives in Bayonne, New Jersey.

232.    Plaintiff Stamos is a firearm owner and Handgun Carry Permit holder because he believes that possession and carry of firearms is an important aspect of protecting himself and his wife from the risk of violent crime.

233.    Plaintiff Stamos obtained his Handgun Carry Permit because he recognizes that violent crime can take place anywhere, including when he is outside the home.

234.    On or about November 9, 2022, the City of Bayonne passed Ordinance O-22-36 designating "all public spaces owned, controlled or otherwise under the jurisdiction of the City of Bayonne" as gun free zones.

235.   16th Street Park and Cottage Street Park are public spaces owned, controlled or otherwise under the jurisdiction of the City of Bayonne and have therefore been designated gun free zones. Pursuant to A4769 section 7(a)(10), handgun carry is therefore prohibited in both locations.

236.   16th Street Park is a park, a playground, and also a beach. Several years ago, Bayonne converted a kayak launch area of the park into a beachfront by depositing sand and constructing a sandy beach area for public recreation. Bayonne holds its annual "Paddle the Peninsula" event at the 16th Street Park beachfront.

237.   Plaintiff Stamos annually accompanies his wife when she participates in the Paddle the Peninsula event at 16th Street Park and also otherwise enjoys the park several times per year, including when the park hosts its annual Renaissance Festival and Irish Festival.

238.   Plaintiff Stamos also, from time to time, takes his young nephews to Cottage Street Park.

239.   Plaintiff Stamos would carry his handgun at both 16th Street Park and Cottage Street Park; however, he refrains from doing so for fear of arrest and prosecution.

### 7) Plaintiff Kim Henry

240.   Plaintiff Kim Henry was previously a part time substitute teacher in Pemberton, New Jersey. Plaintiff is a cancer survivor, and due to her current state of health she cannot work. She supports her family on social security disability and child support payments.

241.   She is a single mother of two children who lives in constant fear from death threats from her ex-boyfriend.

242.   In or about November 2022, Plaintiff Henry's 10 month relationship with her then boyfriend ended. Since then she has obtained a restraining order against him.

243.   Prior to her TRO hearing, he sent her text messages such as "I know you are home."

244.   On the day of her TRO hearing she received phone calls with distorted voices telling her that she would not make it up the steps of the courthouse for her hearing.

245.   Since then she also has received numerous threatening telephone calls from unknown voices and unknown numbers that the police have advised her are "spoofed" numbers and therefore untraceable.

246.   Plaintiff Henry does not currently own any firearms, but she wishes to acquire firearms to protect herself and her children.

247.   Plaintiff Henry qualifies for and imminently intends to apply for an FID and one or more Purchase Permits and in doing so will be subject to the unconstitutional provisions of N.J.S. 2C:58-3 as set forth above and as further discussed below.

248.   Plaintiff Henry also qualifies for and intends to apply for a Handgun Carry Permit in order to protect herself and her children, and in doing so will she be subject to the unconstitutional provisions of N.J.S. 2C:58-4 as set forth above and as further discussed below.

249.   Because she relies on social security disability for support, the massive fee increases in A4769 are a severe hardship for her.

250.   Plaintiff ANJRPC has members, including Plaintiffs Siegel, Cook, DeLuca, Cuozzo, Varga, Stamos, and Henry who possess or have applied or will apply and qualify for Handgun Carry Permits and who wish to carry their handguns—and but for the provisions set forth above, would carry their handguns in public.

251.   Plaintiff ANJRPC has members, including Plaintiffs Siegel, Cook, and Henry who imminently intend to apply for an FID and/or one or more Purchase Permits and in doing so will

be subject to the unconstitutional provisions of N.J.S. 2C:58-3 as set forth above and as further discussed below.

### COUNT ONE
### Deprivation of Plaintiffs' Rights Under U.S. CONST. amends. II and XIV

252.    Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

253.    The Second Amendment to the U.S. Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Second Amendment applies against the States via the Fourteenth Amendment. *See McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010).

254.    The carrying of handguns in public for self-defense falls plainly within the text of the Second Amendment under *Bruen*.

255.    Therefore, the State bears the burden to demonstrate that any restriction on the public carry of handguns is consistent with the nation's historical tradition of firearms regulation,

256.    Defendants cannot make the required showing for large portions of A4769.

### A. Within 100 Feet of a Public Gathering, Etc.

257.    Section 7(a)(6) prohibits carrying a firearm:

(6) within 100 feet of a place where a public gathering, demonstration or event is held for which a government permit is required, during the conduct of such gathering, demonstration or event;

258.    Defendants cannot show that the prohibitions in A4769 section 7(a)(6) are consistent with the historical tradition of firearms regulation.

259.    Further, because a typical person cannot know which events require a permit, Plaintiffs cannot ascertain the facts necessary to avoid criminal liability.

260.    This causes Plaintiffs to avoid public gatherings where they otherwise have a constitutional right to carry a handgun, and therefore this provision unconstitutionally chills the exercise of the fundamental right to bear arms

### B. Overly Broad Application of School, Etc. Prohibitions to Multi-Use Property

261.    Defendants cannot show that applying the prohibitions in A4769 section 7(a)(7), (8), and (9) and N.J.S. 2C:39-5(e) broadly to the entirety of a multi-use property is consistent with the historical tradition of firearms regulation. This applies to prohibitions on schools, daycares, and any other prohibited location that is part of a multi-use property which contains non-prohibited locations, such as churches, tailor shops, dry cleaners, book stores, etc.

262.    Further, the overbreadth of these provisions causes Plaintiffs to avoid locations in multi-use properties where they otherwise have a constitutional right to carry a handgun, and therefore these provisions unconstitutionally chill the exercise of the fundamental right to bear arms.

### C. Zoos

263.    Defendants cannot show that the prohibitions in A4769 section 7(a)(9) regarding zoos are consistent with the historical tradition of firearms regulation.

### D. Parks, Beaches, Recreation Facilities, Playgrounds

264.    Defendants cannot show that the prohibitions in A4769 section 7(a)(10) are consistent with the historical tradition of firearms regulation.

### E. Youth Sporting Events

265.    Defendants cannot show that the prohibitions in A4769 section 7(a)(11) are consistent with the historical tradition of firearms regulation.

### F. Libraries and Museums

266.    Defendants cannot show that the prohibitions in A4769 section 7(a)(12) are consistent with the historical tradition of firearms regulation.

### G. Places That Serve Alcohol (Without Regard to Consumption)

267.    Defendants cannot show that the prohibitions in A4769 section 7(a)(15) are consistent with the historical tradition of firearms regulation.

### H. Entertainment Facilities

268.    Defendants cannot show that the prohibitions in A4769 section 7(a)(17) are consistent with the historical tradition of firearms regulation.

### I. Casinos

269.    Defendants cannot show that the prohibitions in A4769 section 7(a)(18) and N.J.A.C. 13:69D–1.13 are consistent with the historical tradition of firearms regulation.

### J. Airports and Transportation Hubs (non-sterile/non-secure areas)

270.    Defendants cannot show that the prohibitions in A4769 section 7(a)(20) are consistent with the historical tradition of firearms regulation.

### K. Health Care and Health Care Type Facilities

271.    Defendants cannot show that the prohibitions in A4769 sections 7(a)(21) and (22) are consistent with the historical tradition of firearms regulation.

### L. Public Filming Locations

272.    Defendants cannot show that the prohibitions in A4769 section 7(a)(23) are consistent with the historical tradition of firearms regulation.

### M. Presumption Against Carry on Private Property

273.    Creating a presumption that carry on all private property in the State is prohibited unless the property owner affirmative and explicitly states otherwise is plainly calculated to result is the maximum prohibition on private property.

274.    Property owners who are indifferent to carry will automatically prohibit carry by default even though they would not otherwise choose to do so.

275.    Property owners who are wary of public or private social or political condemnation will also decline to provide affirmative permission, even though they would otherwise be willing to allow carry if they were not required to act affirmatively.

276.    Under the statute, only owners can consent, and therefore tenant businesses who wish to allow their customers to carry are not able to do so.

277.    Defendants cannot show that the prohibitions in A4769 section 7(a)(24) are consistent with the historical tradition of firearms regulation.

### N. Fish and Game Regulations

278.    Defendants cannot show that the prohibitions on carry and defensive handgun ammunition in N.J.A.C. 7:25–5.23(m), N.J.A.C. 7:25–5.23(i), N.J.A.C. 7:25–5.23(a), (c), and (f), and N.J.A.C. 7:25–5.23(f)(5)) are consistent with the historical tradition of firearms regulation.

### O. Vehicle Prohibition

279.    Defendants cannot show that the prohibitions in A4769 sections 7(b)(1) are consistent with the historical tradition of firearms regulation.

### P. Insurance Requirement

280.   Defendants cannot show that the prohibitions in A4769 section 4 are consistent with the historical tradition of firearms regulation.

281.   Further, requiring insurance as a condition to the exercise of a constitutional right is unconstitutional. *See NAACP v. Claiborne Hardware Co.,* 458 U.S. 886 (1982); *iMatter Utah v. Njord*, 774 F.3d 1258, 1270 (10th Cir. 2014) (quoting *Claiborne Hardware Co*., 458 U.S. at 931).

### Q. Excessive Fees

282.   Defendants cannot show that the substantial new fees set forth in N.J.S. 2C:58-3(f) and 2C:58-4(c) are consistent with the historical tradition of firearms regulation.

### R. Subjective Permit Disqualifiers

283.   Defendants cannot show that the following subjective permit disqualifiers in N.J.S. 2C:58-3 are consistent with the historical tradition of firearms regulation:

> (5) To any person where the issuance would not be in the interest of the public health, safety or welfare because the person is found to be lacking the essential character of temperament necessary to be entrusted with a firearm.
>
> known in the community in which the person lives as someone who has engaged in acts or made statements suggesting the person is likely to engage in conduct, other than justified self-defense, that would pose a danger to self or others,

284.   Further, in *Bruen*, the Supreme Court made clear that permitting systems that rely on subjective criteria are *per se* unconstitutional.

### S. Onerous New Procedures in N.J.S. 2C:58-4 – Multiple Interviews, Essays, and Open-Ended Discovery

285.   As set forth above in detail, the revisions to N.J.S 2C:58-4 introduce a series of new requirements that raise the procedures required to obtain a Handgun Carry Permit from merely

abusive to utterly sadistic, including: (1) multiple interviews by law enforcement of not only the applicant but also all four references; (2) an affirmative obligation by the four references to essentially write an essay in support; and (3) an open ended invitation to conduct a fishing expedition into whatever the issuing authority desires include intrusion into private social media accounts.

286.    Defendants cannot show that the foregoing are consistent with the historical tradition of firearms regulation.

287.    Accordingly, the foregoing provisions are invalid under the Second Amendment.

## COUNT TWO
### Deprivation of Plaintiffs' Rights Under U.S. Const. amend. XIV
### (Equal Protection)

288.    Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

289.    The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

### A. Special Status for Judge, Prosecutors, and Attorneys General

290.    Section 10 of A4769 exempts judges, prosecutors, and attorneys general from the prohibitions in the law as well as the basic rules regarding who may possess weapons set forth in N.J.S. 2C:39-5.

291.    There is no valid basis to provide judges, prosecutors, and attorneys general with such a special privilege, and thus the provision violates the Equal Protection Clause of the Fourteenth Amendment.

### B. Reverse Presumption for Private Property

292.    A4769 section 7(a)(24) creates an automatic presumption that it is unlawful to carry

a handgun on private property subject to criminal penalties.

293.   This presumption creates what is effectively a separate and vastly more onerous law of trespass for individuals exercising their fundamental constitutional right to bear arms in public.

294.   Individuals who choose not to exercise their constitutional right are subject to ordinary trespass law with ordinary procedures and consequences. Individuals who choose to exercise their constitutional right are subject to a more onerous procedures and consequences.

295.   There is no valid basis to treat more harshly on private property individuals who simply choose to exercise their constitutional right to bear arms. A4769 section 7(a)(24) therefore violates the Equal Protection Clause of the Fourteenth Amendment and is unconstitutional.

**COUNT THREE**
**Deprivation of Plaintiffs' Rights Under U.S. CONST. amend. XIV**
**(Due Process of Law – Void for Vagueness/Lack of Notice)**

296.   Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

297.   The Due Process Clause of the Fourteenth Amendment provides in pertinent part: "No State shall ... deprive any person of life, liberty, or property, without due process of law[.]

298.   "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926).

299.   "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement" *Kolender v Lawson*, 461 U.S. 352 (1983)

300.    A law that burdens constitutional rights or that imposes criminal penalties must meet a higher standard of specificity than a law that merely regulates economic concerns. *Hoffinan Estates v. Flipside, Hoffman Estates, Inc*., 455 U.S. 489,498-99 (1982). This higher standard applies here because the laws at issue impose criminal penalties. In addition, a higher standard also applies because the subject matter of the regulated conduct implicates the fundamental constitutional right to keep and bear arms.

### A. Subjective Permit Disqualifiers

301.    The following subjective permit disqualifiers in N.J.S. 2C:58-3 are standardless and vague and therefore they invite arbitrary application.

> (5) To any person where the issuance would not be in the interest of the public health, safety or welfare because the person is found to be lacking the essential character of temperament necessary to be entrusted with a firearm.

> known in the community in which the person lives as someone who has engaged in acts or made statements suggesting the person is likely to engage in conduct, other than justified self-defense, that would pose a danger to self or others,

### B. Unjustifiable Display of a Handgun

302.    Section 5(a)(5) of A4769 creates a new, unconstitutionally vague, fourth degree crime called "unjustified display of a handgun."

303.    Other parts of A4769 indicate what a person is required to do and not do when in possession of a handgun pursuant to a Handgun Carry Permit issued pursuant to N.J.S. 2C:58-4, but nothing in the statute gives a person any idea what constitutes the wholly independent statutory crime of "unjustified display of a handgun."

### C. "Carry"

304.    Although many parts of A4769 use the words "carry," no part of the law defines what act constitutes "carry" as opposed to possession or transport.

305.    As such, a person cannot know what specific conduct will subject her to criminal liability.

### D. Within 100 Feet of a Public Gathering

306.    Section 7(a)(6) prohibits carrying a firearm:

> (6) within 100 feet of a place where a public gathering, demonstration or event is held for which a government permit is required, during the conduct of such gathering, demonstration or event;

307.    However, a typical person cannot know which events require a permit and therefore cannot know how to avoid criminal liability under that provision.

308.    In addition to being vague, Section 7(a)(6) fails to provide adequate notice. Because a typical person cannot know which events require a permit, Plaintiffs cannot ascertain the facts necessary to avoid criminal liability.

### E. Vehicle Restrictions

309.    Section 7(b)(1) requires a handgun to be unloaded and secured when in a vehicle.

310.    The term "vehicle" in undefined. Therefore a person cannot know whether the vehicle restrictions apply only to cars or also to buses, trains, motorcycles, bicycles, boats, scooters, skateboards, etc.

311.    These provisions are therefore void for vagueness under the Due Process Clause of the Fourteenth Amendment.

### COUNT FOUR
### Deprivation of Plaintiffs' Rights Under U.S. Const. amend. I and XIV
### (Compelled Speech)

312.    Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

313.    A4769 impermissibly compels the speech of property owners and lessees. It requires property owners and lessees to espouse a belief one way or the other on the carriage of

firearms outside the home by requiring them to expressly consent or post a sign.

314.    Plaintiffs Siegel, Cook, and DeLuca are homeowners and they wish to allow the carry of handguns in their homes without posting a sign or engaging in express speech.

315.    The First Amendment prohibits the State from telling people what they must say. *See Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc*., 570 U.S. 205, 213 (2013).

316.    Section 7(a)(24) of A4769 is therefore unconstitutional.

**COUNT FIVE**
**Deprivation of Plaintiffs' Rights Under U.S. CONST. amend. I and XIV**

317.    Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

318.    To determine whether a Handgun Carry License applicant is eligible for a permit, a licensing officer shall meet with and interview the applicant. At this interview, the applicant shall provide to the licensing offer and the licensing officer shall review, among other things, the contents of an applicant's protected speech, including such information from the applicant or any other person, including but not limited to publicly available statements posted or published online by the applicant, as the chief police officer or superintendent deems reasonably necessary to conduct the review of the application; the names and contact information of no less than four character references who can attest that such applicant has not engaged in any acts or made any statements that suggest the applicant is likely to engage in conduct, other than lawful self-defense, that would pose a danger to the applicant or others and also provide relevant information supporting the certification, including the nature and extent of their relationship with the applicant and information concerning their knowledge of the applicant's use of drugs or alcohol.

319.    A4769 requirement that Handgun Carry License applicants provide to licensing officer publicly available statements posted or published online applies specifically to speakers

engaged in online communication, chilling their ability and willingness to speak on the internet, and preventing a Handgun Carry License applicant from speaking privately and/or anonymously.

320.    A4769 will chill the protected speech of the individual Plaintiffs and ANJRPC's members, because they will not know what they can and cannot say in their private lives and in their social media, and whether their exercise of protected speech may one day give a licensing officer pause in issuing a license to exercise an entirely different constitutionally protected right.

321.    A4769 allows a licensing officer to reject a Handgun Carry License application because of who the applicant associates with at home or online. A4769's requirement that Handgun Carry License applicants provide to a licensing officer their social media, if demanded, as well as names and contact information of at least four character references, and any other information the officer demands, are an unjustified government interference with an individual's choice to enter into and maintain certain intimate or private relationships. Thus, A4769 conditions the right to carry a firearm upon a person engaging in only government-approved speech and association.

322.    A4769 will interfere with the individual Plaintiffs and ANJRPC's members' choices to enter into and maintain certain intimate or private relationships because they will not know whether their associations may give a licensing officer pause in issuing a license to exercise an entirely different constitutionally protected right.

323.    The exercise of one constitutional right cannot be conditioned on the forfeiture or violation of another. *See, e.g., Simmons v. United States*, 390 U.S. 377, 393–94 (1968) (It is "intolerable that one constitutional right should have to be surrendered in order to assert another.").

324.    By infringing the rights to free speech and association, the New Jersey laws and regulations discussed in the foregoing allegations violate the First Amendment, which applies to

Defendants by operation of the Fourteenth Amendment, both facially and as applied to Plaintiffs, and they are therefore invalid.

### COUNT SIX
### Deprivation of Plaintiffs' Rights Under U.S. CONST. amend. I and XIV
### (Right to Access Library)

325.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

326.     The First Amendment to the United States Constitution guarantees the right to access a public library.

327.     The exercise of one constitutional right cannot be conditioned on the forfeiture or violation of another. *See, e.g., Simmons v. United States*, 390 U.S. 377, 393–94 (1968) (It is "intolerable that one constitutional right should have to be surrendered in order to assert another.").

328.     Because Section 7(a)(12) prohibits a person who is exercising her Second Amendment right to bear arms from entering a public library that provision violates the First Amendment and is unconstitutional.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for an order and judgment:

a.     Declaring the foregoing provisions of law unconstitutional and thus devoid of any legal force or effect;

b.     Temporarily, preliminarily, and permanently enjoining Defendants Platkin, Callahan, and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of the injunction, from enforcing the foregoing provisions of law;

c.     Awarding Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action, pursuant to 42 U.S.C. § 1988; and

    d.      Granting such other and further relief as this Court deems just and proper.

Dated: December 22, 2022                Respectfully submitted,

<u>s/ Daniel L. Schmutter</u>
Daniel L. Schmutter
Hartman & Winnicki, P.C.
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040
(201) 967-0590 (fax)
dschmutter@hartmanwinnicki.com
*Attorneys for Plaintiffs*

## DECLARATION OF COUNSEL PURSUANT TO LOCAL CIV. R. 11.2

The undersigned hereby states that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

I declare under penalty of perjury that the foregoing is true and correct.

<u>s/ Daniel L. Schmutter</u>
Daniel L. Schmutter
Hartman & Winnicki, P.C.
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040
(201) 967-0590 (fax)
dschmutter@hartmanwinnicki.com
*Attorney for Plaintiffs*

Dated: December 22, 2022