# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

AARON SIEGEL; JASON COOK; JOSEPH DELUCA; NICOLE CUOZZO; TIMOTHY VARGA; CHRISTOPHER STAMOS; KIM HENRY; *and* ASSOCIATION OF NEW JERSEY RIFLE & PISTOL CLUBS, INC.,

    *Plaintiffs*,

  v.

MATTHEW PLATKIN, in his official capacity as Attorney General of New Jersey,

PATRICK J. CALLAHAN, in his official capacity as Superintendent of the New Jersey Division of State Police,

    *Defendants*.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 1:22-cv-7463-KMW-AMD

Oral Argument Requested

Motion Date: January 12, 2023

**<u>CIVIL ACTION</u>**


**(ELECTRONICALLY FILED)**


**PLAINTIFFS' SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF THEIR MOTION FOR A TEMPORARY RESTRAINING ORDER AND ADDRESSING: (1) THE TRO ENTERED IN *KOONS V. REYNOLDS* AND (2) THE GRANTING OF REHEARING EN BANC IN *RANGE V. ATTORNEY GENERAL UNITED STATES***

Daniel L. Schmutter
HARTMAN & WINNICKI, P.C.
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040
(201) 967-0590 (fax)
dschmutter@hartmanwinnicki.com
*Attorneys for Plaintiffs*

i

# **Table of Contents**

INTRODUCTION ................................................................................. 1

1. The Pending Motions........................................................................ 1

2. The *Koons* TRO. ............................................................................ 3

3. Rehearing En Banc in *Range v. Attorney General United States*. ...................... 4

4. Supplemental Briefing. ..................................................................... 5

5. Impact of *Koons* TRO on the Consolidation Motion. ......................................... 5

    a)  The Case Against Consolidating *Koons* into This Matter is Even
        Stronger ....................................................................... 5

    b)  The Within Case Should be Consolidated into *Koons*. ................................ 8

6. Impact of *Koons* TRO on the Pending TRO Motion......................................... 12

7. Impact of *Range* En Banc Grant......................................................... 14

## <u>Table of Authorities</u>

**Page(s)**

**Cases**

*A.C.L.U. v. Ashcroft*, 322 F.3d 240 (3d Cir. 2003) ...................................................... 8

*Burlington N. R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227 (3d
    Cir. 1995) ........................................................................................................... 13

*E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969 (3d Cir. 1988) .................... 11

*Koons v. Reynolds*, 22-cv-7464 ....................................................................... *passim*

*Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65
    (D.N.J. 1993) .................................................................................................. 6, 8

*Mazahreh v. Platkin*,
    1:20-cv-17598, ECF No. 51 (D.N.J. Oct. 12, 2022) ......................................... 12

*New York State Rifle & Pistol Association v. Bruen*,
    142 S. Ct. 2111 (2022) ..................................................................................... 1, 7

*Range v. Att'y Gen. United States*, 53 F.4th 262 (3d Cir. 2022), *reh'g en
    banc granted, opinion vacated sub nom. Range v. Att'y Gen. United
    States of Am.*, No. 21-2835, 2023 WL 118469 (3d Cir. Jan. 6, 2023) ........ *passim*

*1621 Route 22 W. Operating Co., LLC v. Nat'l Lab. Rels. Bd.*, 825 F.3d
    128 (3d Cir. 2016) ................................................................................................ 4

## INTRODUCTION

**1.     The Pending Motions**

There are three motions pending before this Court. The first is Plaintiffs' urgent motion for a temporary restraining order ("TRO Motion"). That motion was originally returnable January 9, 2023. The TRO Motion urgently asks the Court to restrain enforcement of so-called "sensitive place" restrictions in A4769 that went into effect on December 22, 2022 and represent an all-out nullification of Plaintiffs' fundamental right to carry a handgun outside their homes for self-defense. *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022). The Supreme Court was clear that the Second Amendment guarantees the right of individuals to carry a handgun for self-defense in most places under most circumstances as they go about their day. *Id*.

A4769 turned that right on its head, designating nearly everywhere in the State of New Jersey a so-called "sensitive place" where it is a criminal act to exercise that fundamental right, including, presumptively, all private property in the State and even in one's own car.

Because of the minefield of criminal liability created by A4769, Plaintiffs have had to not only forego exercizing their fundamental constitutional rights, but they have had to expose themselves to potential criminal violence just to avoid arrest and prosecution under this unconstitutional new law.

The second motion is Plaintiffs' motion for a preliminary injunction ("PI Motion").

1

The PI Motion seeks relief after the TRO Motion is decided and seeks to preliminarily enjoin the same provisions as the TRO Motion *plus* several other unconstitutional provisions of A4769 that also work to infringe upon the fundamental right to keep and bear arms.

The third motion is a motion brought by Defendants under Fed. R. Civ. P. 42 to consolidate this matter with another matter pending before the Honorable Renee Bumb, U.S.D.J. captioned *Koons v. Reynolds*, 22-cv-7464 ("Consolidation Motion").

The *Koons* Plaintiffs also challenge so-called "sensitive place" restrictions under A4769 as violative of the Second Amendment.[1] However, they challenge only five "sensitive place" restrictions while the Plaintiffs in this case challenge quite a few more.

Two other important differences between this matter and *Koons* are that the *Koons* plaintiffs assert only Second Amendment challenges to A4769, while the plaintiffs in this case assert Second Amendment challenges as well as challenges under the First Amemndment, the Due Process Clause, and the Equal Protection Clause.  Further, while the *Koons* plaintiffs only challenge five "sensitive place" provisions, the Plaintiffs in this case challenge more "sensitive place" prohibitions and also challenge other unconstitutional aspects of A4769.

For these and other reasons as more fully set forth in the papers already in the

---

[1] Defendants and the *Koons* Plaintiffs refer to A4769 by its session law designation: "Chapter 131."

record, both the Plaintiffs in this case and the *Koons* plaintiffs have opposed the Consolidation Motion. *See* ECF Nos. 10, 11.

**2.      The *Koons* TRO**

On January 5, 2023, Judge Bumb heard oral argument on the motion of the *Koons* plaintiffs for a TRO. *Koons* ECF No. 33. As of the time of that hearing, oral argument on Plaintiffs' TRO Motion in this matter had been set for four days later on January 9, 2023.

On the morning of January 9, 2023, just minutes before the scheduled oral argument on the TRO Motion in this case, Judge Bumb released a 60 page opinion and an order granting the *Koons* plaintiffs' TRO motion in its entirety ("*Koons* TRO"), temporarily restraining enforcement of the following restrictions on the carry of handguns set forth in Section A4769:

7(a)

(12)   a publicly owned or leased library or museum;

(15)   a bar or restaurant where alcohol is served, and any other site or facility where alcohol is sold for consumption on the premises;

(17)   a privately or publicly owned and operated entertainment facility within this State, including but not limited to a theater, stadium, museum, arena, racetrack or other place where performances, concerts, exhibits, games or contests are held;

(24)   private property, including but not limited to residential, commercial, industrial, agricultural, institutional or undeveloped property, unless the owner has provided express consent or has posted a sign indicating that it is permissible to carry on the premises a concealed handgun with a valid and lawfully issued permit under N.J.S.2C:58-4, provided that nothing in this paragraph shall be construed to affect the authority to keep or carry

a firearm established under subsection e. of N.J.S.2C:39-6;

7(b)

(1)   A person, other than a person lawfully carrying a firearm within the authorized scope of an exemption set forth in subsection a., c., or l. of N.J.S.2C:39-6, who is otherwise authorized under the law to carry or transport a firearm shall not do so while in a vehicle in New Jersey, unless the handgun is unloaded and contained in a closed and securely fastened case, gunbox, or locked unloaded in the trunk of the vehicle.

*Koons* ECF Nos. 33, 34.

**3.**    **Rehearing En Banc in *Range v. Attorney General United States***

On November 16, 2022, the United States Court of Appeals for the Third Circuit decided *Range v. Att'y Gen. United States*, 53 F.4th 262 (3d Cir. 2022), *reh'g en banc granted, opinion vacated sub nom. Range v. Att'y Gen. United States of Am.*, No. 21-2835, 2023 WL 118469 (3d Cir. Jan. 6, 2023), a case that brought as as-applied challenge under *Bruen* to that plaintiff's conviction under 18 U.S.C. § 922(g)(1) for possessing a firearm after having been previously convicted under Pennsylvania law of an offense, though not labeled as a felony, but which nevertheless was "a crime punishable by imprisonment for a term exceeding one year" – a so-called "felony equivalent." 53 F.4th at 266-67.

Defendants rely on *Range* in their brief in opposition to the TRO Motion.

On January 6, 2023, the Third Circuit granted rehearing en banc in *Range*, thereby vacating the panel decision relied upon by Defendants ("En Banc Grant"). *See 1621 Route 22 W. Operating Co., LLC v. Nat'l Lab. Rels. Bd.*, 825 F.3d 128, 141 n.6 (3d Cir. 2016)

(The Third Circuit "decline[d] to follow" the reasoning of an opinion that had been vacated upon the grant of rehearing because a vacated opinion "carries no precedential force.").

**4.     Supplemental Briefing**

On January 9, 2023, at the start of the hearing on Plaintiffs' TRO Motions, the Court noted that the *Koons* TRO has been entered minutes earlier and indicated that the Court wanted time to read and consider Judge Bumb's opinion. The TRO Motion was adjourned to January 12, 2023.  The Court also indicated that the Consolidation Motion would also be heard that same day.

The Court further ordered supplemental briefing from the parties addressing the impact of both the *Koons* TRO and the *Range* En Banc Grant on the TRO Motion and the Consolidation Motion.

**5.     Impact of *Koons* TRO on the Consolidation Motion.[2]**

**a) The Case Against Consolidating *Koons* into This Matter is Even Stronger.**

As noted above, both the Plaintiffs in the within matter and the *Koons* plaintiffs have opposed the Consolidation Motion. As a result of the *Koons* TRO, the arguments against consolidating *Koons* into the within matter are even stronger than before the *Koons* TRO. This is because Judge Bumb has already devoted substantial judicial

---

[2] Plaintiffs address consolidation first under the assumption that the Court would want to resolve this issue before reaching the merits of the TRO Motion.

resources to the issues in the *Koons* case. Judge Bumb has already held a hearing and has issued a 60 page opinion addressing a detailed and thorough analysis of "sensitive place" restrictions under *Bruen.*

As Defendants acknowledge, one of the key factors in considering consolidation under Fed. R. Civ. P. 42 is judicial economy. *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 80-81 (D.N.J. 1993). Given, that Judge Bumb has already devoted substantial time and effort to the *Koons* TRO, consolidating *Koons* into this case would result in an enormous waste of judicial resources.

Though not guaranteed, it is highly likely that at the preliminary injunction ("PI") stage, the ruling in *Koons* will be the same, and the challenged sensitive place restrictions will be preliminarily enjoined. This is because, nothing in the *Koons* TRO is particularly fact sensitive.

Judge Bumb's long and thorough opinion addresses four main issues: (1) standing, (2) the State's burden to show historical tradition under *Bruen*, (3) irreparable harm from the constitutional violations, and (4) balancing of the equities/public interest.

Judge Bumb rejected Defendants standing objections. *Koons* ECF No. 34 at 27. Her analysis on standing is unlikely to change at the PI stage or at any later stage. This is because her ruling is based not on any detailed or microscopic analysis of the factual allegations of the *Koons* plaintiffs but rather on an analysis of the standing cases such as *Lujan v. Defs of Wildlife*, 504 U.S. 555 (1992) and how they operate. *Koons* ECF No. 34 at 21-27. This is largely a legal analysis and conclusion. There is no reason to expect that

it will or should change.

Judge Bumb rejected all of the State's proffered citations seeking to establish historical tradition and therefore found that Defendants would be unlikely to carry their burden under *Bruen*. *Koons* ECF No. 34 at 27-54.

Under *Bruen*, once a plaintiff demonstrates that her conduct falls with the text of the Second Amendment, the burden is on the State to show that its regulation is consistent with the Nation's historical tradition of firearms regulation. *Bruen* 142 S. Ct. at 2126.

As to each challeged "sensitive place," Judge Bumb found that carrying a concealed handgun fell squarely within the text of the Second Amendment. Judge Bumb then analyzed each historical citation and found that none of them established an historical tradition that could support the challeged restriction. *Koons* ECF No. 34 at 27-54.

Notably, Judge Bumb found that the State "has had six months since Bruen to identify well-established and representative historical analogues." And noted as follows:

> In fact, Chapter 131 expressly states that the sensitive-place prohibitions on dangerous weapons set forth in this act are rooted in history and tradition . . . analogous to historical laws that can be found from the Founding era to Reconstruction, which are also found in modern laws in many states." 2022 N.J. Laws c. 131 § 1(g).

*Id*. at 18-19. Based on that, Judge Bumb indicated that the State would not be given more time to identify further justification for its regulations. *Id*. at 19 n.5. Thus, the State's failure to establish the required historcical tradition is unlikely to improve at the PI stage.

Judge Bumb found that the *Koons* plaintiffs' constitutional injuries were

irreparable. *Id*. at 54-58. This was a legal conclsion and therefore unlikely to change at the PI stage.

Finally, Judge Bumb found that the balancing of the equities favored the plaintiffs, noting that "neither the government nor the public can generally claim an interest in enforcement of an unconstitutional law," citing *A.C.L.U. v. Ashcroft*, 322 F.3d 240, 251 n.11 (3d Cir. 2003). Again, this is a conclusion of law, unlikely to change at the PI stage.

At this stage, consolidation of the *Koons* case with the within matter would result in an enormnos waste of judicial resrouces.  Judge Bumb has already thoroughly analyzed their claims for emergency injucntive relief. All consolidation would do would be to require *this Court* to repeat and redo that entire analysis. Worse, to ask this Court to repeat that entire analysis at the PI stage would be to risk visiting the Koons plaintiffs with a contrary result based on exactly the same record Judge Bumb ruled upon. Such inconsistency is precisely what Rule 42 is degein to avoid. *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. at 80-81.  Now that Judge Bumb has ruled on the *Koons* TRO, consolidating *Koons* into this case risks redundancy, judicial waste, and inconsistency – all things Rule 42 is designed to avoid.

**b) The Within Case Should be Consolidated into *Koons*.**

For all of the same reasons the *Koons* case should *not* be consolidated into this case, this case, on the other hand, should be consolidated into *Koons*.

L. Civ. R. 42.1 provides in pertinent part as follows:

> A motion to consolidate two or more civil cases pending upon the docket of the Court shall be filed in the cases bearing the earliest docket number. That motion shall be adjudicated by the Judge to whom that case is assigned.

Notably, the Rule addresses only where the motion must be filed and which judge shall decide the motion. It says nothing about which case is to be the lead case upn consolidation nor which case is to be consolidated into which case. Research has found no case or other authority for the proposition that the first filed docket number must be the lead/surviving case upon consolidation. Plaintiffs are aware of no law that prevents the motion judge from consolidating the first filed case into the second filed case.

Importantly, all of the reasons urged by Defendants for consolidation are served by consolidating this matter into *Koons*. There is simply no credble argument that the interests of efficiency and judicial economy are better served the other way. To the contrary, for all the reasons stated above, consolidation of Koons into this case would defeat the purpose of Rule 42.

However, the goals of judicial efficiency would be very well served by consolidating this matter into *Koons*. This is because Judge Bumb's 60 page analysis in the Koons TRO applies fully and equally to the TRO Motion in this matter, and Judge BUmbs analysis would nearly entirely resolve Plaintiffs' TRO Motion. The reason for this is that although the within matter challenges more than A4769's sensitive place restrictions, the TRO Motion in this matter only seeks "sensitive place" relief. Therefore, the analysis required to adjudicate the pending TRO Motion is the same as in *Koons*.

Thus, Judge Bumb has already done nearly 100% of the analysis and expended nearly 100% of the effort required to fully dispose of the pending TRO Motion in this matter.

Notably, Defendants' opposition papers in this matter are virtually identical to the defendants' opposition papers in *Koons*. *Compare* ECF Nos. 15 and 16 with *Koons* ECF Nos. 20 and 21. And the State used precisely the same historical citations in opposittion to both motions. *Id*.

And most importantly, the analysis and rulings rendered by Judge Bumb with respect to the five challeged sensitive place restrictions in *Koons* apply equally to all of the sensitive place restrictions challenged in the within matter. Thus, for Judge Bumb to analyze the injunctive relief sought by the Plaintiffs herein, she would need only take the same analysis she has already spent considerable time and effort on and simply apply it to several more provisions of A4769.  In this way, Judge Bumb could dispose of the pending TRO Motion quicklty and effciently.

On the other hand, this Court would be starting from scratch in ruling on the pending TRO Motion, and while Plaintiff believes that this Court can and should rely on Judge Bumb's thorough 60 page analysis in *Koons*, this Court is nevertheless required to perform its own analayis and draw its own conclusions. Thus, even if this Court were to draw the same conclusions as Judge Bumb, which Plaintiff believes this Court should do, it could only do so after expending the same time and effort as has already been expended by Judge Bumb. Doing so would literally cost *double* the judicial resources to address

essentially the identical issues. This is the opposite of what Rule 42 contemplates.

Further, consolidating this matter into *Koons* would also obviate the need for the Court the reach the First Amendment, Due Process, and Equal Protection issues on the TRO Motion or possibly even the PI.  Since Judge Bumb's Second Amendment analysis would warrant full relief to the within Plaintiffs on the pending TRO Motion, it is likely that the other claims need not be reached at this early stage, thereby further preserving judicial resources and promoting efficiency.

In the separate context of federal courts enjoining later proceedings where therer exists concurrent jurisdcition, the Third Circuit has made it clear that rules favoring "first filed" actions are not to be applied in a "wooden" manner and are subject to sound exceptions, including when a second filed case is further developed. *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 976-77 (3d Cir. 1988) ("The letter and spirit of the first-filed rule, therefore, are grounded on equitable principles. . . . Yet, fundamental fairness dictates the need for 'fashioning a flexible response to the issue of concurrent jurisdiction.'")

Here, that same reasoning applies equally well.  The 60 page opinion of Judge Bumb in *Koons* plainly demonstrates that, as to the early injunctive relief sought by both sets of plaintffs, *Koons* is the further developed case, even though it is *technically* the second filed. A wooden adharence to the practice of consoliating a second filed case into a first file case should not be entertained here.

Moreover, these cases have consecutive docket numbers and were literally filed

within minutes of each other the day Governor Murphy signed A4769 on December 22, 2022. In that sense "first filed" has no significance here for the purposes of Rule 42.

Finally, consideration should be given to the fact that Judge Bumb previously had another Second Amendment case involving the right to carry under *Bruen*.  On October 12, 2022, Judge Bumb entered judgment in favor of the Plaintiffs, holding the justifiable need requirement to obtain a permit to carry a handgun under N.J.S 2C:58-4 unconstitutional under *Bruen* in *Mazahreh v. Platkin*, 20-cv-17598. *See Mahzahreh* ECF No. 51. Whether or not the *Mazahreh* case in fact implicates the related case rule under L. Civ. R. 40.1(c), this case history should easily tip the scales in favor of consolidation of this case into *Koons*.

### 6.    Impact of *Koons* TRO on the Pending TRO Motion.

Should this Court choose to keep this case and not consolidate it into the *Koons* case before Judge Bumb, the analysis and conclusions in the *Koons* TRO easily compel granting of this pending TRO Motion in its entirety.

As explained above, Judge Bumb's 60 page analysis fully justifies disposition of the pending TRO Motion in favor of Plaintiffs. Although the within lawsuit ultimately asserts claims beyond the sensitive place restrictions, the TRO Motion, itself, seeks relief only as to the sensitive place restrictions. The *Koons* TRO addresses five such provisions in the statute, while the within motion seeks relief as to those five plus several others.  But the analysis is the same as to *all* of the sensitive place restrictions, and therefore Judge Bumb's analysis should fully dispose of the within motion in favor of the Plaintiffs on all

aspects of the motion.

Notably, as explained above, the State makes the same arguments in both cases, and the historical citations it offers are the same in both cases. The State's argument should fare no better here than in *Koons*. Judge Bumb's opinion reveals the State's position to be utterly empty. This Court should draw the same conclusions as Judge Bumb and grant the pending TRO motion in its entirety.

Further, since both Defendants herein are also defendants in *Koons* they are collaterally estopped at this TRO stage as to the same sections ruled on in *Koons* that is, Sections 7(a)(12), (15), (17) and (24) and 7(b). The prerequisites for the application of issue preclusion are satisfied when: "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *Burlington N. R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231–32 (3d Cir. 1995).

In *Burlington*, the court went on to note that finality, in the traditional sense, is not strictly necessary:

> As we recognized in *In re Brown*, 951 F.2d 564, 569 (3d Cir.1991), the concept of finality for purposes of "collateral estoppel does not require the entry of a judgment final in the sense of being appealable." Instead, "the doctrine of collateral estoppel applies whenever an action is sufficiently firm to be accorded conclusive effect." *Id.* (internal quotation marks omitted).

*Id*. at 1233 n.8. Since the TRO in *Koons* is fully adjudicated, it has conclusive effects on

these Defendants.

**7.      Impact of *Range* En Banc Grant.**

The En Banc Grant in *Range* has no bearing on consolidation, as the panel

decision itself had no bearing on consolidation.

The En Banc Grant and vacature of the panel decision does have a small

bearing on the TRO Motion. The issue in *Range* was as follows:

> In 1995, Range pleaded guilty to making false statements about his income
> to obtain $2,458 of food stamp assistance in violation of 62 Pa. Cons. Stat.
> § 481(a), a conviction that was then classified as a misdemeanor punishable
> by up to five years' imprisonment.1 Range was sentenced to three years'
> probation, $2,458 in restitution, $288.29 in costs, and a $100 fine. He has
> paid the fine, costs, and restitution.

*Range,* 53 F.4th at 266.

The issue in *Range* is whether Range is part of "the people" under the Second

Amendment because of his conviction. Notably, the court used racist laws to determine

that non-violent convicts could be deprived of their rights:

> The earliest firearm legislation in colonial America prohibited Native
> Americans, Black people, and indentured servants from owning firearms.

*Range*, 53 F.4th at 276.

> The status-based regulations of this period are repugnant (not to mention
> unconstitutional), and we categorically reject the notion that distinctions
> based on race, class, and religion correlate with disrespect for the law or
> dangerousness. We cite these statutes only to demonstrate legislatures had the
> power and discretion to use status as a basis for disarmament, and to show that
> status-based bans did not historically distinguish between violent and non-
> violent members of disarmed groups.

14

*Id*. at 276 n.18

> Again, we cite the repugnant, status-based regulations of an earlier period—disarming individuals on the basis of political affiliation or non-affiliation—merely to demonstrate the Nation's tradition of imposing categorical, status-based bans on firearm possession.

*Id*. at 277 n.19.

Importantly, the petition for rehearing en banc does make much ado about using those clearly unconstitutional sources to determine the scope of the Second Amendment:

> The panel's historical analysis should not be accepted. To reach its sweeping conclusion, the panel analyzed pre-ratification history from England in the seventeenth century and in colonial America, and in each case focused on laws that disarmed minority religious or ethnic groups—nonconformists and Catholics in England, Panel Op. 24–26, and in America "Native Americans, Black people, and indentured servants," as well as certain religious groups, Id. at 27; see also id. at 27 n.18 (acknowledging these statutes are "repugnant" and would be "unconstitutional"). The panel was wrong to accord these pre-ratification sources significant weight.

*Range*, 21-2835, ECF No. 68 at 11-12.

The Court granted en banc review in three days, which suggests that there was obviously something wrong with the panel decision.

It is highly likely that using those historically discriminatory laws is the source of the problem, and Defendants should be precluded from relying on any similar discriminatory and unconstitutional laws.

Dated: January 10, 2023

Respectfully submitted,

s/ Daniel L. Schmutter
Daniel L. Schmutter
Hartman & Winnicki, P.C.
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040
(201) 967-0590 (fax)
dschmutter@hartmanwinnicki.com