LAW OFFICES
# HARTMAN & WINNICKI, P.C.

Dariusz M. Winnicki *º
Richard L. Ravin *º□
Daniel L. Schmutter*
Andrew T. Wolfe*

\* New York and New Jersey Bars
º Florida Bar
□ Washington, D.C. Bar
◊ New Jersey Bar

74 PASSAIC STREET
RIDGEWOOD, NEW JERSEY 07450

\* \* \*

WEBSITE
www.hartmanwinnicki.com

Phone: (201) 967-8040
Fax:   (201) 967-0590

Porter E. Hartman (1920-2009)
Charles R. Buhrman (1938-1994)
William T. Marsden (1943-1993)
Cyrus D. Samuelson (1911-1998)

January 11, 2023

**VIA ECF**
The Honorable Karen M. Williams
U.S. District Court for the District of New Jersey
Mitchell H. Cohen Building
& U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey 08101

  Re: Siegel, et al. v. Platkin, et al.
     Civil Action No.: 1:22-cv-07463-KMW-AMD

## PLAINTIFFS' SUPPLEMENTAL REPLY LETTER BRIEF

Dear Judge Williams:

  We represent Plaintiffs in the above referenced matter. Please accept this letter brief as Plaintiffs' supplemental reply further addressing the impact of the entry of the TRO in *Koons v. Reynolds*, 22-cv-7464 ("*Koons* TRO").

**1. TRO Motion**

  **A. Defendants are Incorrect that This Case Suffers from Defects not Present in *Koons*.**

   **i) There has been no delay**

  Plaintiffs did not delay vindicating their rights in filing their motion for a TRO ("TRO Motion"). The state of New Jersey regularly denied its citizens the ability to acquire permits to carry firearms by requiring them to show that they had a "justifiable need" to carry a firearm,

1

N.J.S. 2C:58–4(d), the same process that New York used that was struck down in *New York State Rifle & Pistol Association, Inc., v. Bruen*, 142 S. Ct. 2011 (2022). It was not until after *Bruen* that New Jerseyans could even obtain a permit, and in fact, was not until Judge Bumb signed an order enjoining the state from using the "justifiable need" framework on October 12, 2022, that the "justifiable need" requirement was formally dead. *See* Consent Order, ECF No. 51, *Mazahreh v. Platkin*, 1:20-cv-17592 (D.N.J. October 12, 2022). Thus, Plaintiffs had no way of exercising their Second Amendment right to carry a firearm anywhere in the state, let alone any of the places challenged in this action, until the state began issuing permits after *Bruen*. Plaintiffs then promptly acquired their concealed carry permits, brought this lawsuit, and sought a TRO—immediately after A4769 was signed into law.

And even if there was delay, that is not necessarily sufficient to deny the TRO. The Third Circuit has ruled that "*inexcusable* delay *could* defeat the presumption of irreparable harm in an appropriate case." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 727 (3d Cir. 2004) (first emphasis in original). The Third Circuit has found that "argument unpersuasive [when] the 'delay was attributable to negotiations between the parties.'" *Id*. That is similar to the situation here. Plaintiffs had to apply for their permits to be able to carry, which they could not do until after *Bruen*. There should be no difference between delay caused by private parties negotiating and delay caused by applying for a permit from the state or the legislature debating. Therefore, to the extent there was any delay, it was *excusable* under *Kos Pharms., Inc.*, 369 F.3d at 727.

### ii) Plaintiffs are suffering irreparable injury

Plaintiffs are currently suffering an irreparable injury. An irreparable injury is "the harm the movant will suffer during the pendency of the litigation that cannot be prevented or

fully rectified by the tribunal's final decision." *In re Revel AC, Inc.*, 802 F.3d 558, 571 (3d Cir. 2015) (alterations and citations omitted). In other words, there is no "'adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation.'" *Id*. (quoting *Sampson v. Murray,* 415 U.S. 61, 90 (1974)). Plaintiffs are presently injured by not being allowed to exercise their fundamental rights—without exposing themselves to criminal liability—and that injury will continue throughout the course of this litigation unless the TRO is granted. That is not a "remote future injury" as defendants categorize it. Def. Supp. Br. at 13. It is present now, and it is irreparable, for the deprivation of a constitutional right cannot be cured by money damages.[1]

The Court should end that that irreparable injury by issuing the TRO.

### iii) Plaintiffs have standing

Plaintiffs have standing and the state's standing arguments are contrary to Third Circuit precedent. Specifically, Defendants' traceability arguments miss the mark. Plaintiffs' injuries are traceable to A4769. At the pleading stage, the Plaintiff need only plead that the injuries are traceable, *Mielo v. Steak 'n Shake Operations, Inc*., 897 F.3d 467, 481 (3d Cir. 2018), and they have done that in the Complaint, *e.g*., ¶ 250 (noting that but for the prohibitions, plaintiffs would exercise their right to carry firearms in public).

---

[1] In addition to the other precedents declaring that the loss of a constitutional right for a brief period of time is an irreparable injury, *see* Plaintiffs opening Brief (ECF No. 8-1) at *45-46, the Takings Clause precedent illustrates this point. The Takings Clause "'is designed not to limit the governmental interference with property rights *per se,* but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking.'" *Lingle v. Chevron U.S.A. Inc*., 544 U.S. 528, 537 (2005) (citation omitted). But a taking that violates the due process clause because of its arbitrary nature cannot be compensated by any amount of money. *Id*. at 543.

Defendants traceability arguments miss the mark. While but-for causation is "sufficient" to establish traceability, it is not necessarily required; "*de facto* causality" will suffice. *Hassan v. City of New York*, 804 F.3d 277, 293 (3d Cir. 2015), *as amended* (Feb. 2, 2016) (quoting *Block v. Meese,* 793 F.2d 1303, 1309 (D.C. Cir. 1986) (Scalia, J.)). Indeed, just last year, the Third Circuit twice noted that "we have yet to articulate a single standard for establishing this 'causal relationship.'" *New Jersey Bankers Ass'n v. Att'y Gen. New Jersey*, 49 F.4th 849, 855 n.1 (3d Cir. 2022) (noting that but-for causation is sufficient but there are other methods of proving causation); *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 158 (3d Cir. 2022) (same).

In any event, but-for causation is not the rigid test that Defendant's make it out to be. Again, just last year, the Third Circuit declared that "but-for causation," is not the same as "proximate causation." *Adam v. Barone*, 41 F.4th 230, 235 (3d Cir. 2022). "But-for causation is established whenever an injury would not have occurred without the alleged action or event." *Id*. 236 n.5 (citing *Univ. of Tex. S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47 (2013)). The Third Circuit was unequivocally clear that this is a "low threshold" and that "'[t]here may be more than one but for cause of a loss.'" *Id*. at 235-36 (quoting *Loughman v. Consol-Pa. Coal Co.*, 6 F.3d 88, 94 (3d Cir. 1993); *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 366 (3d Cir. 2014) ("There is room for concurrent causation in the analysis of standing."). Thus, it does not matter that there are other potential sources of the injury. As long as there is a direct or indirect traceable connection between the plaintiff's injury and the defendant's conduct, the traceable requirement is satisfied. *Mielo*, 897 F.3d at 481.

That traceable connection could not be clearer here. If "'the plaintiff is himself an object of the action … there is ordinarily little question that the action or inaction has caused him

injury.'" *Const. Party of Pennsylvania*, 757 F.3d at 362 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992)); *see also id.* ("'Thus, when an individual who is the very object of a law's requirement or prohibition seeks to challenge it, he always has standing.'") (citation omitted). Plaintiffs, who desire to carry firearms for self-defense in the places prohibited by A4769, are the very objects of A4769's prohibitions. Section 7(a) plainly declares that carrying a firearm in any of the prohibited places is a crime in the third degree, punishable by up to five years in prison. N.J. Stat. § 2C:43-6(a)(3). It would be "untenable" to say that they "are not objects of" A4769. *Const. Party of Pennsylvania*, 757 F.3d at 362. Thus, there is no doubt about "*who* inflicted [their] harm," and that is the state of New Jersey. *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 142 (3d Cir. 2009) (emphasis in original). Plaintiffs have standing.

**B. Likelihood of success on the Merits.**

**i) Public vs. Private Property - Section 7(a)(24)**

In their supplemental brief, Defendants confuse the meaning of "bearing arms in public for self-defense" as discussed in *Bruen*. Judge Bumb correctly understood that the phrase "bear arms in public" did not refer to the difference between public and private property. Rather, in the context of *Bruen*, "public" means "outside the home."

The Court will recall that the Plaintiff in *District of Columbia v. Heller,* 554 U.S. 570 (2008) sought to possess a handgun in his home, and the District of Columbia law at issue precluded that. *Id*. at 574-75. The Supreme Court held that the Second Amendment guarantees an individual right to keep and bear arms and that right included the right of the plaintiff to have a handgun in his home. *Id*. at 635.

A series of cases subsequent to *Heller* then posed the question of whether the right keep and bear arms also extends outside the home, that is, whether the Second Amendment

5

guaranteed a person the right to take her handgun with her in the event she needed to engage in armed self-defense when she left the house. *See e.g. Kachalsky v. County of Westchester,* 701 F.3d 81 (2d Cir. 2012); *Drake v. Filko,* 724 F.3d 426 (3d Cir. 2013); *Wrenn v. District of Columbia,* 864 F.3d 650 (D.C. Cir. 2017); *Moore v. Madigan,* 702 F.3d 933 (7th Cir 2012).

The Supreme Court answered that question squarely in the affirmative: a person has the fundamental right to carry a handgun in public, that is, outside her home. *Bruen,* 142 S. Ct. at 2122 ("We too agree, and now hold, consistent with *Heller* and *McDonald*, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense *outside the home*. [Emphasis added.]) The use of the word "public" has nothing to do with public vs. private property and has no bearing on Section 7(a)(24).

### ii) Outliers

Judge Bumb correctly understood that *Bruen* precludes reliance on one or even a small handful of historical citations. This is because *Bruen* requires the State to demonstrate the existence of an "historical tradition." 142 S. Ct. at 2127. The Court was clear that one or even three examples could not suffice to show an historical tradition: "we doubt that *three* colonial regulations could suffice to show a tradition of public-carry regulation." *Bruen,* 142 S. Ct. at 2142 (emphasis in original); *see also id*. at 2149 ("a handful of other examples in Massachusetts and the District of Columbia . . . is surely too slender a reed on which to hang a historical tradition of restricting the right to public carry."). The term "outlier" is plainly a *numerical* reference in *Bruen.*

In no instance did the State cite more than one or two statutes as to any of its restrictions, and, even though Judge Bumb cited a myriad of bases to reject the State's citations, Judge Bumb was correct to reject them on the ground that they are outliers.

6

### iii) The State's Artificially Broad Categories

Judge Bumb was also correct to insist that the State's citation closely match the challenged restriction. This is because *Bruen* does "invite[] further analogy." Def. Supp. Br. at 9. *Bruen* permits analogy only in the case of "unprecedented societal concerns," "dramatic technological changes," or "modern regulations that were unimaginable at the founding." *Id*. at 2132. None of that is present here, and Judge Bumb was correct to insist that the State's citations closely match the challenged restrictions.

The State created several artificially broad categories in order to seemingly boost its numerosity—categories such as "Government and Constitutionally Protected Activity," "Locations Where Crowds Gather," and "Where Vulnerable or Incapacitated People Gather." None of these have any actual basis in history. The State has created them in an attempt to aggregate dissimilar citations and pretend they are numerous. Because they are arbitrary and do not match the challenged regulations in any meaningful way, Judge Bumb was correct to reject them.

**2.     Consolidation Motion**

As the Court will recall from Plaintiffs' Supplemental Brief filed yesterday, January 10, 2023, Judge Bumb's decision in connection with the *Koons* TRO drastically amplifies the problems presented by Defendants' request to consolidate *Koons* into this matter. Plaintiffs continue to oppose that request.

However, as Plaintiffs also explained in detail in their Supplemental Brief, the granting of the *Koons* TRO now strongly favors the consolidation in the opposite direction, that is, consolidating this matter into *Koons* before Judge Bumb, and Plaintiffs support that result.

Notably, every argument made in Defendants' supplemental brief (as well as their earlier briefs) supports consolidation of this case into Koons. Defendants no doubt dread the idea of such an order, but they have already painted themselves into a corner. They have steadfastly urged consolidation form the beginning. They have no valid basis to say which Judge should have the consolidated cases they have been advocating for.

Accordingly, consistent with Defendants' request, the Court should order that this case be consolidated into the *Koons* case before Judge Bumb.

Respectfully submitted,

s/ Daniel L. Schmutter
Daniel L. Schmutter
Hartman & Winnicki, P.C.
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040
(201) 967-0590 (fax)
dschmutter@hartmanwinnicki.com

cc:     Angela Cai, Esq.