1              **UNITED STATES DISTRICT COURT**
               **FOR THE DISTRICT OF NEW JERSEY**
2

3  _____

   AARON SIEGEL; JASON COOK;        CIVIL ACTION NUMBER:
4  JOSEPH DELUCA; NICOLE
   CUOZZO; TIMOTHY VARGA;           22-cv-7463-KMW-AMD
5  CHRISTOPHER STAMOS; KIM
   HENRY; and ASSOCIATION OF        MOTION HEARING FOR A
6  NEW JERSEY RIFLE & PISTOL        TEMPORARY RESTRAINING
   CLUBS, INC.,                     ORDER AND CONSOLIDATION
7
        Plaintiffs,
8
        v.
9
   MATTHEW PLATKIN, in his
10 official capacity as
   Attorney General of New
11 Jersey; PATRICK J. CALLAHAN,
   in his official capacity as
12 Superintendent of the New
   Jersey Division of State
13 Police,

14      Defendants.

15 _____

        Mitchell H. Cohen Building & U.S. Courthouse
16      4th & Cooper Streets
        Camden, New Jersey  08101
17      January 12, 2023
        Commencing at 1:36 p.m.
18

19 B E F O R E:            THE HONORABLE KAREN M. WILLIAMS,
                           UNITED STATES DISTRICT JUDGE
20

21
             Sharon Ricci, Official Court Reporter
22              sharon.ricci.usdcnj@gmail.com
                      267-249-8780
23
   Proceedings recorded by mechanical stenography; transcript
24        produced by computer-aided transcription.

25

1  <u>A P P E A R A N C E S</u>:

2

3      HARTMAN & WINNICKI, P.C.
       BY:  DANIEL L. SCHMUTTER, ESQUIRE
       74 Passaic Street
4      Ridgewood, New Jersey 07450
       For the Plaintiffs
5

6      OFFICE OF THE NEW JERSEY ATTORNEY GENERAL
       BY:  ANGELA CAI, ESQUIRE
7           JEREMY FEIGENBAUM, ESQUIRE
            JEAN REILLY, ESQUIRE
8      25 Market Street
       Trenton, New Jersey 08625
9      For the Defendants

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (PROCEEDINGS held in open court before The Honorable

2     Karen M. Williams, United States District Judge, at 1:36 p.m.)

3          THE COURTROOM DEPUTY:  All rise.

4          THE COURT:  Good afternoon.  Everyone please be

5     seated.

6          So the Court has the masking policy in place for all

7     public spaces, which includes the courtroom.  I will dispense

8     with that requirement only while speaking and provided you keep

9     safe distance and whoever you're closest to doesn't object.

10    The reason for that is so that the court reporter can capture

11    everyone's words clearly.

12         We're here this afternoon in the matter of Siegel vs.

13    Platkin, Case No. 22-7463.  We're here this afternoon for an

14    emergency motion to consolidate, a motion for temporary

15    restraining order and preliminary injunction.

16         Let me hear from the parties first on the motion to

17    consolidate.

18         MS. CAI:  Would you like to hear from the State first?

19         THE COURT:  Yeah.  And we can -- I can short circuit

20    some of this because there's no disagreement that the case, in

21    fact, should be consolidated; there seems to be a lack of

22    agreement on which judge the case should go to.

23         And so I will hear from the parties on that because it

24    is the first motion.

25         MS. CAI:  Your Honor, do you prefer that I speak from

1   the podium or --

2        THE COURT:  Wherever you're comfortable.

3        MS. CAI:  I just wasn't expecting the microphone to be

4   on the podium itself.

5        THE COURT:  Oh, wait, did we enter appearances?

6        MR. SCHMUTTER:  No.

7        THE COURT:  Enter your appearances first, please.

8        MS. CAI:  Yes, Your Honor.  Angela Cai, Deputy

9   Solicitor General for the State.

10        MR. SCHMUTTER:  Good afternoon, Your Honor.  Daniel

11   Schmutter from the firm of Hartman & Winnicki for plaintiffs.

12        THE COURT:  Okay.

13        MS. CAI:  Your Honor, on the motion to consolidate, I

14   do think that both the rules and the State's position are very

15   clear, and I don't think that anything in Mr. Schmutter's

16   letter from yesterday changes any of that.  I will just

17   emphasize a couple of things.

18        First, is that nothing about our motion or the

19   arguments we're making turns on how this Court will rule on the

20   merits or any of the issues or how any other Court rules.  We

21   filed this motion on December 23rd, as soon as we were informed

22   that there were two cases pending on overlapping challenges.

23   And it's consistent with our practice in other cases like these

24   where people are challenging state policies, such as the Ocean

25   County case we cited.

1       We filed for consolidation because all of the factors

2   in FRCP 42 are met.  At the time we moved, we did not know

3   which TRO was going to be heard first, which judge was going to

4   decide first, and of course, what the ruling would be.  And

5   that's the way it should be.

6       These natural rules of assignments such as those in

7   Local Civil Rule 40.1 exist for a really important reason, and

8   we see no reason to depart from those rules and, of course,

9   also the longstanding practices of this Court.

10      And I would say that if there is no neutral or

11  consistent rule like the one we already have, which is that

12  consolidated cases and related cases go with the earlier docket

13  number, I think the Court will see more frequently the type of

14  approach that plaintiffs are taking here, which is, waiting to

15  see how one Court rules, then saying we do want consolidation,

16  manufacturing arguments for why one court versus the other

17  should get consolidated cases.  I think we should try to avoid

18  all of that in how we deal with case assignments in general.

19      The second point is a very general one, which is that,

20  you know, plaintiffs seem to focus on the TRO period, but we've

21  always been looking at the full length of the case for

22  consolidation.  It would be consolidated for the entirety of

23  the case.  So every motion from discovery motions to motions

24  for extensions to summary judgment, all of that would risk

25  problems of duplication and inconsistent judgements if the

1  cases were to run separately.

2       I think Your Honor is quite familiar with the issues

3  in this case, especially after the four extra briefs filed this

4  week, and especially with the ones that are unique to this

5  case, which outnumber the five claims in *Koons*, but also rests

6  on, you know, overlapping issues of law.

7       And so, you know, there's a reason why the local rules

8  don't say cases get assigned to the judge who ruled first or

9  had the case for longer.  It's to preserve the neutral,

10 consistent playbook for judge assignments.

11      Your Honor, I don't know if you received a letter that

12 came in at noon from the *Koons* plaintiffs.

13      THE COURT:  I did.

14      MS. CAI:  I'm happy to address that if you'd like.  I

15 know it wasn't part of our schedule.

16      THE COURT:  I did review it, meaning I read it,

17 understood the positions set forth therein.

18      MS. CAI:  I don't know if Mr. Jensen is here today.  I

19 know he was here on Monday.

20      THE COURT:  I don't -- based on what I've learned so

21 far and having read the letter, I don't see a need for that

22 letter itself to be addressed.

23      MS. CAI:  Okay.  If Your Honor has any questions, we

24 would be happy to answer, or we can submit a letter in response

25 as well.  Or if Mr. Schmutter wants to talk about it, I'm

1   happy to come back up.

2           THE COURT:  Okay.  Thank you.

3           MR. SCHMUTTER:  Judge, just for the record, I haven't

4   seen the letter so...

5           MS. CAI:  Great.

6           THE COURT:  So you can't comment on that, is that

7   the --

8           MR. SCHMUTTER:  I can't comment.  I haven't seen it.

9   If somebody could tell me what it says, I'd be happy to comment

10  on it, but I literally was driving so...

11          THE COURT:  The gist of it is *Koons* should not be

12  consolidated into this case.

13          MR. SCHMUTTER:  So is it anything different than their

14  original position?

15          THE COURT:  I think originally they were saying --

16  they were opposing consolidation.  So just a -- I'm going to --

17  I will characterize it as putting a finer -- I'll characterize

18  it as putting a finer point on their position.

19          MR. SCHMUTTER:  Did they comment on consolidating

20  Siegel into *Koons*?

21          THE COURT:  No.

22          MR. SCHMUTTER:  They didn't.  Okay.  Thank you, Judge.

23  I apologize for not being familiar with that letter.

24          So unfortunately, the State has stepped into quick

25  sand here, because if they were truly just interested in the

1   Rule 42 considerations of judicial economy, duplication of

2   effort, preserving resources, fairness to the litigants, they

3   should be indifferent between which consolidation takes place,

4   whether *Koons* is consolidated into this case or this case is

5   consolidated into the *Koons*.  They should be neutral on that,

6   but they're not.

7          They opposed consolidation into *Koons*.  And what that

8   reveals is that they are, in fact, judge shopping.  In the

9   state of New Jersey, no litigant gets to make that decision.

10         Now, the Court is aware that we were originally

11  opposing all consolidation, and then after Judge Bumb's

12  decision, our brief on Tuesday took the position that

13  consolidation should take place from Siegel into *Koons,* and

14  it's set forth fully in our papers.

15         The problem that the State has on the consolidation

16  motion is that all of the Rule 42 factors, all of the Rule 42

17  concerns favor consolidation into *Koons*, none of them favor

18  bringing *Koons* into here.  Your Honor will recall our argument

19  that in addition to the very substantial resources that were

20  devoted to the 60-page ruling in *Koons*, we also argued -- and

21  this was not responded to -- that it's unlikely that that's

22  going to change between the TRO in *Koons* and the preliminary

23  injunction in *Koons* for all the reasons we laid out because

24  they're primarily issues of law, because there is unlikely to

25  be any factual development between the TRO and the PI, that

1   should matter, for the outcome of that injunctive relief.

2          And so the problem that the State has is that

3   consolidation from *Koons* into this case works against the

4   Rule 42 factors.  It creates more work, less judicial economy,

5   more inconsistency with the efficiency that Rule 42 stands for,

6   whereas consolidation into *Koons* from here favors all of those

7   factors.  So the only reason that the State could possibly

8   prefer consolidation into this case and oppose consolidation

9   into *Koons* is because the State of New Jersey wants to pick its

10  judge.

11         That's the only factor that would matter to the

12  application they're making.  And of course, as the Court knows,

13  that's not a legitimate factor.  And so if the Court orders

14  *Koons* is consolidated into this case, the only reason could be

15  that the Court is giving the State of New Jersey its choice of

16  judges, and that would be an error of law that would be clearly

17  reversible, it would be improper.

18         Now, the --

19         THE COURT:  I want to just mention briefly the

20  judge-shopping issue.  I've never ruled on any of this anyway.

21  Nobody could really be choosing me because they think I'm

22  favorable because no one knows exactly how -- I haven't issued

23  any other prior gun control, I've never spoken on the issue.

24  And so just to be clear, that is a weaker argument that they

25  actually wanted to be with me, because they have no idea what

1   I'm going to do.

2          MR. SCHMUTTER:  Understood, Judge.  And we agree with

3   that.  Although what they do know is that Judge Bumb has

4   already ruled against them on the TRO, right?

5          So they have some information about Judge Bumb and no

6   information about Your Honor.  And so if you're balancing the

7   information they do have with the information they don't have,

8   they clearly would rather be in front of a judge that has not

9   already ruled against them.  And so Your Honor's correct,

10  though.

11         So the problem is that they did the same research we

12  did.  We researched whether there's any law, case, rule,

13  statute that actually requires consolidation in one direction

14  or the other, and there isn't.  They cited all the same cases.

15  They read the same cases we did.  There are no cases that say

16  you have to do it one way or the other.

17         The only rule, it simply says the motion goes to the

18  judge in the first filed docket, and that judge makes the

19  decision.  There's nothing that says how the decision should go

20  and in which direction consolidation should take place.

21         Now, interestingly, they try to cite Local

22  Rule 40.1(c), the Related Case Rule, but the Related Case Rule

23  doesn't tell -- doesn't govern Rule 42.  The Related Case Rule

24  simply says that if you have an earlier case and then a new

25  case is filed, as a matter of allocation, it gets allocated to

1  the related case.  That really doesn't have anything to do with

2  the issues under Rule 42 of efficiency.

3          As the Court saw in the EEOC case that we cited from

4  the Third Circuit, the Third Circuit is clear that courts are

5  not to apply -- first-filed concepts -- it has to be flexible,

6  it has to serve the interests of justice, it has to serve the

7  equity of the situation.  And so the fact that in other

8  consolidation motions it is the general practice to do it the

9  way the State is asking for it, there's nothing compulsory

10  about that.

11          And importantly, if we think about what first-filed

12  rules -- or first-filed presumptions are about, they're

13  generally about the fact that you typically have a case that's

14  been going for a while, then you have another case, and the

15  question is, should the newer case be deferred to the earlier

16  case?

17          And we see first-filed rules or practices in a lot of

18  context, comity, transfer under 1404, 1406, the issue in *EEOC*

19  *vs. University of Pennsylvania* where it was an issue of

20  enjoining a subsequent case, and we see it in the procedural

21  approach to Rule 42 and local Rule 42.1.

22          But none of the first-filed values, purposes are

23  present here and here's why:  These cases are -- for the

24  purposes of Rule 42, these are simultaneous cases.  These cases

25  have consecutive docket numbers, they were filed within

1    minutes, maybe even seconds of each other.  The way this went

2    down -- I can't speak for Mr. Jensen, but I know what I did.

3    And I was watching the press conference, and the moment the

4    Governor put pen to paper, I pressed the "file."  I'm sure he

5    did the exact same thing, and so we have consecutive docket

6    numbers.  Their case was filed within minutes of ours.

7           So they really are -- from a Rule 42 perspective,

8    they're simultaneous cases.  Neither case, when they were

9    filed, had a first-filed advantage.  None of the first-filed

10   stuff was present that we normally see in cases like comity

11   cases, again, transfer case, enjoining injunction cases where

12   cases are -- none of that is present here.

13          The only factors that are present here are Judge

14   Bumb's 60-page Opinion.  That's what drives this bus.  That is

15   the overwhelming factor here.  Everything else is equal.  The

16   fact that we happen to have a docket number one lower -- I

17   mean, we're 7463, they're 7464.  Literally -- and again, I'm

18   not -- I don't have access to the software, but I'm sure if you

19   saw the filing, if you looked at the ECF notices, they must

20   have been filed within minutes or seconds.

21          THE COURT:  Well, interesting that you raised that.

22   The complaint in *Koons* was actually filed first.

23          MR. SCHMUTTER:  Okay.

24          THE COURT:  In ECF, you open and get your assigned

25   number when you open the shell --

1          MR. SCHMUTTER:  That's right.  You know, you're right.

2          THE COURT:  -- and the complaint in *Koons* was actually

3    filed first.

4          MR. SCHMUTTER:  So that's interesting.  So all I did

5    was is got my -- I opened my case first.  They filed -- Your

6    Honor's right.  I actually didn't think about that.  I had the

7    first opened case; I don't have the first-filed case.  Theirs

8    is the first-filed case actually.

9          So if we're going -- now, if you look at the words of

10   Local Rule 42.1, the procedure is it goes to the judge with the

11   earlier docket number.  But if we're talking about first filed,

12   *Koons* is first.  So Your Honor's right.  I actually hadn't

13   thought about that.

14         So none of the technicalities that the State is

15   relying on matters here.  The equities of the motion

16   overwhelmingly cry out for consolidation into *Koons*.  There are

17   no equities that drive it in this direction.  And so that's the

18   problem that they're facing.  They're asking the Court to do

19   something that's actually contrary to Rule 42.

20         If they really were about Rule 42, if it was merely

21   about judicial efficiency, fairness to the parties, resources,

22   they should be perfectly fine with consolidating into *Koons.*

23   In fact, they should prefer it because it actually saves the

24   court resources.  They're asking for redundancy, they're asking

25   for this Court to decide freshly the issues in our motion when

1    most of our TRO application would already be disposed of under

2    Judge Bumb's ruling.  So they're asking this Court -- and not

3    that this Court can't do work, but the concepts under Rule 42

4    cry out against that.

5           And the other thing they're asking for, this is the

6    same basic problem.  They're asking the *Koons* plaintiffs now to

7    come over here to have this Court do an entire fresh analysis

8    on the PI when -- and they didn't oppose this -- as we argued

9    in our brief on Tuesday, probably -- again, there's no way to

10   predict what's going to happen for sure, but based on the law

11   and the record, probably the PI will come out the same way.

12          So they're asking for redundancy in two different

13   ways.  It plainly should go the other way around.  And that's

14   the problem that the State of New Jersey faces right now.

15   They're in a situation that they can't really get out of.  And

16   none of the equities, none of the standards support their

17   application.

18          THE COURT:  Okay.  Thank you.

19          Ms. Cai, did you want a brief response?

20          MS. CAI:  I did, Your Honor.  Thank you.

21          Your Honor, I think what's indisputable is what's

22   driving the plaintiffs' bus is that they saw a favorable

23   opinion from Judge Bumb and that led them to completely change

24   their tune.  They unequivocally opposed consolidation until

25   that very moment.

1        I want to address a couple little things and then I
2   want to get to the big heart of the issue.  The little things.
3   So the neutral rule is the lower docket number controls.  So it
4   doesn't matter whose complaint got in the door first, who
5   technically amended their complaint second, any of these other
6   issues.  I mean, the reason we have a technical rule -- it is a
7   technical rule, but a consistent rule -- is so that all parties
8   play by the same rules.
9        THE COURT:  So here's my question about this, because
10  obviously I looked into -- I looked into this when the motion
11  was filed about first-file, when the complaint came in,
12  whatever.  More importantly, I looked at both dockets.
13        This docket proceeded differently than *Koons* because
14  in this case the first thing filed was a briefing schedule for
15  approval after the case was opened.  In *Koons,* the first thing
16  was an order to show cause.  And so it kind of tees up why --
17  even though I have the first-filed docket number, this case is
18  a little bit behind, right?  It's how the parties -- the
19  actions taken after the complaints were filed that literally
20  teed this up so that I would get to this -- or I was able to
21  get to this after Judge Bumb.  Right?
22        We're all looking to do the same things, right, get to
23  the right answer, do the best that we can, move the case
24  forward, follow it.  Judge Bumb's oral argument -- and, you
25  know, I'm transparent in terms of how I think and how I get to

1    certain places.

2         When I saw that Judge Bumb ordered oral argument for

3    January 5th, I went back, I said, oh, my God, am I late?  Did I

4    wait too long?  And then that is what compelled me to look at

5    the two dockets.  How does this happen?  I have the older case.

6    To be clear, the earlier docket number.

7         So I think all of this just underscores that these

8    cases are filed at the same time and the reason, right, that

9    Judge Bumb was able to hear the parties and issue an Opinion

10   and Order ahead of me is because the way the cases were

11   presented for decision by the Judge differently.  It really is.

12        And so I say this because I don't want either of you

13   to spend another second on judge shopping.  We don't suborn

14   that kind of behavior.  There's nothing that this Court will

15   ever do that will permit judge shopping.  And as I've alluded

16   to a little bit before, I'm the newbie in this role.  So to

17   suggest that anyone was shopping for me is a little

18   disingenuous.

19        MS. CAI:  Yes, Your Honor.  And I'll just point out,

20   we filed our motion to consolidate before anything had been

21   heard from Judge Bumb.  I don't even -- it's -- I believe that

22   we got notice of the *Koons*' complaint at like 5:00 p.m. on

23   that -- we knew the case existed, but we didn't know that we

24   were going to get it, and the same night we filed the motion

25   because we knew we wanted everything to proceed together

 1   because it's efficient and we didn't want the case to proceed

 2   on two different tracks and to have all kinds of, you know,

 3   potential issues there.

 4          I will note just generally, you know, plaintiffs say

 5   we're looking at the same cases.  I didn't hear him talk about

 6   the cases that we cited.  Importantly, you know, I think the --

 7   if you look at the cases we cited, there's more.  I didn't want

 8   to put everything in the brief.  Every case in which there's a

 9   motion to consolidate and there's two different judges, no

10   matter what had happened in the docket of the second one, if

11   there was more activity, more decisions, more TROs being issued

12   in the second, the higher numbered docket, no matter what

13   happens, after it gets consolidated it always go to the first

14   docket number.

15          So we gave you two examples, the *Younes*, *Sodhi* case,

16   which actually Judge Bumb herself decided.  A lot happened in

17   the later docket number, *Sodhi* case.  There was a TRO granted,

18   there was a PI motion that then had been scheduled for a

19   hearing and then was withdrawn, there were other motions.  All

20   that had happened, there's almost no activity in the *Younes*

21   case other than complaint was filed, there was an answer,

22   motion to consolidate.  And yet after consolidation, everything

23   went to the first docket number.

24          That's the rule and that's the way it's always been

25   followed, that's all we're asking here.  And we make that

1  request before knowing anything about the order of things,

2  about how either judge would rule, and that's just always been

3  the consistent position we've had.

4      As for right now, there is very much a reason to

5  consolidate because the case is going to go on, both cases are

6  going to go on, there are a lot of issues in this case that are

7  not in *Koons*.  Your Honor seen --

8      THE COURT:  Let's not talk about those now because

9  that's the next argument.

10     MS. CAI:  Sure.  I'm just observing, Your Honor, that

11 -- Your Honor has looked at this case, including additional

12 issues as well, Judge Bumb obviously has looked at the issues

13 in *Koons,* and some of them do overlap, but there is obvious

14 efficiency to be gained by combining these cases.  And so we

15 just ask that it be combined and go to the same rules of

16 decision that has always existed, and there's no inconsistency

17 in that.

18     Finally, I will note, just because I don't know if

19 I'll have a chance to address these issues again and just in

20 case, you know, additional letters or whatever come up on the

21 *Koons* plaintiffs' letter -- Mr. Schmutter, he's free to talk

22 about this later on if he wants to.

23     I just want to correct a couple things because I think

24 it's -- just for the record and we're making a record here.  So

25 the first thing is that we haven't appealed the *Koons* decision.

```
 1   It's now Thursday.  It's black letter law that generally TROs
 2   are not appealable.  There are circumstances that could happen
 3   later.  We haven't gotten there yet.  And it depends on the
 4   kinds of claims.  And they were bringing, you know, specific
 5   kinds of claims that make that -- there's no mandatory
 6   requirement that if a case gets consolidated after a TRO has
 7   been issued, that we would somehow need to seek reconsideration
 8   of the TRO before appealing.  I mean, we're not appealing right
 9   now and that's not really an issue, but that premise is really
10   mistaken.
11          And then finally, the PI schedule in Koons, that's not
12   set.  And I was a little surprised to see Mr. Jensen -- I hate
13   to say this while he's not here, but he omits the fact that the
14   agreement that we had tentatively was in case there is no
15   consolidation.  And he's the one who actually asked me not to
16   put -- he said, is it okay if we wait to file this with Judge
17   Bumb until after the hearing today.  And so it does surprise me
18   that he said that that was a firm agreement when it very much
19   was not.
20          But all of that is to say it doesn't matter because
21   the reasons that we've given this Court are just the reasons
22   that have always been followed and the way it should be
23   consolidated -- I think no one disagrees there should be
24   consolidation and we're just suggesting that the way that it
25   has always gone is the way that this case should go, it should
```

1   not be the first case that we would be aware of to be

2   consolidated the opposite away.

3           Thank you, Your Honor.

4           THE COURT:  You're welcome.

5           All right.  Mr. Schmutter, are you ready to address

6   the TRO and preliminary injunction?

7           MR. SCHMUTTER:  Yes, Judge.

8           THE COURT:  And I'm also going to streamline the

9   arguments in this.  According to your papers, Judge Bumb

10  resolved a hundred percent of the TRO.  To be fair, nearly, I

11  think, were your words.  Right?

12          Explain that to me.  Because you know your adversaries

13  disagree with that wholeheartedly.

14          MR. SCHMUTTER:  Absolutely, Judge.

15          So Your Honor saw our chart, Exhibit B to my

16  declaration -- and just to clarify, we're not asking for the

17  preliminary injunctive relief today, just the TRO.  And so we

18  intentionally on Exhibit B broke it up into pieces.  We wanted

19  it to be absolutely clear, what are we seeking on the TRO, what

20  are we seeking on the PI later.

21          And when you compare Exhibit B, the two, the pieces of

22  Exhibit B, it's clear that on the TRO we're only seeking relief

23  on sensitive-place issues.  Now, we are asserting multiple

24  theories on those issues, not just the Second Amendment, but as

25  we said, our TRO application could be fully disposed of just on

1    the Second Amendment issues.  And so whichever Court hears our

2    TRO and decides our TRO, the judge need not reach the First

3    Amendment issues, the equal protection issues, and the due

4    process issues if the Court grants all our relief on Second

5    Amendment grounds.

6            And so -- now, so that's concept number one in answer

7    to Your Honor's question.

8            Concept number two is that the State's opposition is

9    exactly the same, for the most part.  Not a hundred percent,

10   but mostly the same.  Mostly the same arguments on standing

11   with a couple of exceptions; exactly the same arguments on

12   historical tradition; exactly the same arguments on irreparable

13   harm.  And so these things have been resolved already.

14           And so it's all the same citations to the old

15   statutes.  Judge Bumb dealt with all of that stuff.  We make

16   essentially the same arguments, mostly the same arguments that

17   the plaintiffs did in *Koons* on the historical tradition; the

18   issues of standing are the same.

19           And, in fact, as Your Honor's aware, Judge Bumb found

20   in favor of the *Koons* plaintiffs on standing.  We think our

21   standing facts are even stronger with respect to the

22   allegations made by the plaintiffs.  You know, I regularly go

23   here, I do this three times a year, I frequently do that, from

24   time to time I do this.  We covered the bases in great detail,

25   more than we really needed to.

1        And so on standing issues -- again, standing,

2  irreparable harm, likelihood of success on the merits dealing

3  with historical tradition, most of that work has already been

4  done.  The only difference is -- oh, and I guess this is one of

5  the things maybe Your Honor was asking about, the analysis on

6  historical tradition applies equal to all the other sensitive

7  places we brought into play.  So their historical references

8  don't do any better on all of the other sensitive places than

9  on the first five.

10       Your Honor will recall that the *Koons* plaintiffs

11  sought relief as to libraries and museums, Section 12;

12  restaurants, Section 15 -- or that serve alcohol; Section 17,

13  which I believe, if I recall correctly, is entertainment

14  facilities; 24, which is private property; and 7(b), which is

15  the vehicle restriction.  All the same argument, all the same

16  findings, all of the same deficiencies in the State's proffer

17  of historical references and historical citations all apply to

18  the rest of the sensitive places that we are challenging as

19  well in our TRO.

20       So as a matter of the record, it's almost completely

21  there.  There's very little -- all the heavy lifting really has

22  been done.  There's very little else that has to be done to

23  resolve the TRO under Judge Bumb's analysis and Judge Bumb's

24  ruling.

25       Does that answer Your Honor's question?  I hope I went

1   to where Your Honor was asking.

2        THE COURT:  Yes, you did.

3        MR. SCHMUTTER:  Okay.  Thank you, Judge.

4        Does Your Honor have any other particular way you want

5   us to do this?  There's a lot of stuff.

6        THE COURT:  So, yeah.  If Judge Bumb has rendered your

7   application resolved -- I'll use your words, "resolved" --

8   what's before me?  What's related?  What do you need a decision

9   from me on?

10       MR. SCHMUTTER:  Well, so -- you mean if you keep the

11   case, if Your Honor keeps the case?

12       THE COURT:  Yes.

13       MR. SCHMUTTER:  Okay.

14       THE COURT:  If I were to decide what is before me

15   still right now, the TRO for plaintiffs.  Because even though I

16   understand and fully read your submissions, the fact that you

17   indicate that Judge Bumb's Opinion nearly resolves all of your

18   TRO requests is intriguing to me because these plaintiffs are

19   very different.

20       But if that is your supposition and position, then

21   what am I deciding?  What am I enjoining?  What are you seeking

22   a TRO on?  I'm trying to say this as plainly as I can.

23       MR. SCHMUTTER:  Understood, Your Honor.

24       So let me clarify something from our perspective, and

25   I want to make sure we're all on the same page on this.  We

 1   think consolidation should be decided before the TRO.  So we

 2   think that if the Court is going to send --

 3            THE COURT:  Wait.

 4            Do you agree with that, Ms. Cai, that consolidation

 5   should be decided before the TRO?

 6            MS. CAI:  I don't have a view on how -- the Court has

 7   discretion to decide whichever motion to decide first.

 8            THE COURT:  So let's go through the reasons why you

 9   say that.

10            MR. SCHMUTTER:  For exactly the question Your Honor

11   raised.  If -- because if -- the savings -- the Rule 42 values,

12   savings of judicial resources, is maximized by Judge Bumb

13   deciding our TRO application.  That's where half of the value

14   of consolidation comes.

15            The other half is preventing this Court to have to

16   repeat for the *Koons* plaintiffs what Judge Bumb already did.

17   So there are two pieces to it.  There's judicial economy as to

18   our application and judicial economy as to the *Koons*'

19   application for preliminary injunction.  So if the

20   consolidation takes place immediately, then Judge Bumb decides

21   the TRO, 98 percent of the work is done.  That's what we meant

22   by that.

23            Now, there is the other aspect of it, which is, number

24   one, collateral estoppel.  The Court saw our collateral

25   estoppel argument.  But even if the Court doesn't think that

1  the defendants are collaterally estopped, we think the Court

2  should adopt Judge Bumb's reasoning and, therefore, in that

3  sense, all of that work is already done.  All right.  If this

4  Court determines -- if this Court's going to hear the TRO and

5  decide the TRO, regardless of if consolidation happens or when,

6  if this Court is the one who decides the TRO, this Court can

7  and should adopt Judge Bumb's 60-page reasoning.  Those

8  principles, again, get this Court almost to the finish line.

9      The only other things this Court would have to decide

10  are the -- there's some additional standing arguments relating

11  to, for example, Bayonne and Union County and the Parks

12  Commissioner and the Fish and Game.  So those are some unique

13  arguments, which we don't believe are meritorious, but those

14  aren't present in *Koons*.  So whoever decides the TRO would have

15  to reach that.  That's not addressed in *Koons*.  Okay.

16      And then the additional elements that we're

17  challenging.  So we're challenging parks, beaches, recreation

18  facilities; we're challenging medical and treatment facilities;

19  we're challenging casinos; we're challenging racetracks.  So

20  what the Court should do, whether it's Your Honor or Judge

21  Bumb, what the Court should do is take the analysis and

22  principles already established by Judge Bumb, because it's very

23  sound, and simply apply them to the other provisions so they

24  apply equally to all the other provisions, because under the

25  Second Amendment *Bruen* analysis, the State's historical

 1  references do no better on racetracks, medical, casinos, all

 2  the other ones, airports, transportation hubs, than it did for

 3  the five that the *Koons* plaintiffs raised.

 4        It's the same analysis.  You just map it onto these

 5  other challenges and it works equally well, and the State's

 6  position is equally deficient as to all of those.

 7        That's -- and if the Court wants to -- we don't think

 8  it needs to, assuming the Court -- again, either this Court or

 9  Judge Bumb, determines -- if the Court determines that we are

10  entitled to complete relief, the Court need not reach the First

11  Amendment due process and equal protection issues.  But if the

12  Court is uncertain about that, then the Court -- again, this

13  Court or Judge Bumb should reach then the First Amendment

14  issues, the equal protection issues, and the due process

15  issues.  So that's what we see in terms of how -- the way this

16  ought to go.

17        THE COURT:  Understood.

18        MR. SCHMUTTER:  Okay.  Thank you, Judge.

19        I want to -- I'm not going to -- I'm going to try to

20  avoid repeating what's in our papers.  This is a lot of papers.

21  Your Honor read them, of course, so I'm not going to waste the

22  Court's time.

23        I want to do just a couple of things beyond what we've

24  already said.  I want to emphasize and sort of give a big

25  picture of the *Bruen* framework because it's really critical --

1    resolving any of these motions and all of these issues requires

2    putting *Bruen* in the right context, and that's critically

3    important.

4           So when one reads *Bruen* from cover to cover -- and

5    that's really the way it has to be -- the defendants have

6    cherry-picked pieces of the case and drawn the wrong

7    conclusions about what *Bruen* actually does.  When you read

8    *Bruen* cover to cover, start to finish, it is really clear that

9    *Bruen* says there is a fundamental, broad right to carry a

10   handgun outside the home for self-defense.

11          And what that means is, that when a person walks out

12   their front door, they should be able to carry -- defend

13   themselves as much as when they're in their house, and should

14   do so other than under exceptional circumstances.  And that

15   means there is a broad default rule of carry.  People should be

16   able to carry handguns in most circumstances at most times in

17   most situations.

18          What this law does is the exact opposite of that.  And

19   you don't have to have watched -- although it helps to have

20   watched the June 24 press conference, the day after *Bruen* was

21   decided.  *Bruen* is decided June 23rd; June 24th, the Governor

22   and the defendants, Platkin and Callahan, had a press

23   conference in which they talked about how much they hate the

24   ruling and how they're going to do everything they can to

25   undermine it.  They didn't say "undermine," but it was really

```
 1   obvious from the subtext.  The Governor signed an executive

 2   order basically telling all of the departments to do everything

 3   -- come up with every idea they could possibly come up with,

 4   and he announced his wish list of sensitive-place restrictions,

 5   which he got six months later.

 6           (Court reporter interruption)

 7           MR. SCHMUTTER:  I'm sorry.  I apologize.

 8           And he announced his wish list of sensitive places,

 9   which he got six months later.

10           Then you look at the debates in the committees, in the

11   Assembly and the Senate, and you see all these comments about

12   how much they hate people carrying guns, how people shouldn't

13   carry guns, how it's dangerous to carry guns.  But Bruen

14   clearly says that is not a proper consideration; people have

15   that fundamental right to do that.

16           And that comes straight out of Heller, that you don't

17   get -- the State of New Jersey doesn't get to decide that

18   people shouldn't be carrying guns.  It's a fundamental right.

19   That was decided when the Second Amendment was adopted, and yet

20   the politicians, including these defendants, keep talking about

21   how much they hate this.

22           And when you look at the -- when you look at the

23   YouTube video of the signing ceremony on December 22nd, it's

24   the same stuff, just more speakers.  The Governor, the Attorney

25   General, Giffords -- you know, all the groups, the Senate
```

1   President, the Assembly, the Speaker, all talking about how

2   people shouldn't carry guns.  But that's not constitutionally

3   permissible, and yet that's what they're doing.

4          And if there's any question about whether the purpose

5   of this law is to stop people from carrying guns, all you need

6   to know is that *Bruen* says that when you walk out your door,

7   you should be able to carry a handgun for self-defense; and the

8   very first thing every single person has to do is unload and

9   lock up their gun and put it in the trunk of their car.  The

10  moment you walk out your door, you have to be disarmed.

11         So it's impossible to come away from this law and not

12  see what they're trying to do here.  There's a fundamental

13  disregard for the *Bruen* case.  And so it's very important to

14  look at it that way, because once you look at it that way, you

15  can see what they're doing.

16         Now, also in the context of the *Bruen* analysis, I want

17  to talk about analogies.  The inner papers, the State talks a

18  lot about analogies, and what they try to -- and I understand

19  why they've tried to do this -- and we've talked about this in

20  our papers, I won't get too far into it, but --

21         THE COURT:  Slow.

22         MR. SCHMUTTER:  I am sorry, Judge.  I have that

23  problem all the time.  I've been doing this for 30 years, I

24  still have that problem.  I apologize.

25         As the Court saw in our papers, they've attempted to

1  aggregate dissimilar concepts in order to boost the numerosity

2  of their examples because they recognize that *Bruen* was

3  absolutely clear, that a small number of examples doesn't

4  create a tradition.  Remember, *Bruen* is about historical

5  tradition.  And *Bruen* explains that tradition involves

6  widespread practices and long-lasting practices.

7       And so the Court is clear, one example, two examples,

8  three examples doesn't do it.  And that was three examples out

9  of 13.  Most, almost all of them, maybe one or two exceptions,

10 of the State's examples are from 1860's, 1870's, 1880's -- and

11 we've already briefed that issue, so I'm not going to belabor

12 it, but by that time, there's 30, 40 states.

13      So if they have one example or two examples, it's even

14 worse from a *Bruen* perspective to establish tradition.  They

15 don't get to use these outliers.  And that's what outliers are

16 in the context of *Bruen*, and that's what Judge Bumb meant when

17 the Judge mentions "outliers."  Outliers has numerical

18 significance, not simply -- because something could be an

19 outliner for a variety of reasons, right?  It could be an

20 outlier because of territory, it could be an outlier because it

21 lasted only for a year, like in Texas, for example.  But most

22 important, outlier means there's only one or two or three, you

23 know.  And the Court was absolutely clear about, there's no

24 question you can't do that.  That's not a historical tradition.

25      But the attempt by the State to aggregate these

1    dissimilar things, what they're trying to do is they're trying

2    to create artificial concepts that allow them to analogize, but

3    they don't get to analogize here.  The Court was clear, you

4    only get to analogize when there's unprecedented societal

5    concerns in the modern era.

6         But we know that's not at play here because *Bruen* told

7    us, and so did *Heller* and so did *McDonald*.  *Heller*, *McDonald*,

8    and *Bruen* are explicitly about how the State deals with handgun

9    violence.  And in all three cases, the Court said you cannot

10   regulate possession of handguns to address that.

11        In *Heller*, it was possession in the home because

12   that's what Dick Heller, the plaintiff, wanted; *McDonald*, the

13   same thing, that's what Otis McDonald wanted; and here, that's

14   what the plaintiffs in *Bruen* wanted.  So the Court has already

15   disposed of that.  There is no unprecedented societal concern.

16   It's the same issue as in those three cases.  That's thing

17   number one.

18        Thing number two, dramatic technological change.

19   Again, this is handguns.  *Heller*, *McDonald,* and *Bruen* all dealt

20   with modern handguns.  There were no dramatic technological

21   changes at work in those cases.  This is the same.  So they

22   don't get to rely on dramatic technological changes to

23   analogize.

24        The third context is modern regulations unimaginable

25   at the time of the founding.  These are just prohibitions on

1   handgun possessions.  There's nothing unusual about these.

2   Again, it's no different than *Heller* and *McDonald* and *Bruen*.

3   It's preventing law-abiding people from possessing handguns for

4   self-defense.  That's what the regulations are.  So again, they

5   don't get to rely on that prong.

6          And at page 2133 of *Bruen*, when they talk about what

7   analogies are for, what that process is for in the context of

8   sensitive places, the Court says, new places.  New places.  And

9   they emphasize in italics the word "new," because all of the

10  places on the sensitive-place list existed in 1791.  They had

11  parks, they had beaches, they had libraries, they had museums,

12  they had gambling houses, you know, they had restaurants.  They

13  had all of these things.  They had public gatherings.  All of

14  that stuff existed.

15         And so -- they had vehicles.  They were different.

16  But as we know from *Heller* and *McDonald* and *Bruen*, you don't --

17  and from *Caetano*, by the way.  *Caetano* is actually very

18  instructive on this.  You don't treat the right differently

19  just because a modern version of something is different.  So,

20  you know, modern firearms are no different than 18th Century

21  firearms.

22         Same thing under the Fourth Amendment.  You know,

23  modern methods of surveillance.  Same thing under the First

24  Amendment, modern methods of --

25         (Court reporter interruption)

1      MR. SCHMUTTER:  Modern methods of speech.  The

2  internet, radio, television versus pamphleting.

3      The Court is clear, you treat them the same, and you

4  don't get special rules simply because modern technology looks

5  different than what things looked like in the 18th Century.

6  And so new places, something wholly different than what was

7  happening in 1791, there are none.  And so they don't get to

8  analogize.

9      So they complain in their -- in their supplemental

10  briefs from Tuesday, the initial supplemental brief, because

11  Your Honor had asked us to initially brief the impact of the

12  *Koons* decision, they complain that Judge Bumb was improperly

13  forcing them or compelling them or expecting them to be exact

14  or to be a carbon copy -- they used the language from *Bruen*.

15  But that's -- now, I don't know if that's a proper description

16  of what Judge Bumb did.  I think it's a little overstatement.

17  But the point is, she was correct to demand a very close fit

18  between the modern regulations that they're trying to support

19  and the historical examples because this is not an analogizing

20  opportunity.

21      And the State says something very revealing in their

22  brief which is, again, incorrect.  And this is their -- in

23  either the supplemental brief or -- yeah, this is in their

24  supplemental brief on Tuesday.  They say that *Bruen* invited

25  states to analogize, and that is not an accurate description of

 1    what *Bruen* did.

 2         I heard that -- I don't know if this is where they got

 3    it, but I heard that in one of the hearings in the Senate, I

 4    think it was the Senate Judiciary Committee, where one of the

 5    Senators said, well -- and the discussion was, is there

 6    historical tradition that supports this bill as it was making

 7    its way through the legislature.  And one of the Senators said,

 8    well, we don't know, but *Bruen* sort of invites us to give it a

 9    shot and we'll pass it and see what happens.

10         That is so exactly the opposite of what *Bruen* actually

11    says.  There's no invitation to states, like to Jersey, to just

12    throw it out there and try it and see what happens.  It's the

13    opposite.  *Bruen* says, as I said previously, there is a broad

14    and general right to carry handguns and only in exceptional

15    circumstances can that be denied.  So it's not an invitation to

16    just see what flies and see what sticks to the wall, it's it

17    should be a very careful analysis of what are those very narrow

18    exceptions, what are those very limited exceptions that are

19    very closely related to the ones that we know like polling

20    places, legislative assemblies, and courthouses, you know.

21         And so when the State tries to invent these kind of

22    arbitrary categories like government and

23    constitutionally-protected activities, that's not even stuff

24    that goes together.  Again, they're trying to aggregate so they

25    can bump up the numbers to meet the numerosity requirement.

1          Where crowds gather is another one of their

2    categories.  I mean, not only is that not a meaningful

3    aggregation of -- that's an aggregation of dissimilar items,

4    but it's specifically prohibited by *Bruen*.

5          *Bruen* goes out -- they have a whole discussion of like

6    how crowds don't count.  New York tried to take that position

7    in *Bruen*, and the Court said, no, if you allowed crowds, then

8    it's everywhere.  Everywhere is crowded.  New York City is

9    crowded, New Jersey is crowded.  New Jersey is one of the most

10   crowded states in the country.  Crowds don't count.

11         And so for the State to say, oh, yeah, we're going to

12   have a category of crowds, I mean, it's directly contrary to

13   what *Bruen* says explicitly, you know.  So it's important to

14   recognize that what they're doing in terms of building these

15   artificial categories is they're trying to get an end run.

16   They're trying to do an end run around what *Bruen* says is

17   required, and it really shouldn't be allowed.

18         And I guess the last -- I guess the last thing I want

19   to get to, Your Honor, is just I -- standing.  We've briefed

20   standing, you know, exhaustively, but I want to remind the

21   Court about -- I don't want this to get lost, because this was

22   in our reply brief from last week and there have been two

23   briefs from each party since then.

24         In addition to all the standing arguments that have

25   been very thoroughly briefed, including yesterday, I want the

```
 1   Court to remember that -- and this goes to redressability and
 2   traceability, you know, that prong.
 3          Remember, we argue in our reply brief that the
 4   Attorney General, by Constitution and statute, the Criminal
 5   Statute Act, is the chief law enforcement officer of the state.
 6   That means that all law enforcement is subordinate to the
 7   Attorney General, who is the lead defendant in this case.  That
 8   means that the Union County Police, the Union County
 9   Prosecutor, the Bayonne Police, the Bayonne Municipal
10   Prosecutor, they are all bound and subordinate to the Attorney
11   General, so redressability is actually not a problem because,
12   as we said in our brief, this Court could fashion a remedy that
13   would instruct the Attorney General to ensure that any
14   authority that's subject to his jurisdiction does nothing
15   that's inconsistent with this Court's ruling.
16          So if the Court gives us relief on parks, for example
17   -- because this really is the park issue.  If the Court gives
18   us relief on parks, not only will it enjoin, you know, the park
19   provision, but it could fashion a remedy that says the Attorney
20   General has to ensure that Union County and Bayonne and any
21   other jurisdiction that has similar restrictions do nothing
22   inconsistent with the Court's ruling.  The Attorney General can
23   do that as the chief law enforcement officer.
24          Relatedly, the Attorney General has concurrent
25   jurisdiction vis-a-vis parks and vis-a-vis fish and game.  And
```

1   so while the Parks Commissioner and the Fish and Game

2   Commissioner can visit civil penalties under those regulations,

3   the Attorney General has concurrent authority with respect to

4   criminal penalties.

5           So redressability is vast.  The Attorney General is

6   directly implicated into those regulations as well.  So it's

7   not like you have some arbitrary separate coequal official that

8   the Attorney General is unrelated to.  The Attorney General is

9   deeply embedded in both of those regulatory structures, has

10  criminal authority, and therefore, in terms of redressability

11  and injunction against the Attorney General, would absolutely

12  satisfy what *Lujan* requires in terms of redressability.

13          Remember, the Third Circuit's clear, that you don't

14  need -- concurrent causation is fine.  You don't need complete

15  relief, you just need relief.  And if this Court gives

16  injunctive relief as to parks on that issue, these plaintiffs

17  are vastly better off precisely because of that.

18          And then I guess the final argument is simply the

19  declaratory judgment argument.  Again, we don't want that to

20  get lost.  We're also seeking declaratory relief.  And, you

21  know, as the Court knows, municipalities and counties and other

22  departments of the State of New Jersey are all creations of the

23  State of New Jersey.

24          If the State of New Jersey is subject to a declaratory

25  judgment that parks and recreational facilities -- that

1    restrictions in parks and recreational facilities are

2    unconstitutional, as a matter of declaratory judgment, Bayonne

3    doesn't get a second bite at that.  If the State of New Jersey

4    loses on that issue, the State of New Jersey loses on that

5    issue, the whole state loses.  Bayonne doesn't get another shot

6    at that; Union County doesn't get another shot at that; and the

7    Parks Commissioner doesn't get another shot at that.  So the

8    declaratory judgment makes a big difference in terms of

9    redressability.

10          And then the final point on the declaratory judgment

11   is under 1983, it would constitute clearly established law.  So

12   whether or not under -- you know, under the qualified immunity

13   rules.  And so if some public official in Bayonne or Union

14   County, or even the Parks Commissioner tries to visit some

15   criminal or civil penalty against these plaintiffs in the face

16   of a declaratory judgment that says it's unconstitutional to do

17   that under *Bruen*, you can be sure they would be subject to

18   damages under 1983 and they would not have the available

19   defense of qualified immunity.

20          Again, that's complete redressability because

21   declaratory judgment takes care of all of it.  Everybody would

22   be frozen in place.  If nothing else, because of under the

23   penalty of 1983 damages.

24          If Your Honor has any questions, I'm happy to address

25   them.  Otherwise, I don't want to take up any more of the

1   Court's time.

2          THE COURT:  Thank you.  No questions at this time.

3          MR. SCHMUTTER:  Thank you, Judge.

4          MS. CAI:  Your Honor, I think I'll go in the order

5   that Mr. Schmutter did, which is first talk about what's before

6   this Court.  I'll make a couple broad points on the merits.  I

7   do want to get into the provisions, because it seems like we

8   were talking about in broad generalities before, and then I'll

9   end on sort of the standing, irreparable harm, and public

10  interest issues.

11         So what's before this Court?  To be clear, you can

12  look at Mr. Schmutter's Exhibit B to his declaration where he

13  helpfully lists out what the TRO claims are and what the PI

14  claims are.  There's 18 locations, by my count, maybe 17,

15  something like that --

16         THE COURT:  19.

17         MS. CAI:  -- that are challenged in Siegel.  Some of

18  them have multiple constitutional claims.  I could tell you 13

19  of those are not in *Koons*, period, full stop.

20         So those are claims that are -- have only been before

21  this Court, have only been briefed before this Court.  They are

22  only case -- they're only issues that this Court has reviewed.

23  And in addition, they are individual plaintiffs in this case

24  that are, obviously, not in *Koons*.  They have -- they're

25  distinct declarations, claims in those declarations.

```
 1          And we laid all of this out in our Tuesday letter, and
 2   I don't really hear a response from plaintiffs except to just
 3   try to say a hundred percent of the issues are resolved in
 4   Koons.  I mean, that's just not true.
 5          Let me put it this way:  If this case were sent to
 6   Judge Bumb, or any new judge, they would have to hold a new
 7   hearing, potentially receive some little briefing, but we're
 8   here now before this Court.  This Court has received all of our
 9   materials, rounds and rounds of briefing, and obviously, is
10   hearing argument.
11          So I think it's --
12          THE COURT:  But what happens with the Koons case?
13          MS. CAI:  Well, Your Honor, if Your Honor wants to
14   hold off on deciding those claims because there's already a
15   TRO, it can do that.  You can look at those claims and decide
16   if you want to deal with them later on.  All we're saying is
17   that it's very inefficient to resolve only the claims that are
18   before this Court, which are numerous, and have only been
19   before this Court for the past few weeks that we're here to
20   discuss and to argue today.
21          And I think that's why this Court --
22          THE COURT:  Well, let me ask the question a little
23   differently.  And I understand your response and it did respond
24   to my question.  I didn't mean to suggest that it didn't.
25          MS. CAI:  That's quite all right, Your Honor.
```

```
 1            THE COURT:  In effect, Judge Bumb has granted a TRO --

 2            MS. CAI:  Yes.

 3            THE COURT:  -- on these sections.  I want you to talk

 4     to how those -- how that grant, those restraints on those

 5     five -- let me get it right -- special places translate here.

 6     Because they do, don't they?

 7            MS. CAI:  I think, Your Honor, there are -- it depends

 8     on how you look at it.  So what I would like to do is to go

 9     over the provisions and tell you what evidence we have to

10     support each provision that's challenged here and why there may

11     not be any reason to look at the Koons decision for at least

12     many of those provisions that are challenged here.

13            THE COURT:  So let me -- the reason I want to pause

14     and have you think about this is, as I read your supplemental

15     briefing, you are truly -- when I say "you," you understand I

16     mean the State, not you personally.  We keep that in mind.

17     This is not about us.  We're all doing our jobs and that's it,

18     including the Court.

19            You're asking me to -- and perhaps the legal

20     terminology is not the best I'm going to use, but reconsider

21     Judge Bumb's Opinion and apply it differently.  That's what

22     you're asking me to do at the end of the day.  That's how I

23     read it.  Tell me why I'm wrong about that.

24            MS. CAI:  Your Honor, you are free to do that, but I'm

25     telling you that you don't have to do that.  And so there's a
```

1    distinction between the arguments we made -- and I think

2    Section 2(a) of our brief, which is regardless -- you can take

3    every word in the *Koons* TRO decision as-is and you could issue

4    a decision certainly as to the 13 other places and the other

5    constitutional challenges that don't conflict with the judgment

6    from -- the TRO judgment.  And that is an option this Court

7    has.

8           Now, we do disagree with some of Judge Bumb's

9    reasoning, and we've highlighted that to the Court in Section

10   B.  And this Court is also free to accept that or parts of that

11   and review that.  And so that's all we're saying, Your Honor.

12   There are many issues that are only in this case and not in

13   *Koons*.

14          THE COURT:  And so I'm pausing you again.  This is

15   why -- and I'm not sure it was in the briefing, but this is

16   what I have been struggling with for the past day and a half,

17   two days, if I decide the motion to consolidate first.  If I

18   decide the motion to consolidate first, and I find that the

19   equities militate in favor of Judge Bumb, do I even need to

20   reach the TRO here?

21          Which is why I pressed Mr. Schmutter on this -- you

22   know, because if I took it at face value, it's a hundred

23   percent done.  Okay, well, I'm done then on the TRO.  Right?

24   But we all know, counsel, the Court, that Judge Bumb's decision

25   didn't quite do that because these plaintiffs, number one, are

1    deferent people with different issues and different factual

2    underpinnings to their challenge to this law.  Moreover, they

3    challenge more.  They challenge more, more places, more

4    principles.  Right?  We have the other principles that are out

5    here that are challenged, the First Amendment, the code, the --

6    there are differences.

7         If you can think about that and give me how you

8    process if I decide the consolidation first and I put Siegel

9    into *Koons*.

10        MS. CAI:  Your Honor, I think the two questions are

11   somewhat related in the way that you've asked it --

12        THE COURT:  Uh-huh.

13        MS. CAI:  -- which is, because the claims that are

14   distinct in this case are before Your Honor and have been fully

15   and are being fully fleshed out before Your Honor, it wouldn't

16   support consolidation of Siegel into *Koons*, in addition to the

17   rules-based arguments that we already made before, because

18   these are, as Your Honor just said, new claims, distinct

19   claims, unique claims, and they have only been heard by this

20   Court.  And to repeat all of that, to send it away for a new

21   decision, I mean, that's not efficient.

22        THE COURT:  But that's not totally accurate because

23   the only thing that is different at this juncture is the TRO

24   claims.  Right?

25        So this is why we needed time with Bumb's decision.

```
 1   If, in fact, she's enjoined the State from doing these
 2   things -- which she has.  That's how we read it.  Probably
 3   didn't say it, you know, totally correctly in the legal
 4   verbiage.  Is there irreparable harm left for me to address on
 5   a TRO?  Isn't the only thing left a preliminary injunction?
 6   Isn't the only thing left a preliminary injunction?
 7            And if a preliminary injunction is the only thing
 8   left, don't the efficiencies and the principles that support
 9   consolidation, putting aside first filed, doesn't that really
10   guide this Court to consolidate the case into Judge Bumb's case
11   and so it provides all of the efficiencies that consolidation
12   speaks to?
13            MS. CAI:  So, Your Honor, I think there's two
14   different questions there.  First is the 13 out of the 18
15   locations that are only in this case.  So Docket No. 810,
16   Mr. Schmutter has listed all the claims that he's seeking a TRO
17   on.  Now, there's probably another, you know, half a dozen or
18   more claims that are not before this Court on PI, but for the
19   ones that he's seeking a TRO on, these are not in Koons.  So
20   protests and public assemblies, casinos, parks, youth sporting
21   events, airports, hospitals, filming locations, fish and game
22   restrictions, whether or not the same parcel of property is
23   shared with a school, these are not things that are in Koons at
24   all.  And I can go through why --
25            THE COURT:  But isn't the effect of Koons, doesn't
```

1    that deal with this?

2          MS. CAI:  No, Your Honor.  I think there are reasons

3    why these claims -- they are distinct claims, there's distinct

4    evidence to support these claims or support the provisions that

5    they're challenging, and those arguments are only before this

6    Court, and this Court would be considering those.

7          Now, as to the five that the *Koons* -- five provisions

8    that the *Koons* Court has ruled on on TRO, Your Honor brought up

9    a point about irreparable harm on that and this posture, and I

10   guess -- you know, I hadn't thought about it quite in that way

11   before, but I suppose you could say that because there is a TRO

12   currently on those claims, plaintiffs here don't have

13   irreparable harm on those five.

14         Now, I don't know if Mr. Schmutter agrees or not and

15   he can respond --

16         THE COURT:  No.  My argument is on any of it.  Like, I

17   don't need to deal with the TRO at all because it's been dealt

18   with.

19         See, this is why -- again, you know, lawyers and

20   judges have to be very careful with the words they use,

21   especially when they put it in writing.  You said nearly a

22   hundred percent, and then today Mr. Schmutter said 98 percent

23   of the work is done.  What's the two percent?  That's what I'm

24   trying to discern.  Because you can't possibly be arguing to me

25   that the two percent are these other 13 claims.

```
 1          MS. CAI:  Your Honor, we have never argued --
 2          THE COURT:  No.  I'm really talking to Mr. Schmutter.
 3   I need to make --
 4          MS. CAI:  You were pointing at me and I was getting
 5   nervous.  Yes.
 6          THE COURT:  I need to make that clear.  I was really
 7   directing those comments to plaintiffs' counsel.  And, look, I
 8   practiced a long time.  I know how to chase rabbits and know
 9   how to get them out of the way.  This is not a rabbit.  This is
10   a real thing.  This is plaintiffs' conceding, as I view it.
11          MS. CAI:  Your Honor, if you think that plaintiffs
12   have conceded that they do not require injunctive relief from
13   this Court, then this Court can just deny the TRO and all the
14   issues can be decided on preliminary injunction when the TRO
15   expires.  I mean, that's --
16          THE COURT:  But not fully, not completely because I
17   have to take into consideration the effect, right?  Because the
18   reason why I would even be able to is because of the analysis
19   that Judge Bumb has already undertaken.
20          This Court's in no position, inclination, or of the
21   mind that I've got to revisit the Koons decision,
22   notwithstanding your significant briefing that suggests perhaps
23   I should.  That's not where I'm at.  And so I'm raising this
24   and speaking to you and counsel about this because I want you
25   to focus on what I believe the challenges to a decision for me
```

1  are.

2          MS. CAI:  Right.  So I think that means, if I'm

3  hearing Your Honor correctly, that you want to talk about only

4  the claims that are in this case and not in *Koons*, and so we

5  can do that.

6          THE COURT:  Yes.

7          MS. CAI:  So if we want to start from, you know, the

8  first numerical one, which is Section 7(a)(6) on public

9  demonstrations.

10         THE COURT:  And further limit the ones that -- I'm

11  sorry.  Perhaps I've done this a little backwards.  I probably

12  should have Mr. Schmutter tell me what's the two percent of the

13  case he thinks is left, and then have you respond to that.

14         MS. CAI:  I'm happy to have him talk about that.

15         THE COURT:  Because that way you're more circumspect

16  in how you address it and it actually speaks to what I'm

17  thinking about how this case should be resolved.  The matters

18  before me today right now, not entirely.

19         MS. CAI:  Sure.

20         MR. SCHMUTTER:  Judge, I want to make sure I

21  understand what Your Honor's asking and saying about the

22  98 percent issue because I'm not sure I followed it.

23         Our contention -- when we say "almost all the work has

24  been done," what we mean is that as to those 13 -- I'll take

25  counsel's word for it.  I didn't count them.  But that sounds

 1   about --

 2          THE COURT:  From my count is there's 19 all together,

 3   she decided five, so there's 14.

 4          MR. SCHMUTTER:  Fair enough.  I get it.  Whatever it

 5   is.  Your Honor has a chart, and I have a chart so --

 6          THE COURT:  We all have charts.

 7          MR. SCHMUTTER:  Yeah, charts are helpful.

 8          The two percent includes actually entering an order

 9   because we -- even though Judge Bumb did all of the analysis or

10   almost all of the analysis necessary to get relief on those

11   other 14, we don't have relief on those other 14.  Right?  So

12   the next step is enter an order.

13          That's why -- that's our application for a TRO.  So we

14   need those five and the other 14.  But our point is, all the

15   same analysis applies.  There's no additional *Bruen* kind of

16   analysis that has to be done because everything Judge Bumb said

17   in enjoining the first five applies equally to the other 14.

18   That's our -- that's what we mean by 98 percent done.

19          And then the other two percent, in addition to

20   actually signing a TRO for the other 14, includes those other

21   kind of issues that are outstanding like the Parks

22   Commissioner's -- they're standing issues on the Parks

23   Commissioner and Bayonne and Union County.  That should be

24   resolved on that issue because that's not on *Koons*, so Judge

25   Bumb didn't deal with that.  But that's why we say almost all

1    of the work has been done because the *Bruen* part, the

2    fundamental *Bruen* part, that all applies to this case.  That

3    all applies to the 14.

4            And so if the Court is inclined to think that Judge

5    Bumb's analysis need not be redone, that gets you, Your Honor,

6    at 98 percent of the way to giving us relief on the other 14

7    because it's all the same, it all applies the same way.  That's

8    why we pointed out that the State's historical examples are all

9    the same in both cases.  It doesn't do them any better on the

10   other 14 than it did on the first five.

11           So the step would be to simply take the analysis from

12   Judge Bumb, apply it to the 14 in the same way, and we get a

13   19-item TRO instead of a five-item TRO that the *Koons*

14   plaintiffs have.

15           THE COURT:  Thank you.  Now I want to hear -- now that

16   that's clear on the record, let me hear from Ms. Cai.

17           MS. CAI:  Your Honor, I think Mr. Schmutter's not -- I

18   think when he says 98 percent or two percent, he means he

19   agrees with everything that Judge Bumb did in *Koons* and so

20   someone can go and apply that to this case.  That's all he's

21   saying.  But that's not actually what's happening here.  There

22   are 13, 14 new claims, and we have actually additional evidence

23   on those claims that Judge Bumb doesn't even have before her

24   because they were not before her.

25           There are -- plaintiffs have plaintiff affidavits

1  about their desire to visit those places that are not in *Koons*

2  because those were never challenged and the *Koons* plaintiffs

3  never talked about it.  So by definition, this is just a

4  fallacy to say all one needs to do is to take the *Koons* Opinion

5  and then enter an order against all of these other provisions

6  that were not challenged there.  I think that doesn't make any

7  sense, it would -- as I said, if this -- if those new claims

8  were to be heard by a different judge, we would need to submit

9  all of that before that judge again.  And so it's not -- and to

10 go through all the evidence and all that.

11        So I can give you some examples of where this -- you

12 know, this becomes very, very crystal clear.  And actually the

13 very first example is the first provision that the *Koons*

14 plaintiff challenged but -- sorry, the Siegel plaintiffs

15 challenge and the *Koons* plaintiffs don't, which is Section

16 (a)(6) on public assemblies.  I'll talk about standing and

17 irreparable harm separately because I think, you know, we just

18 want to focus on the issues here.

19        We've cited numerous examples of historical

20 restrictions on public assemblies specifically.  So that's

21 Exhibit 5, 8, 10 and 22.  Some of those are not even before the

22 *Koons* Court because, again, this provision was not challenged

23 there.  And these are specific historical analogs that

24 specifically mention public gatherings and public assemblies.

25 They are, for lack of a better word, historical twins, which

1    are not required under *Bruen*, but certainly if you have them,

2    they can only support the finding that these location-based

3    restrictions for firearms are supported by long tradition of

4    constitutionality.

5            And I think what's very clear is that these are claims

6    and evidence that are only before this Court.  And we can talk

7    about, you know, plaintiffs' arguments that went to these

8    particular exhibits that are also not before the *Koons* Court.

9    So, for example, they have an argument in their reply brief

10   about the Georgia law, Exhibit 22, not before the *Koons* Court,

11   about how it only mentions public gatherings and that must mean

12   other things like voting and mustering and not general public

13   gatherings.

14           We are responding by saying actually it says public

15   gatherings except for militia muster grounds, and then it talks

16   about elections separately.  So public gatherings means what

17   the statute says on its face.  We're making all these arguments

18   uniquely on this particular piece of evidence that's in this

19   particular claim before this Court.

20           And so I think this is a very good example of an

21   argument and a claim that is unique, and you look at the

22   evidence that we submitted before this Court and can make a

23   determination as to the constitutionality of this very

24   long-standing provision that has never been challenged, as far

25   as we know, and plaintiffs certainly haven't put forth any

 1  evidence that the historical tradition was somehow thought to

 2  be unconstitutional or constitutionally suspect.

 3          Then we can look at the next provision they challenge,

 4  which is Sections 9 and 10, which apply to parks, beaches,

 5  playgrounds, other recreational facilities.  I think -- I am

 6  sorry, I think nine is zoos, although I just got to remind

 7  myself which one is which.  Yes.  Okay.  So these are also not

 8  challenged in *Koons.*  And again, we're only talking about the

 9  merits problems, although these definitely also have standing

10  and irreparable harm problems as well.

11          And this one is also straightforward.  Our analogs for

12  these are numerous, directly on point, and not in before the

13  *Koons* Court because this provision was not challenged.  So, for

14  example, in Exhibits 23 and 24, we discuss how two of the most

15  prominent public parks in America, Central Park and Fairmount

16  Park, restricted firearms very soon, as soon as they became

17  open to the public or within years thereafter, and in

18  Exhibits 25 through 28 we show how many other large parks open

19  to the public followed suit with the identical restrictions on

20  firearms soon thereafter.

21          As far as we know -- and plaintiffs have offered

22  nothing to the contrary -- these rules restricting firearms

23  access at parks were not challenged at the time, were not

24  deemed to be unconstitutional.  They have nothing to refute

25  this evidence.  All of these arguments are only before this

1    Court.

2          And I think it's important to also think about the

3    plaintiffs offered evidence on this issues.  So, for example,

4    we talk about the rationales behind historical traditions, and

5    parks and beaches are good examples.  They're often used for

6    large activities like festivals, concerts and such.

7          Plaintiff Stamos -- again, his allegations are only in

8    this case -- talk about how -- they only talk about going to

9    these parks in Bayonne for fairs and festivals and special

10   events.  That's a good example of why the evidence in this case

11   shows that what *Bruen* calls the how and why of the historical

12   restrictions apply equally to the how and why of the modern

13   restriction that we're comparing.

14         And so I think this makes a lot of sense in terms of

15   what -- when you're thinking about how to apply *Bruen* directly,

16   I don't think anything that was discussed in the *Koons* decision

17   bears on this provision, certainly in terms of what it was

18   holding and certainly in terms of its reasoning because we have

19   directly analogous evidence and it is directly on point,

20   especially as to how the plaintiffs themselves claimed they

21   want to use these particular locations.

22         I can skip over the libraries and museums, although I

23   will say I think there's just some confusion there about are

24   they public or not.  It only applies to public libraries, that

25   provision.

1    And then we can also talk about a number of

2  provisions -- and I don't have to go through each and every one

3  of them, Your Honor, they are in our briefing, but I think we

4  can talk about the ones that are not challenged in *Koons* that

5  are distinct here.  So that's (a)(11), youth sporting events;

6  (a)(18), casinos; (a)(20), airports and transportation hubs;

7  (a)(23), movie sets.  Right?  And I think what's unique about

8  these, and it's something that Mr. Schmutter was talking about,

9  is, are they things that existed at the founding such that we

10  can't even try to give analogs?  I mean, they are, right?

11  Airports historically did not exist; casinos historically did

12  not exist; movie sets; even train stations, there were no

13  locomotives at the founding.

14    And so we're looking at comparable locations or

15  comparable restrictions at locations and what kind of rationale

16  went into these provisions.  These are things that the *Koons*

17  Court never passed -- you know, passed any judgment on,

18  received any briefing on, and I think we have a lot of very

19  good evidence for these.

20    So, you know, we talk about, for example, in

21  Exhibit 9, a Texas law that specifically provided that

22  circuses, shows, and public exhibitions are places where

23  firearms would not be allowed.  I think that applies to movie

24  sets and, you know, these are -- there are other provisions as

25  well that this Court can look at.

```
 1              And I think plaintiffs' main argument is that *Bruen*
 2    rejected the idea that a place is crowded -- places that are
 3    crowded are, by definition, sensitive places.  I mean, we agree
 4    with that.  No one is saying, as the *Bruen* plaintiffs tried to
 5    argue to the Supreme Court, that all of New Jersey or Manhattan
 6    or even Jersey City is a sensitive place just because the
 7    population density is high.  But I think it's important to not
 8    overlook the fact that *Bruen* said you look to the historical
 9    analogs, right?  You have to look to that.  And just because an
10    expansive, an overly expansive reading of the word "crowded"
11    doesn't work doesn't mean that we ignore the actual historical
12    analogs, the actual prohibited firearms at specific locations.
13              We're talking about places like the Borgata, Newark
14    Penn Station, Newark Airport.  Right?  And so these are the
15    kinds of things that we are looking at in terms of the
16    historical tradition that supports that.
17              And so then we can also -- does Your Honor want to
18    keep going or do you have any questions about some of these --
19    I don't want to keep talking unless --
20              THE COURT:  No.  It just -- honestly, I just -- this
21    is what I hear, revisit Bumb's decision.  That's what I hear.
22    And I certainly am not bereft of understanding.  I get it.
23    There's additional historical information and data.  I'm just
24    compelled that one judge should be deciding these things.
25    That's really the impetus of my understanding of what is
```

1  happening here in this case, this case and *Koons*, that these

2  issues should be presented to one judge.  That's what I think.

3       And in so doing, I think it serves the interest of

4  everyone, of everyone.  No question, Judge Bumb's decision in

5  *Koons* did not address these things.  Plaintiff can't even truly

6  argue this, in all candor.  What he's arguing or seeking is the

7  extension of her decision onto these issues.  That's what

8  you're arguing for.  We all understand that.

9       Similarly, Judge Bumb's Opinion in *Bruen* is thorough

10  and exhaustive.  And so as I'm framing this and my approach to

11  this, I keep landing on, you know, this really should be one

12  judge deciding all this.  That's where I keep landing.  And so

13  I know both of you have landed there too.

14       I'm just, honestly, a little -- hindsight is 20/20.

15  Should have dealt with the motion to consolidate, right?  And I

16  say this because, look, we're human.  And, you know, an

17  emergent motion to consolidate, when does that ever happen?

18  Because even though I'm new to this position, I've been in this

19  courthouse for quite a long time, and so I've seen plenty a

20  motion to consolidate.  Emergent?  And so I'm just struggling

21  here with how do I address what's before me right now, in light

22  of what Judge Bumb has already addressed, and provide what I'm

23  going to characterize as a roadmap for the parties to

24  resolution?  Right?  Because as judges, we can only deal with

25  what's before us.

1          These issues are important, widespread, and the

2     Supreme Court has spoken.  So on some level, sometimes, you

3     know, I will say, wow, we wish this was clearer.  Not the case

4     here, though, is it?

5          So, I mean, I don't want to short-circuit or shortcut

6     your arguments, but I do want everyone, counsel to be aware

7     that I've thoroughly considered these and it doesn't land me to

8     what I think is the right outcome.  Right?  Because I think

9     ultimately the right outcome is one judge.  One judge should be

10    dealing with all of this.

11         Now, which judge?  Which judge?  We all work really

12    hard, so that's not what you're looking for.  You're not

13    looking for a judge shop because you don't know what I'm going

14    to do.  The neutrality provisions of 42 and 40.1 specifically

15    are there and well briefed and included.  I think this case

16    here, the way that it's teed up, is different.

17         So I don't want to interrupt your presentation and

18    argument, I don't want to interrupt your argument, but as I get

19    deeper and deeper into your argument, my concerns are not

20    quelled.  They're just heightened.

21         MS. CAI:  If I may, Your Honor, on the last set of

22    discussion points?

23         I think what I would like to do is just to offer what

24    we think is the right roadmap for the sequencing of things, if

25    that may help.  Obviously, it's up for Your Honor to decide.

1   But I think the natural order of things that I think alleviates

2   Your Honor's concerns is grant the motion to consolidate.  It

3   seems like the plaintiffs agree it should be granted.  We would

4   submit that this Court should follow the rules as they're

5   written and as they have been followed in cases where there

6   have been more activity in the higher docket numbered case, the

7   second filed case, and yet it still goes to the first filed --

8   first docket number.  And that's because you want to follow the

9   same rules and not make, you know, sort of subjective

10  determinations about who did more work and all of that.

11          Second, this Court can then just rule on the 14 claims

12  that are not in *Koons* on the TRO posture.  Everything's then

13  consolidated.  We will come back to the PI on all of the

14  claims, as Judge Bumb would have to revisit the five claims on

15  PI anyway if these weren't consolidated.  And so it's no

16  different than how it would proceed -- I mean, I think the

17  important thing is that it's going to be a case that has a

18  trajectory beyond the TRO period.  Right?

19          There's going to be PI for sure, there's going to be

20  potentially an appeal from the PI that would give the Court

21  more clarity.  After that, there may be discovery, dispositive

22  briefing, all that stuff.  All that, we agree, should happen

23  before the same judge, and there's no reason to depart from the

24  neutral consistent rules that it's the judge who has the lower

25  docket number.

1    But I don't think this Court necessarily needs to be
2  concerned about two Courts ruling on the same provisions that
3  are challenged, because as to the five, I think there's a very
4  natural -- although I wish I could crystallize quite the same
5  way the Court did to say why is there a need for a TRO on five
6  claims that are already enjoined by another TRO?
7    And so it's really just about, you know, where we are
8  at the PI stage, and the same Court can address all of the
9  claims together at that stage, in addition to all of the claims
10 that -- you know, that are not even at the TRO stage, that are
11 only in this case.  And so that's sort of the State's proposal
12 for the path forward generally.
13    And with respect to -- it's okay to not go through all
14 my prepared materials and the provisions.  You have my
15 briefing, they're very voluminous, and I can certainly answer
16 any questions if Your Honor has any on those provisions.  And
17 we can even do that on follow-up briefing.  I'm sure Your Honor
18 doesn't want that.  But if Your Honor were to have questions on
19 that, we're happy to do that.
20    And so that's sort of my submission on how to resolve
21 the where-we-are-now question and how-to-go-forward question,
22 and I don't think that's at all inconsistent with -- you know,
23 this case is unique, but I don't think it's inconsistent with
24 situations that this Court -- and by that, I mean the District
25 of New Jersey has faced before in cases like the *Younes* case

1   and the *Ricci* case where, you know, there are -- cases end up

2   in different places procedurally, even though they're supposed

3   to have been consolidated earlier, perhaps, and that's okay.

4   Obviously, we don't want to cry over spilled milk and all that.

5   That's all okay.  That has happened before.

6        That has not prevented, you know, other judges and,

7   you know, the rules of this Court from operating the way -- in

8   a consistent way.  Which is, regardless of what has happened in

9   a higher docket numbered case, so long as the need for

10  consolidation has been met, which I think everyone agrees they

11  have, the case, the second filed case falls under the first

12  filed case, and future proceedings, where the benefits of

13  consolidation are very palpable, continue on.

14       So that's sort of our submission for how this should

15  happen.  I'm happy to answer any more of the Court's questions.

16  And I will say, we were gratified to hear from the Supreme

17  Court yesterday on the ultimate disposition of, you know,

18  how -- how injunctions should happen while the courts are

19  dealing with the issue.  But, you know, Your Honor already has

20  our arguments on that and I won't belabor that anymore.  Thank

21  you.

22       THE COURT:  And to your point, I know you have more

23  prepared materials, but -- and I like to say when it happens,

24  the briefing in this case was superb on both sides.  That makes

25  my job harder, though.

```
 1            MR. SCHMUTTER:  We're trying to make it easier, Judge.
 2    Sorry.
 3            THE COURT:  That's not what happened, though.
 4            MR. SCHMUTTER:  May I very quickly be heard?
 5            THE COURT:  Yes, you may.
 6            MR. SCHMUTTER:  Thank you, Judge.
 7            THE COURT:  But that's the only reason that I'm not
 8    hearing from you further.  You've really briefed it extremely
 9    well.  And so -- and supplemented it well.  Right?  The final
10    briefing in this was, you know, 8:00 last night and not 7:59 or
11    8:01.
12            Mr. Schmutter?
13            MR. SCHMUTTER:  Judge, thank you.  It's interesting
14    that counsel mentioned Antonyuk because we all read the same
15    comments from Justice Alito.  He is not happy at all so -- but
16    recognizes procedure and how things ought to be orderly.  But,
17    yeah, he's not happy.
18            A couple things I just want to stress.  I'm not going
19    to take up too much time.  The -- this is important because,
20    obviously, there are a couple of historical examples like
21    Central Park, Fairmount Park that are not in Koons, but the
22    point that we're trying to make is -- and I'm not going to go
23    through all of those.  We've briefed all of their examples,
24    it's in the papers, so I'm not going to waste the Court's time.
25            But importantly, the Koons' reasoning as to why the
```

1  State's examples don't help them, all applies to all of that.

2  And that's really our point.  The reasoning carries over to all

3  of the examples that they give and all of the other places.

4        I want to make sure something doesn't get lost because

5  we're talking about 13, 14, or 18 versus 19.  There is a

6  request in the TRO that the State has never commented on, never

7  opposed, never argued, and that's the over-breadth issue, the

8  multi-use property issue.  They never commented on that.

9        And in addition to particular places that we believe

10  it is unconstitutional to prohibit handguns, there's the

11  problem -- it's the church problem.  It's not just the church

12  problem, but it's acute with the church plaintiffs.  And by the

13  way, there's never been any standing objection to the church

14  plaintiffs, Mr. Varga and Ms. Cuozzo.

15        They're subject to a very unique problem, which is

16  that -- and so is Mr. Siegel because he deals with the karate

17  school and the rest of the strip mall.  Everybody really has

18  that problem, but Mr. Siegel and Ms. Cuozzo And Mr. Varga have

19  a very acute problem here.  They are prohibited from carrying

20  in church because there is either actually a school, as in the

21  case of Mr. Varga, because they have a large campus where

22  there's a church building and a school over here that they

23  lease to the academy, the christian academy.  That's an actual

24  school.  It's easy to figure.  We're not worried about that.

25  We know that's a school.

1          And so that school makes the entire campus a

2    prohibited area.  That can't be consistent with *Bruen*.  They

3    can't carry in church because there's a school on the other

4    side of the property.  That's a huge problem.

5          Ms. Cuozzo has a related but slightly different

6    problem, and that is that the church building is split up into

7    Sunday School classes over here, the sanctuary where they pray

8    over here, and maybe they have Bible study classes on certain

9    days and they even have sports clinics.  Actually, Mr. Varga's

10   church has the sports clinics.  The point is, the way it's

11   drafted, any part of the property, parking lots, grounds,

12   anywhere, that means that if there's a class being taught,

13   arguably nobody in the church can defend the church.

14         That can't be constitutional.  There's no way that's

15   constitutional.  And I don't want to --

16         THE COURT:  But is that it?  Because it's vague and

17   overbroad, if those are your arguments, how do I enjoin?  How

18   are you asking me to enjoin?  Right?  And so that -- again, as

19   we get into the layers of this --

20         MR. SCHMUTTER:  It's more -- I am sorry, I apologize,

21   Judge.

22         THE COURT:  That's all right.  But if plaintiffs'

23   position is that, as drafted, the multi-use purpose is vague,

24   and one of the arguments is that the statute is overbroad for

25   multi-use, right, and/or the use of sporting events because

1  there's a school and acreage with different -- that's something

2  for a TRO?

3        MR. SCHMUTTER:  Absolutely, Judge, because -- so we

4  don't -- it's not just a vagueness problem.  So we have

5  multiple issues.  We think that's a Second Amendment problem

6  because it's a prohibition on carry without historical

7  tradition.  Right?

8        So if schools, like real schools, like West Orange

9  High School, Rutgers -- everybody knows that those count,

10  right?  So if those share property with something for which

11  there's no historical tradition, there's no basis under *Bruen*

12  to allow this prohibition to carry over to this use.  That's

13  the problem.  So that's a straight-up Second Amendment problem

14  that's really on all fours with the other ones.  It's just a

15  little bit unusual because of the way the statute is drafted in

16  an overbroad fashion.

17        But what they're doing is they're leveraging, they're

18  leveraging something that we haven't challenged on its face,

19  right -- because it's an as-applied challenge.  The multi-use

20  property is an as-applied challenge really because we're not

21  challenging schools or daycares on their face.  But it's

22  leveraging something we're not challenging on its face to

23  prohibit places that they could not prohibit on their face per

24  se if they had established -- you know, if they had a

25  prohibition on pizza places, right -- because there was a

```
 1   karate school here and a pizza place three doors down.  They'd
 2   never be able to justify pizza places on their face, but
 3   they're prohibiting carrying in the pizza place because --
 4   assuming the karate school counts.  If the karate school counts
 5   as a school under the school portion of the statute, then
 6   they've prohibited the drugstore, the pizza place, the Wendy's,
 7   the shoe shop, and the tailor, none of which they can justify.
 8   That's a problem that's part of our TRO application.
 9          So I don't want that to get lost, Judge.  I just want
10   to -- because the State has never mentioned that, they've never
11   addressed that.  They have steered clear of that because I
12   don't think they have a good response to it, honestly, Judge.
13          There's something they're doing that really bears
14   correction.  Their theory is that -- and this is the numerosity
15   problem.  Their theory is that Bruen allows them to rely on a
16   single or two or three examples if it was not challenged as
17   unconstitutional and remained unchallenged in the law for
18   whatever period of time.  That is not how Bruen works.
19          Bruen requires tradition, and tradition clearly
20   requires widespread practice.  They do not get to say, well,
21   Texas had a law back in whatever year it was, nobody challenged
22   it, and therefore, that is now a tradition.  That is not Bruen.
23   And I urge the Court to not let them get away with that.  That
24   is completely not how Bruen works.  That's a very important
25   point.
```

```
 1            THE COURT:  Well, I think we're all trying to figure
 2   out how Bruen works.
 3            MR. SCHMUTTER:  Of course, Your Honor.  And that's our
 4   position, that that's not correct, and so we ask that that
 5   position not prevail.
 6            I think -- Your Honor, I think that's really all I
 7   needed to -- I just wanted to clarify a few of those things.
 8   Thank you.
 9            THE COURT:  Ms. Cai, do you want to be heard on this
10   issue about the multi-use and the no response to it?  I don't
11   read it that you didn't respond to it, but if you wanted to put
12   that on the record, then --
13            MS. CAI:  Other than we did respond to it at least on
14   standing grounds and that it's -- to note that this is an issue
15   that's purely in this case.  I have nothing else to say.  Thank
16   you.
17            THE COURT:  Right.  I think I'm going to take a brief
18   recess.  There's a few references that counsel, each of you
19   made to other cases that escape me at this point.  I want to
20   make sure that my reading of those cases was consistent with
21   what my plans are.  That will be about 15 minutes.  And to give
22   my phenomenal court reporter a well-needed break.
23            So 15 minutes, tops.  It's now -- it's now 3:12.  So
24   3:30, we will resume.
25            THE COURTROOM DEPUTY:  All rise.
```

```
 1           MR. SCHMUTTER:  Thank you, Judge.

 2           (Brief recess at 3:12 p.m.)

 3           (In open court at 3:37 p.m.)

 4           THE COURTROOM DEPUTY:  All rise.

 5           THE COURT:  All right.  Good afternoon.  You can all

 6  be seated.

 7           So I have prepared and will enter a written opinion on

 8  the docket later today or tomorrow, but given where this case

 9  is, I'm also going to read it in the record so that you all

10  leave here knowing next steps.

11           As for the temporary restraining order, the Court is

12  aware and takes seriously its obligation to engage in the

13  independent review and evaluation of the issues presented in

14  matters pending before it.  Here, the Court, however, cannot

15  ignore the procedural posture of both this matter and Koons and

16  how that bears on this Court's handling of important issues

17  outlined in the pending motions.

18           On January 9th, 2023, Judge Bumb ordered that

19  defendants, as well as their officers, agents, servants,

20  employees, and attorneys, and any other person in active

21  concert or participation with them are temporarily restrained

22  from enforcing the following provisions of Chapter 131 of the

23  2022 Laws of New Jersey, Section (7)(a), subparts 12, 15, 17,

24  and 24, and Subsection (7)(b)(1).  Judge Bumb's Order was

25  accompanied by a thorough Opinion addressing five identical
```

1  sensitive-place provisions at issue here.

2        This Court has reviewed Judge Bumb's Opinion and

3  Order, the parties' submissions, including the supplemental

4  submissions which address the impact of Judge Bumb's Opinion

5  and Order on this matter and the relevant case law, and now

6  having heard argument on the same, I find no reason to reach a

7  different result on the five provisions of Chapter 131 already

8  enjoined by Judge Bumb.

9        Additionally, the Court reserves on a decision on the

10  additional sensitive places raised in this matter, because as

11  to the motion for consolidation, the Court agrees that

12  consolidation of Siegel into *Koons* is appropriate.

13        Pursuant to the Federal Rules of Civil Procedure 42,

14  "If actions before the Court involve a common question of law

15  or fact, the Court may join for hearing or trial any and all

16  matters at issue in the action; two, consolidate the actions;

17  or, three, issue any other orders to avoid unnecessary costs or

18  delay."  Federal Rule of Civil Procedure 42(a)(1) through (3).

19        "The Third Circuit recognized that this rule confers

20  upon a District Court broad power, whether at the request of a

21  party or upon its own initiative, to consolidate causes for

22  trial, as may facilitate the administration of justice."

23  Citing *April Denise Williams vs. USA*.  Citation will be

24  included in the written opinion and order.

25        "This power may also be exercised insofar as

1   consolidation would avoid unnecessary costs or delay.

2   Consolidation does not merge this suit into a single cause or

3   change the rights of the parties or make those who are parties

4   in one suit parties in another." *In re:  Community Bank of*

5   *North Virginia*, 418 F.3d 277, 298, Note 12 (3d Cir. 2005).

6        "In considering a request to consolidate on one hand,

7   the Court is mindful that two actions do not have to be

8   identical, but could instead simply share common questions of

9   law or fact." *In re:  Cendant Corp. Litigation,* 182 F.R.D.

10  476, 478 (D.N.J. 1998).

11       "After all, the purpose of consolidation is to

12  streamline and economize pretrial proceedings so as to avoid

13  duplication of effort and to prevent conflicting outcomes in

14  cases involving similar legal and factual issues." *CIMA Labs,*

15  *Inc. vs. Actavis Group*, 2007 Westlaw 1672229 (D.N.J. 2007).

16       As initial matter, the Court is aware that generally

17  cases consolidated are consolidated with the first-filed

18  matter.  This Court, however, has discretion to find contrary

19  to the general rule and finds that the unique circumstances

20  presented here require consolidation of the Siegel matter into

21  the *Koons* matter.

22       The Siegel and *Koons* matters were virtually

23  simultaneously filed, with the *Koons* complaint having been

24  filed minutes before the Siegel complaint.  The *Koons* matter

25  has developed more than this matter and significantly so.

1    Judge Bumb issued a 60-page Opinion and Order enjoining

2    enforcement of various provision of Chapter 131.

3         And today, although it's not clear, but it seems a

4    preliminary injunction briefing schedule is soon to be decided.

5    This dovetails into the other considerations regarding

6    consolidation, the risk of conflicting outcome and judicial

7    resources.  The Court acknowledges the differences and the

8    similarities in the *Koons* and Siegel matters; however, as it

9    relates to the preliminary injunction proceedings, this Court

10   must protect against the prospect of conflicting outcomes

11   where, as here, both *Koons* and Siegel address the

12   constitutionality of the same legislation against at least two

13   identical defendants, Matthew Platkin and Patrick Callahan.

14        To be clear, the prospect of conflicting outcomes has

15   thus far been avoided.  Consolidation ensures it will not occur

16   as these proceedings continue to develop in discovery and

17   ultimately to finality.

18        Moreover, the burden on judicial resources is great.

19   If these matters were to proceed before two different judges in

20   this same district, the court simply lacks the time and

21   resources for such waste.  At this point, Judge Bumb has

22   already expended more effort than this Court has on this

23   matter, having considered and issued an Opinion and Order on

24   the TRO issued in her matter.  The parties will be burdened

25   too.

1          As set forth above, the commonality of these two

2    matters will lead to overlapping discovery requests, witnesses,

3    and competing time frames from different judges.  This Court is

4    steadfast in avoiding that.

5          For all of these reasons, the defendants' motion to

6    consolidate is granted in part and denied in part.  The Court

7    will consolidate the Siegel matter into the *Koons* matter, but

8    the Siegel matter will consolidate -- I am sorry.  I think I

9    repeated that.  The Court will consolidate the Siegel and *Koons*

10   matter but -- so this is the denied part -- the Siegel matter

11   will be consolidated into the *Koons* matter.

12         To the extent claims are still outstanding with

13   respect to the temporary restraints, those are hereby reserved

14   for further proceedings following the reassignment of this

15   matter to Judge Bumb.

16         That is the ruling of the Court.  Again, we do the

17   best we can with what we're faced with.

18         Yes, Mr. Schmutter?

19         MR. SCHMUTTER:  I am sorry, Judge.  I just have a

20   question.  I just want to make sure I understood Your Honor's

21   ruling.

22         Your Honor is entering a TRO on the five and then

23   consolidating or not?

24         THE COURT:  No, I'm not.  This is all going -- I'm

25   reserving on any TRO decision.  It's all going to Judge Bumb.

1  But I wanted to be very clear so that when Judge Bumb reads

2  this, she understands where I've landed, which is, I did not

3  find a reason to disagree or depart from how she decided those

4  five, but to the extent that those five have impact on the

5  remaining claims, it's for her to decide.

6          MR. SCHMUTTER:  Thank you, Judge.  Thank you.

7          THE COURT:  Anything further on behalf of plaintiff?

8          MR. SCHMUTTER:  No, Judge.

9          THE COURT:  Anything further on behalf of the State?

10         (No response)

11         THE COURT:  Thank you all.  Have a good day.

12         MR. SCHMUTTER:  Thank you, Judge.

13         THE COURTROOM DEPUTY:  All rise.

14         (Matter adjourned at 3:48 p.m.)

15

16         - - - - - - - - - - - - - - - -

17

18         I certify that the foregoing is a correct transcript

19  from the record of proceedings in the above-entitled matter.

20

21  */S/ Sharon Ricci, RMR, CRR*
    *Official Court Reporter*

22

23  *January 12, 2023*
        *Date*

24

25

*United States District Court*
*District of New Jersey*